UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SHARIF STINSON, MARIAM FARNUM, CHARLENE
FINLEY, RYBURN WALKES, JAMEL TOWE,
CHRISTIAN DUDLEY, JOCELEY FERDINAND,
GARY SHAW and MICHAEL BENNETT, on Behalf of
Themselves and Other Similarly Situated,

                        Plaintiffs,

                      -against-

THE CITY OF NEW YORK, RAYMOND W. KELLY,
Commissioner of the New York City Police Department,
Individually and in his Official Capacity, PAUL
BROWN, Deputy Commissioner of the New York City
Police Department, Individually and in his Official
Capacity, and P.O.s "JOHN DOE" #1-50 (NYPD
Supervisory, Training and Policy Personnel), Individually
and in their Official Capacities, (the name John Doe being
fictitious, as the true names are presently unknown),

                        Defendants.

----------------------------------------------------------------X

**CLASS ACTION
COMPLAINT
10 CV 4228**

**JURY TRIAL DEMANDED**

**ECF CASE**

       Plaintiffs Sharif Stinson, Mariam Farnum, Charlene Finely, Ryburn Walkes, Jamel Towe,

Christian Dudley, Joceley Ferdinand, Gary Shaw and Michael Bennett on behalf of themselves

and others similarly situated, by their attorneys, Jon Norinsberg and Cohen & Fitch LLP,

complaining of the defendant, respectfully alleges as follows:

## INTRODUCTION

       1.      Plaintiffs bring this action on behalf of themselves and others similarly situated

seeking class certification compensatory damages, and attorney's fees pursuant to 42 U.S.C. §

1983 and 42 U.S.C. § 1988 for violations of theirs and others similarly situated civil rights, as

said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

2.      Under a pattern and practice set and enforced by city officials, the New York City Police Department ("NYPD"), and New York City Police Officers stop, search, seize, arrest and issue summonses to individuals without probable cause in order to meet summons quotas, in violation of the U.S. Constitution.

3.      To encourage this pattern and practice, the NYPD  rewards police officers with more summonses issued and punishes officers with fewer summonses issued, regardless of probable cause, the number of summonses actually filed or the number of summonses that are successfully prosecuted.

4.      At least two (2) police officers, P.O. Adrian Schoolcraft and P.O. Adil Polanco, have provided evidence of the aforementioned incentives and pressures to increase the number of summonses issued by NYPD officers in the form of tape recordings of Supervising Officers from the 81st and 41st precincts instructing officers to meet quotas in order to secure their jobs and gain incentives.

5.      Specifically, in an interview conducted by Eyewitness News on March 2, 2010, P.O. Polanco provided evidence of the policy of issuing summonses pursuant to a quota regardless of probable cause, the number of summonses actually filed or the number of summonses that are successfully prosecuted.

6.      In that interview, P.O. explicitly stated that officers were instructed to issue summonses regardless of whether any crime or violation had occurred but instead in order to meet quotas ("numbers") set forth by NYPD: "EVEN IF THE CRIME IS NOT COMMITTED, THE NUMBER IS STILL THERE."

7.      P.O. Polanco further stated that if an officer does not meet the aforementioned quotas for issuing summonses, he or she could receive punishment in the form of  losing overtime, having their shifts changed or being denied days off.

8.      Further, in that same interview, Eyewitness News provided additional evidence of this policy in the form of tape recordings of commanding and supervising officers pressuring officers to meet their summons quota.

9.      Specifically, one commanding officer at the 41st precinct was recorded as stating in sum and substance: "NEXT WEEK YOU COULD BE AT 25 (SUMMONSES) AND 1 (ARREST), YOU COULD BE AT 35 (SUMMONSES) AND 1 (ARREST) AND GUESS WHAT UNTIL YOU DECIDE TO QUIT THIS JOB AND BECOME A PIZZA HUT DELIVERY MAN, THIS IS WHAT YOU'RE GOING TO BE DOING UNTIL THEN."

10.     Additionally another supervising officer from the 41st precinct was recorded as stating in sum and substance: "THINGS ARE NOT GOING TO GET ANY BETTER, ITS GOING TO GET A LOT WORSE.  IF YOU THINK 1 (ARREST) AND 20 (SUMMONSES) IS BREAKING YOUR BALLS GUESS WHAT YOU ARE GOING TO BE DOING, YOU'RE GOING TO BE DOING A LOT MORE, A LOT MORE THAN WHAT YOU THINK."

11.     A separate story conducted by the Village Voice on May 4, 2010 provided additional evidence of this policy of issuing summonses pursuant to a quota requirement regardless of probable cause.

12.     In that story, P.O. Schoolcraft provided tape recordings of the 81st Precinct where supervising officers stated in sum and substance: "HOW MANY SUPERSTARS AND HOW MANY LOSERS DO WE HAVE, HOW MANY SUMMONSES DOES THE SQUAD WRITE.

WE NEED MORE ACTIVITY, IF YOUR PRODUCTIVITY FALLS BELOW PAR EITHER YOU OR THE C.O. IS GOING TO HAVE TO ANSWER."

13.     Another supervising officer at the 81st Precinct was recorded as stating in sum and substance, "HE WANTS AT LEAST 3 SEATBELTS (SUMMONSES), 1 CELL PHONE SUMMONSES) AND 11 OTHERS (SUMMONSES).  ON THE AVERAGE WE HAVE ABOUT 9 SUMMONSES WHICH IS NOT BAD BUT HE'S GOT A DIFFERENT NUMBER IN MIND.

14.     Moreover, in an attempt to conceal and/or justify this flagrantly unconstitutional practice, defendant PAUL BROWN has classified this quota system as a "PRODUCTIVITY GOAL."

15.     Further evidence of this pattern and practice of NYPD to issue summonses pursuant to a an established quota regardless of probable cause was provided in a follow up story conducted by Eyewitness News on May 24, 2010.

16.     According to the statistics uncovered in that story, over *fifty percent* (50%) of all summonses issued in 2008 were dismissed as legally insufficient.

17.     Further, according to NYPD Comstat data, in 1994, there were approximately thirty six thousand five hundred and eighty five (36,585) summonses dismissed.

18.     According to their data, since that time there has been a *five hundred percent* (500%) increase in the number of summonses issued.

19.     Additionally, the evidence provided by the aforementioned "whistleblowers" leads to the conclusion that this policy, pattern and practice is purposely enforced in neighborhoods and areas which have a high composition of minority residents, which disparately

impacts said individuals based on an impermissible classification under the Constitution of the United States.

20.     This unconstitutional violation of the Equal Protection Clause of the Fourteenth Amendment can be inferred from NYPD stop and frisk data as well as the racial composition of all the named plaintiffs in this action (i.e. African American).

21.     From the aforementioned evidence it is apparent that these summonses are not issued pursuant to any legitimate basis under the law and instead are issued regardless of probable cause, legal merit or whether a successful prosecution can be had.

22.     As a consequence, according to the 2007 Annual Report from the Criminal Court, City of New York, there were approximately  six hundred and one thousand four hundred and fifty seven (601,457)  summonses filed within New York City.

23.     Of the aforementioned summonses issued in 2007, thirty five thousand three hundred and four (35,304) of the summonses were dismissed before even being docketed.

24.     In addition, of the remaining summonses that were docketed in 2007, ninety three thousand one hundred and fifty nine (93,159) were dismissed as insufficient as a matter of law before arraignment.

25.     Additionally, according to the 2008 Annual Report from the Criminal Court, City of New York, there were approximately  five hundred sixty three thousand one hundred and fifty seven (563,157)  summonses filed within New York City.

26.     Of the aforementioned summonses issued in 2008, thirty seven thousand five hundred and one (37,501) of the summonses were dismissed before even being docketed.

27.     In addition, of the remaining summonses that were docketed in 2008, ninety nine thousand three hundred and seventeen (99,317) were dismissed as insufficient as a matter of law before arraignment.

28.     Further, according to statistics provided by Eyewitness News, a total of 381,002 summonses, or fifty one percent (51%), of all summonses issued in 2008 were dismissed.

29.     Upon information and belief, the aforementioned number of summonses filed in 2007 and 2008 does not account for summonses actually issued by the NYPD that are never filed in any criminal court in New York City.

30.     Upon information and belief, the aforementioned number of summonses in 2007 and 2008 that were never docketed and or were dismissed prior to arraignment does not account for the number of summonses that were dismissed at arraignment as being insufficient.

31.     At a minimum, according to the data actually known regarding the amount of summonses filed and dismissed in 2007 and 2008, approximately twenty three percent (23%) of the total number of summonses filed were dismissed as legally insufficient.

32.     The Annual Report from the Criminal Court, City of New York in 2009 has not been published as of the date of this complaint; however, given the nearly identical statistics from the preceding two years, it is presumed that 2009 will produce similar statistics.

33.     The statistical data in connection with the documented evidence of high-ranking officials within the NYPD explicitly instructing officers to adhere to these quotas, is representative of an explicit and/or tacit policy, pattern and practice of issuing summonses regardless of probable cause or any legitimate legal basis for their issuance in order to adhere to summons quotas set out by the NYPD.

34.     These unconstitutional and illegal acts degrade, humiliate, and cause harm to their victims. Individuals who are arrested and issued summonses suffer unwarranted deprivation of personal liberty. In many cases they are subjected to the degradation of searches and seizures in plain view of the general public, and, in many cases, handcuffing and prolonged detention within NYPD precincts before being released. They are detained, sometimes for hours or days at a time, in filthy, overcrowded conditions. Then, in most instances are forced to take time from their jobs, families and lives in order to appear in court before the summonses are dismissed.

35.     Despite the patently unconstitutional and illegal nature of this conduct and its detrimental effects on the New York City residents whom the laws are supposed to protect, city officials have refused to reform their practices and in fact, as has been documented, continue to instruct NYPD officers to increase this practice. The time has come to rein in this abuse of power and stop these unconstitutional and illegal acts.

## JURISDICTION

36.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

37.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a) and 1367.

## VENUE

38.     Venue is properly laid in the Southern District of New York under U.S.C. § 1391(b), in that this is the District in which a substantial part of the events or omissions giving rise to the claim occurred.

## JURY DEMAND

39.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## **PARTIES**

40.     Plaintiff SHARIF STINSON is an African American male, and at all relevant times a resident of the City and State of New York.

41.     Plaintiff MARIAM FARNUM is an African American female, and at all relevant times a resident of the City and State of New York.

42.     Plaintiff CHARLENE FINLEY is an African American female, and at all relevant times a resident of the City and State of New York.

43.     Plaintiff RYBURN WALKES is an African American male, and at all relevant times a resident of the City and State of New York.

44.     Plaintiff JAMEL TOWE is an African American male and at all relevant times a resident of the City and State of New York.

45.     Plaintiff CHRISTIAN DUDLEY is an African American male and at all relevant times a resident of the City and State of New York.

46.     Plaintiff JOCELEY FERDINAND is an African American male and at all relevant times a resident of the City and State of New York.

47.     Plaintiff GARY SHAW is an African American male and at all relevant times a resident of the City and State of New York.

48.     Plaintiff MICHAEL BENNETT is an African American male, and at all relevant times a resident of the City and State of New York.

49.     Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

50.     Defendant CITY OF NEW YORK maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State

Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York, who was responsible for the policy, practice, supervision, implementation and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including the defendants referenced herein.  In addition, at all relevant times, defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and of the State of New York.

51.     That at all times hereinafter mentioned P.O.s JOHN DOE #1-50 were training, supervisory and policy making personnel within the NYPD who implemented, enforced, perpetuated and/or allowed the unconscionable and unconstitutional quota system for summonses that is the subject of this action, acting in the capacity of agents, servants and employees of defendant City and within the scope of their employment as such.   Plaintiffs are unable to determine the names of these NYPD Supervisory defendants at this time and thus sue them under a fictitious designation.

52.     At all relevant times defendant RAYMOND KELLY was the Police Commissioner of the City of New York and, as such, made enforced policy of the NYPD, and acted in his capacity as agent, servant, and employee of defendant City, within the scope of his employment as such, and under color of state law.

53.     At all relevant times defendant PAUL BROWN was the Deputy Police Commissioner of the City of New York and, as such, made enforced policy of the NYPD, and acted in his capacity as agent, servant, and employee of defendant City, within the scope of his employment as such, and under color of state law.

54.     That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the

official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York and/or New York, Bronx, Kings, Queens and Richmond Counties.

55.     During all times mentioned in this complaint, the defendants and each of them separately and in concert, engaged in acts and/or omissions which constituted depravations of plaintiffs' constitutional rights, equal protections and the privileges and immunities of the plaintiffs, and while these acts were carried out under color of law, they had no justification or excuse, and were instead illegal, improper, and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and/or ensuring civil order.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs SHARIF STINSON, MARIAM FARNUM, CHARLENE FINLEY, RYBURN WALKES, JAMEL TOWE, CHRISTIAN DUDLEY, JOCELEY FERDINAND, GARY SHAW and MICHAEL BENNETT bring this action as a class action under Fed. R. Civ. P. 23(b)(2) for violations of their constitutional rights.  The Rule (b)(2) Class is comprised of all persons who were or will be wrongfully issued summonses pursuant to a policy pattern and practice of issuing summonses regardless of probable cause or any legal/legitimate basis in order to meet quotas established by the New York City Police Department in violation of their constitutional rights, and accordingly, who are threatened with future unlawful enforcement of this unconstitutional policy.  The class is comprised of all persons issued summonses pursuant to this policy who had committed no crime or violation of law and thereafter had their summons dismissed during the fullest period permitted by the applicable statute of limitations.

57.     Defendants have acted, or failed to act, on grounds generally applicable to the Rule (b)(2) Class, thereby making appropriate final injunctive relief with respect to the Rule (b)(2) Class as a whole.

58.     On information and belief, the Rule (b)(2) class includes hundreds of thousands of members.  They are so numerous that joinder of all Class members is impracticable.

59.     Plaintiffs SHARIF STINSON, MARIAM FARNUM, CHARLENE FINLEY, RYBURN WALKES, JAMEL TOWE, CHRISTIAN DUDLEY, JOCELEY FERDINAND, GARY SHAW and MICHAEL BENNETT bring this action as a class action under Fed. R. Civ. P. 23(b)(3) for violations of their constitutional rights.  The Rule (b)(3) Class is comprised of all persons on who have been wrongfully issued summonses pursuant to a policy pattern and practice of issuing summonses regardless of probable cause or any legal/legitimate basis in order to meet quotas established by the New York City Police Department in violation of their constitutional rights.  The class is comprised of all persons issued summonses pursuant to this policy who had committed no crime or violation of law and thereafter had their summons dismissed during the fullest period permitted by the applicable statute of limitations.

60.     All members of the Rule (b)(3) class were injured as a result of defendants conduct.

61.     Upon information and belief, the Rule (b)(3) class includes hundreds of thousands of individuals and is so numerous that joinder of all class members is impracticable.

62.     The questions of law and fact presented by plaintiffs SHARIF STINSON, MARIAM FARNUM, CHARLENE FINLEY, RYBURN WALKES, JAMEL TOWE, CHRISTIAN DUDLEY, JOCELEY FERDINAND, GARY SHAW and MICHAEL BENNETT are common to other members of the class.  Among others, the questions of law and fact common to the class are: (i) that the NYPD had a policy, pattern and practice, explicit and/or tacit, of rewarding officers for issuing more summonses; (ii) that the NYPD had a policy, pattern and practice, explicit and/or tacit, of punishing officers for issuing fewer summonses; (iii) that the NYPD had a policy, pattern and practice, explicit or tacit of establishing quotas for the

issuance of summonses; (iv) that this policy resulted in the issuance of summonses regardless of probable cause in violation of plaintiffs constitutional rights; (v) that enforcement of this policy knowingly created a disparate impact on minorities in violation of their constitutional rights; and (vi) that the appropriate injunctive and compensatory remedies that will be needed to ensure (a) that this unconstitutional quota system for issuance of summonses regardless of probable cause is terminated in each and every respect and (b) that its harmful effects are nullified.

63.     Common issues of law and fact such as those set forth above (and many others) predominate over any individual issues.

64.     This unconstitutional policy, pattern and practice has resulted in the wrongful detention, charging, handcuffing, confinement, deprivation of liberty, prosecution, psychological, physical and emotional injury of citizens who have committed no crime or violation of law.  The claims and practices alleged in this complaint are common to all members of the class.

65.     The violations suffered by plaintiffs SHARIF STINSON, MARIAM FARNUM, CHARLENE FINLEY, RYBURN WALKES, JAMEL TOWE, CHRISTIAN DUDLEY, JOCELEY FERDINAND, GARY SHAW and MICHAEL BENNETT are typical of those suffered by the class.  The entire class will benefit from the remedial and monetary relief sought.

66.     Plaintiffs SHARIF STINSON, MARIAM FARNUM, CHARLENE FINLEY, RYBURN WALKES, JAMEL TOWE, CHRISTIAN DUDLEY, JOCELEY FERDINAND, GARY SHAW and MICHAEL BENNETT have no conflict of interest with any class members, and will fairly and adequately protect the interests of the class.  Counsel that is competent and experienced in federal class action and federal civil rights litigation has been retained to represent the class.  Jon Norinsberg, Esq. is a law firm with an office in New York City with extensive experience in civil rights litigation against state and local governments and the NYPD

and has experience in class action lawsuits.  Cohen & Fitch LLP is a law firm with offices in New York City with extensive experience in civil rights litigation against the City of New York and the NYPD.  Further Cohen & Fitch LLP is also experienced in police, prosecutorial and court practices in the criminal courts throughout New York City given the fact that the partners of Cohen & Fitch LLP were both former prosecutors and have also maintained a significant criminal defense practice.  Additionally, the partners of Cohen & Fitch LLP have spent hundreds of hours in the Summons Parts within the Criminal Courts throughout the City of New York and are personally familiar with the volume of summonses prosecuted on any given day as well as the volume that are dismissed for lack of filing or for insufficiency.  Collectively, the two firms have litigated thousands of civil rights claims against the City of New York and the NYPD and have an intimate knowledge of the criminal process from arrest through prosecution as well as the issuance and the prosecution of summonses.

67.    This action is superior to any other method for the fair and efficient adjudication of this legal dispute, as joinder of all members is not only impracticable, but impossible given the volume and continuing nature of the violations as well as the transient nature of the members of the class.  The damages suffered by certain members of the Class, although substantial, are small in relation to the extraordinary expense and burden of individual litigation and therefore it is highly impractical for such Class members to attempt redress for damages incurred due to their wrongful issuance of summons and subsequent prosecution.

68.    There will be no extraordinary difficulty in the management of the Class action.

## FACTS

69.    Plaintiff SHARIF STINSON is a nineteen (19) year old man.

70.    Plaintiff MARIAM FARNUM is a twenty seven (27) year old woman.

71.    Plaintiff CHARLENE FINLEY is a forty (40) year old woman.

72.     Plaintiff RYBURN WALKES is a thirty nine (39) year old man.

73.     Plaintiff JAMEL TOWE is a nineteen (19) year old man.

74.     Plaintiff CHRISTIAN DUDLEY is a nineteen (19) year old man.

75.     Plaintiff JOCELEY FERDINAND is a twenty six (26) year old man.

76.     Plaintiff GARY SHAW is a thirty three (33) year old man.

77.     Plaintiff MICHAEL BENNETT is a thirty three (33) year old man.

### *The Constitutional Violations Against Sharif Stinson*

78.     On December 31, 2009 plaintiff SHARIF STINSON was walking out of his aunt's apartment building located at 994 East 179 Street, New York, New York when several members of the NYPD stopped, detained and searched plaintiff without probable cause.

79.      Thereafter the members of the NYPD issued plaintiff with a summons for Disorderly Conduct without probable cause.

80.     Mr. Stinson was verbally and mentally abused by the officers although he had committed no crime or violation of law.

81.     On March 3, 2010, the summons issued to plaintiff was dismissed.

82.     On March 26, 2010 plaintiff SHARIF STINSON was walking out of his aunt's apartment building located at inside of 994 East 179 Street, Bronx, New York going into the building where his aunt lived when several members of the NYPD stopped, detained and searched plaintiff without probable cause.

83.      Thereafter the members of the NYPD issued plaintiff with a summons for Disorderly Conduct and for Trespass without probable cause.

84.     Mr. Stinson was verbally and mentally abused by the officers although he had committed no crime or violation of law.

85.     On May 24, 2010, the summonses issued to plaintiff were dismissed.

### *The Constitutional Violation Against Mariam Farnum*

86.     On November 10, 2009 plaintiff MARIAM FARNUM was lawfully traveling inside of her vehicle in the vicinity of Bedford and Atlantic Avenue, Brooklyn, New York when she was pulled over by several members of the NYPD without probable cause.

87.     Immediately thereafter plaintiff was detained for several hours, handcuffed and searched by the NYPD officers without probable cause and issued two summonses for Disorderly Conduct without probable cause.

88.     Ms. Farnum was verbally and mentally abused by the officers although she had committed no crime or violation of law.

89.     On February 19, 2010, the summonses issued to plaintiff were dismissed.

### *The Constitutional Violation Against Charlene Finely*

90.     On October 22, 2009 plaintiff CHARLENE FINLEY was lawfully traveling inside of her vehicle in the vicinity of 1285 Washington Avenue, Bronx, New York, which is a four lane thoroughfare waiting for a parking space when several members of the NYPD approached plaintiff's vehicle without probable cause.

91.     Immediately thereafter plaintiff was detained without probable cause, and NYPD officers and plaintiff a summons for Disorderly Conduct without probable cause.

92.     Ms. Finley was verbally and mentally abused by the officers although she had committed no crime or violation of law.

93.     On December 18, 2009, the summonses issued to plaintiff were dismissed.

### *The Constitutional Violation Against Ryburn Walkes*

94.     On February 13, 2010 plaintiff RYBURN WALKES was walking on the sidewalk in the vicinity of Ryer and Burnside Avenue, Bronx, New York when several members of the NYPD stopped, detained, handcuffed and strip searched plaintiff without probable cause.

95.     Plaintiff was detained for several hours after which members of the NYPD issued plaintiff with a summons for Disorderly Conduct without probable cause.

96.     Mr. Walkes was verbally and mentally abused by the officers although he had committed no crime or violation of law.

97.     On April 14, 2010, the summons issued to plaintiff was dismissed.

### *The Constitutional Violation Against Jamel Towe*

98.     On April 10, 2010 plaintiff JAMEL TOWE was walking out of his friend's apartment building located at 965 Tinton Avenue, Bronx, New York when several members of the NYPD detained, searched without probable cause and issued plaintiff with a summons for Disorderly Conduct.

99.     Mr. Towe was verbally and mentally abused by the officers although he had committed no crime or violation of law.

### *The Constitutional Violation Against Christian Dudley*

100.    On January 3, 2010 plaintiff CHRISTIAN DUDLEY was lawfully present on a public sidewalk in the vicinity of 1611 Saint Nicholas Avenue, New York, New York waiting for his friend when several members of the NYPD stopped and detained plaintiff without probable cause.

101.    Thereafter, the police officers issued plaintiff with a summons for Disorderly Conduct without probable cause.

102.    Mr. Dudley was verbally and mentally abused by the officers although he had committed no crime or violation of law.

103.    On March 29, 2010, the summons issued to plaintiff was dismissed.

### *The Constitutional Violation Against Joceley Ferdinand*

104.     On May 14, 2010 plaintiff JOCELEY FERDINAND was lawfully present standing at a crosswalk in the vicinity of Howard and Pitkin Avenue, Brooklyn, New York when he was approached by several members of the NYPD and stopped, searched, handcuffed and issued a summons for Disorderly Conduct without probable cause.

105.     Mr. Shaw was verbally and mentally abused by the officers although he had committed no crime or violation of law.

### *The Constitutional Violations Against Gary Shaw*

106.     On February 23, 2009 plaintiff GARY SHAW was lawfully parked in front of his building located at 730 East 223 Street, Bronx, New York unloading groceries when several members of the NYPD stopped, detained and issued plaintiff a summons for leaving his vehicle unattended without probable cause as he was standing right in front of the vehicle.

107.     Mr. Shaw was verbally and mentally abused by the officers although he had committed no crime or violation of law.

108.     On April 24, 2009, the summons issued to plaintiff was dismissed.

109.     On May 4, 2009 plaintiff GARY SHAW was lawfully traveling in his vehicle in the vicinity of Barnes Avenue and 233rd Street, Bronx, New York when he was pulled over by several members of the NYPD without probable cause.

110.     Thereafter the members of the NYPD informed plaintiff that he was being issued a summons for tinted windows when his windows were not tinted, but instead issued plaintiff with a summons for Open Container without probable cause as there was no such open container.

111.     Mr. Shaw was verbally and mentally abused by the officers although he had committed no crime or violation of law.

112.     On June 23, 2009, the summonses issued to plaintiff were dismissed.

### *The Constitutional Violation Against Michael Bennett*

113.    On January 6, 2010 plaintiff MICHAEL BENNETT was lawfully traveling inside of his vehicle in the vicinity of Gun Hill and White Plains Road, Bronx, New York when he was pulled over by several members of the NYPD without probable cause.

114.    Immediately thereafter plaintiff's vehicle was searched without probable cause and plaintiff was issued a summons for Disorderly Conduct without probable cause.

115.    Mr. Bennett was verbally and mentally abused by the officers although he had committed no crime or violation of law.

### *Unconstitutional Policy and Practice in the NYPD*

116.    At all relevant times, the City, acting through the NYPD, maintained an express and *de facto* policy, custom and practice of issuing summonses without probable cause in order to meet quotas requiring a certain volume of summonses be issued throughout New York City.

117.    As a consequence, according to the 2007 Annual Report from the Criminal Court, City of New York, there were approximately  six hundred and one thousand four hundred and fifty seven (601,457)  summonses filed within New York City.

118.    Of the aforementioned summonses issued in 2007, thirty five thousand three hundred and four (35,304) of the summonses were dismissed before even being docketed.

119.    In addition, of the remaining summonses that were docketed in 2007, ninety three thousand one hundred and fifty nine (93,159) were dismissed as insufficient as a matter of law before arraignment.

120.    Additionally, according to the 2008 Annual Report from the Criminal Court, City of New York, there were approximately  five hundred sixty three thousand one hundred and fifty seven (563,157)  summonses filed within New York City.

121.    Of the aforementioned summonses issued in 2008, thirty seven thousand five hundred and one (37,501) of the summonses were dismissed before even being docketed.

122.    In addition, of the remaining summonses that were docketed in 2008, ninety nine thousand three hundred and seventeen (99,317) were dismissed as insufficient as a matter of law before arraignment.

123.    Further, according to statistics provided by Eyewitness News, a total of 381,002 summonses, or fifty one percent (51%), of all summonses issued in 2008 were dismissed.

124.    Upon information and belief the aforementioned number of summonses filed in 2007 and 2008 does not account for summonses actually issued by the NYPD that are never filed in any criminal court in New York City and therefore do not appear in the aforementioned statistics.

125.    Upon information and belief the aforementioned number of summonses in 2007 and 2008 that were never docketed and or were dismissed prior to arraignment does not account for the number of summonses that were dismissed at arraignment as being insufficient.

126.    At minimum, according to the data actually known regarding the amount of summonses issued and dismissed in 2007 and 2008, approximately twenty three percent (23%) of the total number of summonses filed were dismissed as insufficient.

127.    The Annual Report from the Criminal Court, City of New York in 2009 has not been published as of the date of this complaint; however, given the nearly identical statistics from the preceding two years, it is presumed that 2009 will produce similar statistics.

128.    Further, additional data provided by Eyewitness News indicates that since 1994 the number of summonses issued by the NYPD has increases five hundred percent (500%).

129.    The statistical data in connection with the documented evidence of high ranking officials within the NYPD explicitly instructing officers to adhere to these quotas, is

representative of an explicit and/or tacit policy, pattern and practice of issuing summonses regardless of probable cause or any legitimate legal basis for their issuance in order to adhere to summons quotas set out by the NYPD.

130.    Additionally, upon information and belief, a partial basis being the racial composition of the named plaintiffs in this matter thus far, this policy, pattern and practice is purposely enforced in neighborhoods and areas which have a high composition of minority residents, which disparately impacts said individuals based on an impermissible classification under the Constitution of the United States.

131.    In addition, according to NYPD's own reports, since 2007, one million seven hundred twenty four thousand nine hundred and forty eight (1,724,948) individuals have been stopped by the NYPD and of those individuals, one million four hundred thirty nine thousand eight hundred and ninety six (1,439,896) were either African American or Hispanic.

132.    According to those statistics of the total number of individuals stopped by the NYPD since 2007, approximately eighty three percent (83%) were African American or Hispanic.

133.    Upon information and belief as well as data compiled by the NYACLU, a significant percentage of the total number of individuals stopped were issued a summons.

134.    Upon information and belief a high percentage of those summonses issued were not based upon probable cause or any legitimate basis under the law, but were pursuant to the NYPD's policy pattern and practice of having subordinate officers issue summonses in order to meet quotas established by the City of New York, the NYPD, RAYMOND KELLY, PAUL BROWN and the NYPD Supervisory defendants.

135.    Upon information and belief this pattern and practice has a knowingly disparate impact on plaintiffs and members of the class, specifically other African American and Hispanic

individuals, in violation of their Constitutional rights as secured by the Fourth and Fifth Amendments and the Equal Protection Clause of the Fourteenth Amendment.

136.    In light of the hundreds of thousands of summonses that are dismissed in a calendar year that are actually documented as being dismissed in addition to the summonses that were never filed or were dismissed at or after arraignment, is representative of the fact that defendants either or should have known, that many police officers and supervisory personnel were engaging in the lawless and unconstitutional practice of issuing individuals summonses regardless of probable cause or any legitimate basis under the law; yet defendant have repeatedly failed to take any action to end this conduct and in fact expressly and/or tacitly encourage the lawless and unconstitutional actions.

137.    The NYPD Supervisory Defendants, including defendants RAYMOND KELLY and PAUL BROWN's failure to train, discipline or supervise officers regarding their obligation not to issue summonses unless based upon probable cause or some legitimate basis under the law, exhibited gross and wanton deliberate indifference to the constitutional rights of plaintiffs and members of the Class.

138.    Upon information and belief, the issuance of summonses regardless of probable cause or any legitimate basis under the law in order to meet quotas and goals given to the officers is well known and in fact encouraged throughout the NYPD.   Nevertheless, the NYPD Supervisory Defendants, RAYMOND KELLY and PAUL BROWN continue to allow police officers to continue the practice, tolerate and encourage these unconstitutional practices.   The failure to take measures to curb this unconstitutional practice constitutes acquiescence in the known unlawful behavior of their subordinates.   The prevalence and general knowledge of these summonses and the rate of their dismissal, and the failure of supervisory defendants to take remedial action, constitute deliberate indifference to the rights of plaintiffs and the Class.

139.    The NYPD Supervisory Defendants, RAYMOND KELLY and PAUL BROWN conduct has been a substantial factor in the continuance of the issuance of these summonses in the absence of probable cause or any legitimate basis under the law only to meet quota requirements set forth by the NYPD has been a substantial factor in the continuance of such arrests and summonses and a proximate cause of the constitutional violations alleged in this complaint.

140.    Because the pattern and practice of arresting individuals and issuing summonses absent probable cause in furtherance of meeting quotas and requirements set forth by RAYMOND KELLY, PAUL BROWN and NYPD Supervisory defendants has existed for many years the aforementioned defendants knew and encouraged this unconstitutional behavior and repeatedly failed to take action to end this conduct by subordinate officers.

141.    Because this explicit and/or tacit pattern and practice existed of arresting individuals and issuing summonses absent probable cause in furtherance of the quota policy explicitly encouraged by RAYMOND KELLY, PAUL BROWN and NYPD supervisory defendants knew or should have known that police officers assigned to precincts within New York City required training, supervision, and discipline regarding their obligations not to issue summonses absent probable cause or any legitimate basis under the law.

142.    The pattern of unconstitutional issuance of summonses pursuant to quotas established by policy making officials within the NYPD and the City of New York; the failure to train staff regarding the nullity of the statutes; and the failure to supervise and/or discipline staff responsible for the unconstitutional issuance of summonses are so institutionalized as to represent  a policy or custom of unconstitutional summonses under a quota system that caused the depravation of plaintiffs' rights and those of the Class.

143.     The NYPD and the City of New York, through its agents and employees has failed or refused to hold accountable high ranking supervisors, commanding officers and subordinate officers-in the face of frequent misconduct, over a period of years.  This failure is the proximate cause of the injuries sustained by plaintiffs and those of the Class.

**FIRST CLAIM FOR RELIEF FOR DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983**

144.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "143" with the same force and effect as if fully set forth herein.

145.     All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

146.     All of the aforementioned acts deprived plaintiffs and the members of the Class of the rights, equal protections, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

147.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

148.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

149.     Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

150.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "149" with the same force and effect as if fully set forth herein.

151.    As a result of defendants' aforementioned conduct, plaintiffs and members of the Class were subjected to an illegal, improper and false arrest in the form of detention and the issuance of summonses by the defendants and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege, consent or any legitimate basis under the law.

152.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore alleges.

153.    As a result of the foregoing, plaintiffs' and members of the Class' liberty was restricted for an extended period of time, and they were put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## THIRD CLAIM FOR RELIEF
## MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983

154.    PlaintiffS repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "153" with the same force and effect as if fully set forth herein.

155.    Defendants issued plaintiffs and members of the Class summonses requiring them to appear in court for prosecution without any probable cause.

156.    Defendants issued said summonses to plaintiffs and members of the Class pursuant to NYPD's unconstitutional summons quota policy maliciously, in bad faith and without probable cause.

157.    Defendants did not make a complete and full statement of facts to the District Attorney on the back of the summons issued to plaintiffs and members of the Class.

158.    Defendants withheld exculpatory evidence from the District Attorney regarding the NYPD quota policy for issuing summonses.

159.    Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiffs and members of the Class in that the summonses themselves were the instruments under which plaintiffs and members of the Class were prosecuted.

160.    Defendants lacked probable cause to initiate criminal proceedings against plaintiffs and members of the Class.

161.    Defendants acted with malice in initiating criminal proceedings against plaintiffs and members of the Class.

162.    Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiffs and members of the Class.

163.    Defendants lacked probable cause to continue criminal proceedings against plaintiffs and members of the Class.

164.    Defendants acted with malice in continuing criminal proceedings against plaintiffs and members of the Class.

165.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings.

166.    Notwithstanding the perjurious and fraudulent conduct of defendants, the criminal proceedings against plaintiffs and members of the Class were terminated favorably.

167.    As a result of the foregoing, plaintiffs and members of the Class' liberty was restricted for an extended period of time, and they was put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## FOURTH CLAIM FOR RELIEF FOR MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983

168.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "167" as if the same were more fully set forth at length herein.

169.    Defendants caused plaintiffs and members of the Class to be issued summonses in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said summonses were not based on probable cause or any legitimate basis under the law in violation of the constitutional rights of plaintiffs and members of the Class.

170.    Defendants caused plaintiffs and members of the Class to be issued summonses in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said summonses were not based on probable cause or any legitimate basis under the law and knowing that plaintiffs and members of the class would be required to appear in court to be prosecuted under the aforementioned unconstitutionally issued summonses in violation of the constitutional rights of plaintiffs and members of the Class.

171.    The acts complained of were carried out by the aforementioned individual defendants and subordinate officers of the NYPD in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

172.    The acts complained of were carried out by the aforementioned individual defendants and subordinate NYPD officers in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and the New York City Police Department, all under the supervision of RAYMOND

KELLY, PAUL BROWN and other ranking officers of said department.

173.   The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

      i.     Creating a quotas system for NYPD subordinate officers requiring the officers to issue a certain number of summonses per month and year regardless of probable cause;

      ii.     Creating a policy of awarding incentives to officers who meet or exceed the required number of summonses to be issued according to NYPD's quota;

      iii.     Creating a policy of punishing officers who fail to meet the required number of summonses established by NYPD's quota;

      iv.     Issuing summonses regardless of probable cause or any legal basis in order to meet the requirements of the quota established by the NYPD;

      v.     Disproportionately issuing summonses to black and Hispanic individuals in violation their rights under the Equal Protection Clause pursuant to the quota established by the NYPD

      vi.     Showing deliberate indifference to whether the summonses issued pursuant to that quota established by the NYPD were issued based on probable cause or any legal basis;

      vii.     Showing deliberate indifference to the training of subordinate officers to not issue summonses unless they are issued upon probable cause or a basis under the law;

      viii.     Showing deliberate indifference to the supervision of subordinate officers in enforcing the quotas system established by the NYPD for the issuance of summonses in determining whether they were legitimately issued;

174.   The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as is the case with the eight (8) plaintiffs in this matter as well as the Annual Reports from the Criminal Courts of the City of New York, NYPD's own statistics and statistics and reports maintained by the NYACLU and

other City Agencies.

175.   The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiffs and members of the Class.

176.   The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the direct and proximate cause of the constitutional violations suffered by plaintiffs and members of the Class as alleged herein.

177.   The foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by plaintiffs and the members of the Class as alleged herein.

178.   As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiffs and members of the Class were issued summonses without probable cause or any legal basis and in many instances were subjected to detention, search, restraints, handcuffing and verbal and mental abuse in violation of their constitutional rights.

179.   As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiffs and members of the Class were caused to appear in court to be prosecuted on these unconstitutionally issued summonses and in many instances causing them to lose time from work or school in violation of their constitutional rights.

180.   As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department, plaintiffs and

members of the Class were targeted, stopped and issued unconstitutional summonses based on an impermissible classification under the Equal Protection Clause of the Fourteenth Amendment, their race.

181.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiffs and members of the Class.

182.    Defendants, collectively and individually, while acting under color of state law, acquiesced in and encouraged a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of the constitutional rights of plaintiffs and members of the class.

183.    All of the foregoing acts by defendants deprived plaintiffs and members of the Class of federally protected rights, including, but not limited to, the right:

      i.      Not to be deprived of liberty without due process of law;

      ii.     To be free from search, seizure and arrest not based upon probable cause; and,

      iii.    To receive equal protection under the law.

**WHEREFORE**, plaintiffs and members of the Class request the following relief jointly and severally as against all of the defendants:

1.      A judgment declaring that defendants have committed the violations of law alleged in this action;

2.      An order preliminarily and permanently enjoining and directing defendants to cease enforcement of this quota system for the issuance of summonses;

3.      Directing that immediate remedial training on the proper and legal grounds for the issuance of summonses be provided to all current members of the NYPD (in the precincts and the police academy);

4.      Directing defendants to put in place a system for monitoring the summonses issued and the legal basis for their issuance so that baseless summonses that have been issued can be immediately dismissed;

5.      Compensatory damages against all defendants in an amount to be proven at trial;

6.      Punitive damages against all defendants, except the City, in an amount to be proven at trial;

7.      An order awarding disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988; and

8.      Such other further relief that the court may deem just and proper.

Dated: New York, New York
       May 25, 2010

BY:_____/S_____
JON L. NORINSBERG (JN-2133)
225 Broadway, Suite 2700
New York, N.Y. 10007
(212) 791-5396

BY:_____/S_____
COHEN & FITCH LLP
JOSHUA P. FITCH (JF-2813)
GERALD M. COHEN (GC-0414)
225 Broadway, Suite 2700
New York, N.Y. 10007
(212) 374-9115

*Attorneys for Plaintiffs and the Putative Class*