## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 3

I.      DEFENDANTS' UNCONSTITUTIONAL PATTERN AND PRACTICE OF ISSUING
        SUMMONSES IN THE ABSENCE OF PROBABLE CAUSE. ........................................ 3

        A.      Statistical Evidence of Unconstitutional Summonses from the OCA Database ..... 4

        B.      The Percentage of Dismissals Has Remained Virtually Identical Over The Past
                Five Years. .................................................................................................. 5

        C.      The Conditions and Gross Deficiencies within the NYPD that Drive This
                Unlawful Pattern and Practice ....................................................................... 6

II.     CLASS WIDE ALLEGATIONS AND RELIEF SOUGHT ............................................... 7

        A.      The Relief Sought ......................................................................................... 7

III.    THE PROPOSED CLASS REPRESENTATIVES ...................................................... 7

ARGUMENT ............................................................................................................ 8

I.      A PLAINTIFF CLASS SHOULD BE CERTIFIED IN THIS MATTER. ......................... 9

        A.      The Proposed Class Satisfies Rule 23(a) ........................................................ 9

                1.      Ascertainability ............................................................................... 10

                        i.      The Proposed Class Can Easily Be Ascertained Based On Objective
                                Criteria ............................................................................... 10

                        ii.     Defendants' Likely "Mini-Trial" Argument Has Been Repeatedly
                                Rejected In Similar Civil Rights Class Actions ............................... 10

                2.      Numerosity – Rule 23(a)(1) ................................................................ 12

                3.      Common Questions of Law or Fact – Rule 23(a)(2) ............................... 13

                4.      Typicality – Rule 23(a)(3) ................................................................. 15

          5.       Adequacy of Representation – Rule 23(a)(4) ...........................................17

     B.    This Suit Qualifies as a Class Action under Rule 23(b) ......................................19

          1.       A Rule 23(b)(2) Class Should Be Certified ................................................19

          2.       A Rule 23(b)(3) Class Should Be Certified ................................................20

               i.       Common Legal and Factual Issues Predominate ...........................21

               ii.      A Class Action Is Superior to Other Methods of Adjudication ......24

CONCLUSION .................................................................................................................25

## **TABLE OF AUTHORITIES**

Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 522 (2nd Cir. 2000) .......................17

Bakalar v. Vavra, 237 F.R.D. 59 (S.D.N.Y. 2006) .........................................................................9

Boucher v. Syracuse University, 164 F.3d 113 (2nd Cir. 1999) .....................................................12

Broughton v. State, 37 N.Y.2d 451 (N.Y. 1975) ...........................................................................17

Brown v. Kelly, 244 F.R.D. 222 (S.D.N.Y. 2007) ..................................................................22, 24

Brown v. Kelly, 609 F.3d 467 (2nd Cir. 2010) ...........................................9, 10, 13, 21, 22, 23, 24

Burley v. City of New York, 2005 WL 668789 (S.D.N.Y.2005)................................11, 13, 22, 23

Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)......................................................................24

Casale v. Kelly, 257 F.R.D. 396 (S.D.N.Y. 2009)................................................................10, 23

Civic Assn. of Deaf of New York City, Inc. v. Giuliani, 915 F.Supp. 622 (S.D.N.Y. 1996)........14

Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473 (2nd Cir. 1995) .......................................12

Cromer Finance LTD v. Berger, 205 F.R.D. 113 (S.D.N.Y. 2001)................................................15

Cutler v. Perales, 128 F.R.D. 39, 45 (S.D.N.Y. 1989)..................................................................16

Daniels v. City of New York, 198 F.R.D. 409 (S.D.N.Y 2001).............9, 10, 11, 12, 13, 14, 19, 23

Finch v. New York State O.C.F.S., 252 F.R.D. 192 (S.D.N.Y. 2008) ..........................................14

Gortat v. Capala Bros., Inc., 2010 WL 1423018 (E.D.N.Y. 2010)................................................10

Hirschfeld v. Stone, 193 F.R.D. 175 (S.D.N.Y. 2000) .................................................................17

In re Amaranth Natural Gas Commodities Litigation, 2010 WL 3783714 (S.D.N.Y. 2010)..........9

In re Currency Conversion Fee Antitrust Litig., 224 F.R.D. 555 (S.D.N.Y. 2004)......................13

In re Initial Public Offering Securities Litigation, 227 F.R.D. 65 (S.D.N.Y. 2004)......................9

In re Initial Public Offerings Securities Litigation, et al. v. Merrill Lynch & Co., Inc. et al., 471

F.3d 24 (2nd Cir. 2006).................................................................................................................8

In re Master Key Antitrust Litig., 528 F.2d 5 (2nd Cir.1975)..........................................................25

In re MTBE Products Liability Litigation, 241 F.R.D. 435 (S.D.N.Y. 2007) ...............................15

In re Nasdaq Market-Makers Antitrust Litig., 169 F.R.D. 493 (S.D.N.Y. 1996)...................21, 22

In re Nassau County Strip Search Cases, 461 F.3d 219 (2nd Cir. 2006) .........................................23

In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2nd Cir. 2001) ....................22

Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418 (S.D.N.Y. 2009) ................................................20

Kuck v. Berkey Photo, Inc., 81 F.R.D. 736 (S.D.N.Y. 1979)..........................................................17

Loper v. New York City Police Department, 135 F.R.D. 81 (S.D.N.Y. 1991) ...............................19

Marisol A. v. Giuliani, 126 F.3d 372 (2nd Cir.1997) .......................................................9, 14, 15, 17

Martens v. Smith Barney, Inc., 181 F.R.D. 243 (S.D.N.Y. 1998)...................................................19

Pecere v. Empire Blue Cross and Blue Shield, 194 F.R.D. 66 (E.D.N.Y.2000) ...........................13

Ray M. v. Board of Educ., 884 F.Supp. 696 (E.D.N.Y. 1995) ..................................................15, 16

Rios v. Marshall, 100 F.R.D. 395 (S.D.N.Y.1983)..........................................................................25

Robidoux v. Celani, 987 F.2d 931 (2nd Cir. 1993)......................................................................12, 15

Robinson v. Metro-North R.R., 267 F.3d 147 (2nd Cir. 2001)............................................16, 19, 20

Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590 (2nd Cir.1986)......................................................22

Ventura v. New York City Health and Hosps. Corp., 125 F.R.D. 595 (S.D.N.Y. 1989) ..............14

Weyant v. Okst, 101 F.3d 845 (2nd Cir. 1996)................................................................................17

Plaintiffs respectfully submit this Memorandum of Law in support of their motion, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify a plaintiff class in the instant matter.

## PRELIMINARY STATEMENT

Plaintiffs, on behalf of themselves and others similarly situated, have brought this action in response to multiple and repeated constitutional violations that they have suffered as a result of the pattern and practice of the New York City Police Department ("NYPD") of issuing summonses to individuals in the absence of probable cause for offenses that were never committed.

Evidence of this pattern and practice is readily apparent from a review of the annual reports generated by the Office of Court Administration ("OCA"), which show that over the last five years (2004-2009) more than fifty percent (50%) of the Criminal Court Summonses ("C-Summonses") adjudicated throughout the city were dismissed each and every year.  Additionally, those same statistics reflect that ninety-nine percent (99.9%) of those dismissals occurred prior to ever reaching trial. Further, during that same period, twenty four percent (24%) of the total summons issued citywide were so clearly unsupported by probable cause that they were dismissed prior to even reaching arraignment.  These staggering statistics are not random anomalies or mere coincidences, but instead, are representative of a recurring and epidemic pattern of Constitutional violations by the NYPD, specifically, the pattern and practice of issuing summonses in the absence of probable cause.

This action seeks to end this ingrained practice of unconstitutional conduct by defendants. Moreover, and perhaps equally important, this action seeks to stop the engine that drives and motivates this unlawful pattern and practice – the NYPD's internal policy of requiring officers to issue a mandatory minimum number ("quota") of summonses, or face punishment for failing to do so.  As such, the instant class action is not only necessary to end the unconstitutional pattern and

1

practice of issuing summonses without probable cause, but also, to terminate the NYPD's unlawful internal polices  that have created and perpetuated this practice.

Plaintiffs SHARIF STINSON, MARIAM FARNUM, CHARLEAN FINLEY, RYBURN WALKES, JAMEL TOWE, CHRISTIAN DUDLEY, JOCELEY FERDINAND, GARY SHAW, MICHAEL BENNETT, CHANEL MEAUSA, DAVID THOMPSON, JULIUS DIXON, JOSEPH SARPONG, JEREMY THAMES, SEAN PETTIGREW, LEANDER GRIFFIN, BRIAN MORRIS, MICA ANCRUM, RICARDO JONES, VICTOR BRELAND, LINDSEY RIDDICK and MICHAEL RIDDICK (hereinafter "the Named Plaintiffs") are New Yorkers that were subjected to the NYPD's unconstitutional pattern and practice of issuing unconstitutional summonses.  The named plaintiffs seek to certify a class, pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), consisting of all persons who have been (or will be) issued summonses without probable cause, and whose summonses have been (or will be) dismissed as insufficient as a matter of law.

Plaintiffs' overarching common claim – that defendants have issued and continue to issue summonses in the absence of probable cause - should be adjudicated on a class-wide basis.  The overwhelming common proof of these constitutional violations - the objective evidence contained in the OCA and NYPD databases reflecting the staggering rate of C-Summons dismissals - establish that defendants maintain a pattern and practice of issuing summonses in the absence of probable cause for no articulable offense.  Defendants' conduct has impacted hundreds of thousands of New York City residents.  The Rule 23(a) prerequisites are easily met in this matter as: (1) the proposed class is sufficiently defined and easily ascertainable through the records maintained by OCA and the NYPD; (2) the putative class has hundred of thousands of members, which is reflected in those same statistics; (3) the claims and defenses involve common legal and factual issues concerning the existence of a pattern of the issuing unconstitutional summonses; (4) the Named Plaintiffs' claims and circumstances are the same as the absent class members they seek to represent, in that they all have been subjected to the same unconstitutional conduct and all

will benefit from the relief sought; and (5) the Named Plaintiffs and their counsel have, and will continue to, vigorously prosecute this action.

Rule 23(b)(2) is satisfied because defendants' conduct applies to all plaintiffs and the injunctive relief sought – for defendants to cease issuing summonses without probable cause and to remedy the conditions and deficiencies that have created this practice – will benefit the class as a whole.

Rule 23(b)(3) is appropriately applied to the proposed class because: 1) common issues – that the defendants had a pattern and practice of issuing summonses in the absence of probable cause – predominate the entire case; and 2) a class action is the superior method of adjudication due to the size of the class, the members' limited resources and the unlikelihood that their claims would ever proceed as individual lawsuits.  For all of the aforementioned reasons, this Court should certify a plaintiff class in the present matter.

## STATEMENT OF FACTS

**I.    DEFENDANTS' UNCONSTITUTIONAL PATTERN AND PRACTICE OF ISSUING SUMMONSES IN THE ABSENCE OF PROBABLE CAUSE.**

While plaintiffs need not prove the merits of their case at the certification stage, the evidence already known clearly establishes that officers within the NYPD continue a pattern and practice of issuing summonses in the absence of probable cause for offenses that were never committed.  Overwhelming evidence contained in the OCA and NYPD's own databases are proof positive of this pattern and practice. Additionally, this unconstitutional pattern and practice has been born of conditions created by the NYPD including the enforcement of a summons quota on a citywide basis. This mandatory requirement to issue an arbitrary amount of summonses has inevitably resulted in the unconstitutional pattern and practice alleged herein – the issuance of summonses in the absence of probable cause for offenses that were never committed.

### A.    Statistical Evidence of Unconstitutional Summonses from the OCA Database.

Probably the clearest evidence of the NYPD's pattern and practice of issuing of summonses in the absence of probable cause is found in the OCA's database, which shows that an astonishing number of the summonses that are adjudicated every year in Criminal Court (consistently over 50%) are dismissed prior to ever reaching trial.  Additionally, that same data also reflects that an alarming amount of the summonses are dismissed as defective or insufficient before ever reaching arraignment.[1]

Specifically, over the period from 2004 through 2009, there were 2,291,425 summonses adjudicated in the Criminal Courts throughout New York City and 1,185,412 of those summonses – over fifty percent (51.7%) - were dismissed.  (Fitch Decl., Ex. A-F). Additionally, of the summonses dismissed throughout that time, only 1,945 summons cases – less than one percent (.1%) – were acquittals, i.e. dismissed after trial.  (Id.)  Taken together, those numbers reflect that over ninety nine percent (99.9%) of all summonses were dismissed *prior to trial*, i.e., based upon judicial review of the legality of the summons.  Given this objective reality, there can be only one conclusion: the majority of summonses being issued at any given time throughout the city lack probable cause and are being issued when no summonsable offense has been committed.

Further, the OCA data also reflects that a significant percentage of the summonses are dismissed even *prior to arraignment*.    Specifically,    from    2004    through    2009

---

[1] See the OCA Statistics for Summons Activity for the year of 2004 ("2004 Stats"); annexed to the Declaration of Joshua P. Fitch, ("Fitch Decl."), Ex. A; the OCA Statistics for Summons Activity for the year of 2005 ("2005 Stats"); Fitch Decl., Ex. B; the OCA Statistics for Summons Activity for the year of 2006 ("2006 Stats"), Fitch Decl., Ex. C; the OCA Statistics for Summons Activity for the year of 2007 ("2007 Stats"), Fitch Decl., Ex. D; the OCA Statistics for Summons Activity for the year of 2008 ("2008 Stats"), Fitch Decl., Ex. E; the OCA Statistics for Summons Activity for the year of 2009 ("2009 Stats"), Fitch Decl., Ex. F.

there were approximately 3,597,964 summonses filed throughout New York City and 843,865 of those summonses – or twenty four percent (24%) - were dismissed as insufficient prior to ever reaching arraignment.  (Fitch Decl., Ex. A-F).  Thus, almost one out of every four summonses issued in New York City was not only insufficient as a matter of law, but also, contained allegations that were so facially deficient that they could not even withstand the most basic judicial scrutiny.  Once again, these statistics are objective evidence that there is a pattern and practice within the NYPD of officers issuing summonses without probable cause for behavior that never occurred or that does not constitute a crime.

**B.     The Percentage of Dismissals Has Remained Virtually Identical Over The Past Five Years.**

The above numbers are not a statistical anomaly, as statistics in all of the above categories have remained virtually *identical* over the past five years.  For example, in 2004, 53.6% (190,941 out of 356,029) of the summonses adjudicated were dismissed prior to trial; in 2005, 53.5% (221,245 out of 413,229)  of the summonses adjudicated were dismissed prior to trial; in 2006, 51.3% (195,304 out of 380,278) of the summonses adjudicated were dismissed; in 2007, 50.7% (186,273 out of 367,227) of the summonses adjudicated were dismissed prior to trial; in 2008, 50.5% (193,013 out of 382,002) of the summonses adjudicated were dismissed prior to trial, and; in 2009, 50.01% (196,691 out of 392,660) of the summonses adjudicated were dismissed prior to trial.[2]  (Fitch Decl., Ex. A-F).  The fact that over the last five (5) years the amount of summonses dismissed is in consistently above 50% is yet further compelling evidence of the pattern and practice alleged herein.

---

[2] These percentages are calculated by taking the total number of dispositions in any given calendar year  – i.e., the total number of summonses that were actually adjudicated in Criminal Court for that  year – and by then dividing that number by the total number of summons that were dismissed in that same calendar year.

Moreover, all of the aforementioned statistics are purely objective evidence of a pattern and practice of issuing summonses in the absence of probable cause, which is only further corroborated by the individual experiences of the Named Plaintiffs.   (See, e.g., Amended Complaint, ¶¶ 228 – 382).   In addition, equally as important as the sheer number of summonses that have been dismissed, is the reason for their dismissal – namely, that they were somehow defective or the allegations simply did not establish any offense.   In either situation the pattern is clear, the requisite probable cause necessary to properly issue them is lacking, yet they continue to be issued because the NYPD has created a mandatory policy of issuing summonses to meet monthly quotas.

C.     **The Conditions and Gross Deficiencies within the NYPD that Drive This Unlawful Pattern and Practice.**

The NYPD has created the circumstances under which this unlawful pattern and practice exists and continues to thrive.   Specifically, the vast number of summonses that are dismissed each and every year is the result of the NYPD's policy of imposing a summons quota on its officers. This summons quota requires NYPD officers to issue a minimum number of summonses a month or face adverse employment consequences, which in turn leads officers to issue summonses without concern for probable cause simply to make their "number."   Evidence of this summons quota is apparent in the hundreds hours of recordings provided by officers Adhyl Polanco and Adrian Schoolcraft that illustrate the constant pressure placed on officers to issue a mandatory amount of summonses. (See, e.g., Amended Complaint, ¶¶ 10-24, 68-69, 73). Further, these same recordings also make clear that officers are literally instructed to summons individuals in the absence of probable cause and "articulate" charges at a later time. (Id. at ¶ 24).

6

## II.      CLASS WIDE ALLEGATIONS AND RELIEF SOUGHT

On behalf of the plaintiff class, the Named Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 challenging defendants' violation of their Fourth, Fifth and Fourteenth Amendment rights. Plaintiffs were falsely arrested, detained and issued summonses in the absence of probable cause for offenses that were never committed in violation of the Fourth and Fourteenth Amendments.

### A.      The Relief Sought

Plaintiffs seek a judgment declaring that their constitutional right to be free from illegal seizures and unlawful summonses has been violated by defendants' actions.

Plaintiffs also seek critical injunctive relief against defendants, which, among other things would: prohibit defendants from enforcing a summons quota and requiring officers to issue an arbitrary number of summonses regardless of probable cause.

Plaintiffs also seek compensatory damages on behalf of themselves and the proposed class. Compensatory damages are vital to this case because this pattern and practice has continued within the NYPD for a lengthy period of time, and has resulted in literally hundreds of thousands of constitutional violations of New York citizens.

## III.     THE PROPOSED CLASS REPRESENTATIVES

The Named Plaintiffs all share a common singular experience as the result of defendants' unconstitutional acts – namely the unjustified harassment, humiliation and ultimate loss of liberty of being seized and issued a summons without probable cause for having committed no cognizable offense under the law.  Further, they are all united by a common interest and purpose – to receive compensation for themselves and for all the individuals who have been similarly victimized by this unlawful practice and to bring an end to this pattern of unconstitutional acts by the NYPD.  Finally, without the vehicle of class litigation, the representative plaintiffs know that

the class members would undoubtedly have little or no recourse to proceed with this litigation as solitary plaintiffs.

## ARGUMENT

**I.    A PLAINTIFF CLASS SHOULD BE CERTIFIED IN THIS MATTER.**

The Named Plaintiffs seek to represent a class, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), consisting of all persons who have been or will be issued a summons in the absence of probable cause for offenses that were never committed and whose summonses were ultimately dismissed prior to trial.

Class certification is appropriate where plaintiffs establish that the prerequisites of Rule 23(a) are satisfied, and that a class action may be maintained under one of the subsections of Rule 23(b).  Rule 23(a) permits class certification if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims and defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  See Fed. R. Civ. P. 23(a).   Further, plaintiffs may seek class relief where defendants "have acted or refused to act on grounds generally applicable to the class," so that injunctive or declaratory relief is appropriate "with respect to the class as a whole," Fed. R. Civ. P. 23(b)(2), or where question of law or fact common to the members of the class predominate over any questions affecting only individuals members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

In considering whether to certify, the district court should not address the merits of the underlying claim that are unrelated to a Rule 23 requirement so as to ensure that a class certification motion does not turn into a pretext for a trial on the merits.  See In re Initial Public Offerings Securities Litigation, et al. v. Merrill Lynch & Co., Inc. et al., 471 F.3d 24, 41 (2nd Cir. 2006)(class certification motion should "not become a *pretext for a partial trial on the*

*merits*.")(emphasis added).  Additionally, the Rule 23 requirements should be liberally construed.

See Brown v. Kelly, 609 F.3d 467, 485 (2nd Cir. 2010)("[W]e are "'noticeably less deferential

when the district court has *denied* class status than when it has certified a class."')(citation

omitted).  Finally, class certification should be granted in cases where certifying a "class action

would achieve economies of time, effort, and expense."  Id. at 483.

> **A.      The Proposed Class Satisfies Rule 23(a)**

> **1.      Ascertainability**

In addition to the requirements of Rule 23 contained in the Federal Rules of Civil

Procedure, there is an implied requirement of ascertainability.  See Daniels v. City of New York,

198 F.R.D. 409, 414 (S.D.N.Y. 2001)(the proposed class must be sufficiently definite).

Moreover, at the certification stage, it is unnecessary that the all of the class members be

ascertained, but instead only requires that they are capable of eventually being ascertained.  See

Bakalar v. Vavra, 237 F.R.D. 59, 64 (S.D.N.Y. Jul 28, 2006)("While class members need not be

ascertained prior to certification, they must be ascertainable at some stage of the

proceeding.")(citation omitted); Marisola A. v. Giuliani, 126 F.3d 372 (2nd Cir. 1997)(class of

abused and neglected children whose cases were mishandled by child welfare officials sufficiently

definite); Daniels, 198 F.R.D. 409 (class of plaintiffs stopped and frisked without reasonable

suspicion sufficiently definite).  Further certification is appropriate where members of the class

can be established by objective criteria.  See In re Initial Public Offering Securities Litigation, 227

F.R.D. 65, 88 (S.D.N.Y. 2004)("'An identifiable class exists if its members can be ascertained by

reference to objective criteria.'")(citation omitted).

Additionally, ascertainability only requires that the class be described in a way that enables

the court to identify who would be included.  See In re Amaranth Natural Gas Commodities

Litigation, 2010 WL 3783714, *13 (S.D.N.Y. Sep 27, 2010)("[T]he requirement that there be a

class will not be deemed satisfied unless the class description is sufficiently definite so that it is

administratively feasible for the court to determine whether a particular individual is a member.")(citation omitted).   Moreover, ascertainability is not a strict standard and should be examined leniently.  See Gortat v. Capala Bros., Inc., 2010 WL 1423018, *2, (E.D.N.Y. Apr 09, 2010)("This standard, however, is not *demanding*. It is designed only to prevent the certification of a class whose membership is *truly indeterminable*.")(emphasis added).

>            **i.**      **The Proposed Class Can Easily Be Ascertained Based On Objective Criteria.**

In the present case the class is clearly defined as all individuals who were or will be issued a summons in the absence of probable cause for offenses that were never committed.[2] Moreover, the class is readily ascertainable by the identification of those individuals who had their summonses dismissed prior to trial.  Further, this information can be easily obtained through objective criteria such as statistics and records contained in the OCA and NYPD databases. Specifically, the OCA already publishes statistics with respect to the amount of summonses that are dismissed, the amount dismissed prior to any trial and the amount that are dismissed prior to any arraignment on the charges. (Fitch Decl., Ex. A-F).

>            **ii.**      **Defendants' Likely "Mini-Trial" Argument Has Been Repeatedly Rejected In Similar Civil Rights Class Actions.**

Presumably, the City will argue -- as they have in similar cases[3] -- that ascertainability is not met in this case because it would require the court delve into thousands of mini-trials in order to determine whether each summons was issued upon probable cause. According to the law of this Circuit, however, this argument is without merit and has been squarely rejected by the court each and every time it was previously made by the City.  For example, the court flatly rejected this very same assertion in Daniels, supra, where the proposed class was comprised of all individuals who *alleged* that they had been stopped and frisked absent reasonable suspicion.  See Daniels, 198

---

[2] The applicable class period consists of all summonses dismissed from May 2007 to present, based upon the three year statute of limitations which governs actions brought under 42 U.S.C. § 1983.
[3] See, e.g.,  Daniels, supra, Brown, supra and Casale v. Kelly, 257 F.R.D. 396 (S.D.N.Y. 2009).

F.R.D. at 416.  Accordingly, this argument should be similarly rejected in the present matter as the proposed class definition is nearly identical to the one that was certified in Daniels – namely, all individuals who were issued summonses in the absence of probable cause.  In fact the sole difference between the two cases is that the proposed class members herein were *stopped and issued summonses absent probable cause* instead of merely being *stopped and frisked absent reasonable suspicion*. That similarity notwithstanding, any such argument is further rendered deficient by the fact that each and every member of the proposed class had their summons dismissed prior to trial. As such, any "mini trial" argument fails because a Criminal Court judge – at the time each summons was examined by the court – has already made the determination that a factual inquiry into the behavior alleged was unnecessary because the allegations were insufficient to establish probable cause as a matter of law.

Additionally, any such argument asserting a necessity to address a merits issue such as probable cause runs afoul of what is required at the certification stage.  While the existence of such unresolved issues are relevant to the requirements of Rule 23 –  in that they are the predominant common factual and legal issues in this case –  the *resolution* of those issues is only relevant to the ultimate merits at the core of this litigation, and is unnecessary for certification. Indeed, if plaintiffs were required to *prove* the constitutional violations alleged herein, a decision to certify would also be a determination of liability, rendering any further litigation moot.  See Daniels, 198 F.R.D. at 416 ("This argument is meritless and, if accepted, would preclude certification of just about any class of persons alleging injury from a particular action. These persons are linked by this common complaint, and the possibility that some may fail to prevail on their individual claims [if brought as individual claims] will not defeat class membership."); Burley v. City of New York, 2005 WL 668789, *5 (S.D.N.Y. 2005)("Whether plaintiffs will be able to carry their burden of demonstrating the existence of an unlawful policy or practice is a merits question that is beyond the scope of plaintiffs' motion for class certification.").  Given the

fact that the proposed class in this case has been clearly defined and can be readily ascertained through the use of objective evidence obtained from the OCA and NYPD, plaintiffs have readily met this requirement and certification should be granted.

### 2.      Numerosity – Rule 23(a)(1)

The first statutory prerequisite for class certification is that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).  As such, where a class exceeds 40 members, temporal and monetary considerations create a presumption of numerosity.  Daniels, 198 F.R.D. at 409 (citing Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2nd Cir. 1995).  That some class members may have yet to be identified does not frustrate the proposed class's suitability in any way.  Robidoux v. Celani, 987 F.2d 931, 935 (2nd Cir. 1993).

In the instant matter, twenty-two (22) plaintiffs have been proposed as class representatives. Additionally, since the time of the filing of the amended complaint, plaintiffs' counsel have been contacted by approximately eighteen (18) more individuals who have been victimized by this unlawful pattern and practice. As such, the amount of class members whose identities have already been ascertained presumptively meets the numerosity requirement, notwithstanding the hundreds of thousands of additional unknown plaintiffs reflected in the OCA statistics. See Herbert Newberg & Alba Conte, Newberg of Class Actions § 3:05 (4th ed. 2002)(numerosity under Rule 23(a)(1) is easily met when the potential number of class members are in the hundreds or thousands).

Additionally, Class certification is also appropriate here because the precise number of future members cannot be enumerated or identified.  See Boucher v. Syracuse University, 164 F.3d 113, 119 n.11 (2nd Cir. 1999).  In the present case, OCA and criminal court data alone reflect the fact that this unconstitutional pattern and practice has carried on for at least the last five years. (Fitch Decl., Ex. A-F).  Further, given the consistency of the statistical comparisons year after year, it is reasonable to believe that the number of future class members will also number in the

hundreds of thousands.  This type of common sense inference has already been affirmed in this Circuit as a proper method of satisfying the numerosity requirement.  See Pecere v. Empire Blue Cross and Blue Shield, 194 F.R.D. 66, 69 (E.D.N.Y.2000)("'[P]laintiffs need not provide a precise quantification of their class, since a court may make 'common sense assumptions' to support a finding of numerosity.'")(citations omitted).

Further, the difficulty in discovering the actual identities of the class members in this case also militates in favor of certification.  Specifically, every class member has had their summons dismissed, which means their personal information would be sealed making it impossible to ascertain their identities at this stage.  This situation is analogous to the situation in Burley, where numerosity was easily met for precisely this reason.  See id. at *3 ("Because the proposed DAT Class exceeds the Second Circuit's forty-person threshold and the identities of many potential class members cannot easily be ascertained, this Court finds that the DAT Class satisfies the numerosity requirement.").  Given this obvious difficulty, combined with the sheer number of potential plaintiffs, the matter cannot practicably be joined and thus the numerosity requirement is easily met in this case.

### 3.    Common Questions of Law or Fact – Rule 23(a)(2)

Commonality does not require that each class member have identical claims, only that plaintiffs all share *at least one* question of law *or* fact in common.  See Burley, 2005 WL at *4 (citing In re Currency Conversion Fee Antitrust Litig., 224 F.R.D. 555, 562 (S.D.N.Y. 2004)). Additionally findings of factual differences among the claims of the individual class members do not foreclose a finding of commonality.  See Daniels, 198 F.R.D. at 417 (citations omitted).  This is particularly true where, as here, the claims of a proposed class stem from the same alleged unconstitutional conduct, pattern, practice, or policy of the defendants.  See Brown, 609 F.3d at 484 ("As we have noted, where plaintiffs were 'allegedly aggrieved by a single policy of defendants,' and there is 'strong commonality of the violation and the harm,' this is precisely the

type of situation for which the class action device is suited."); Marisol A. v. Giuliani, 126 F.3d 372, 377 (2nd Cir. 1997)(upholding class certification for children whose cases were mishandled by child welfare where "the actions or inactions of defendants are not isolated or discrete instances but, rather, form a *pattern of behavior* that commonly affects all of the proposed class members.")(emphasis added); Finch v. New York State Office of Children and Family Services, 252 F.R.D. 192, 201 (S.D.N.Y. 2008)(finding commonality met despite possible individual variations between plaintiffs because "any variation in the reasons for each person's delayed hearing does not negate the common questions of fact and law."); Daniels, 198 F.R.D. at 418 ("In sum, because the injuries complained of by the named plaintiffs allegedly resulted from the same unconstitutional practice or policy that allegedly injured or will injure the proposed class members-*namely suspicionless stops*-the commonality requirement is satisfied.")(emphasis added); Civic Assn. of Deaf of New York City, Inc. v. Giuliani, 915 F.Supp. 622, 632 (S.D.N.Y. 1996)(finding common operative facts and legal theories trump questions peculiar to individual members of plaintiff class suing to enjoin removal of alarm boxes from city streets); Ventura v. New York City Health and Hosps. Corp., 125 F.R.D. 595, 600 (S.D.N.Y. 1989)("the existence of individualized factors or variations does not preclude [a] finding of [the] existence of common questions where pattern, practice, or policy exists").

In the present matter, plaintiffs have all alleged violations of their rights under the Fourth and Fourteenth Amendments stemming from a single, unitary course of conduct – a pattern and practice of issuing summonses in the absence of probable cause for offenses that were never committed.  As has been recognized by this Circuit, "[t]he fact that the claims of the proposed class stem from the same alleged unconstitutional conduct of the defendants proves the existence of common questions of law or fact."  Daniels, 198 F.R.D. at 417.  Moreover, certification is appropriate in this case because the plaintiffs' are challenging the consequences of defendants' "practice" – issuing summonses for behavior that does not constitute a summonsable offense - and

not conduct specific to the individual plaintiffs.  See Ray M. v. Board of Educ., 884 F.Supp. 696, 699 (E.D.N.Y. 1995)(citations omitted)("Moreover, because the named plaintiffs 'are challenging a *practice* of [defendants], and not [defendants'] conduct with respect to the individual plaintiff[s],' they have satisfied Rule 23(a)'s commonality requirement.")(alteration added).

Further, the common questions of law or fact subsume any individualized inquiries.  Such common questions include, but are not limited to: 1) whether the City of New York has a pattern and practice of issuing summonses in the absence of probable cause for offenses that were never committed; 2) whether this pattern and practice has resulted in the constitutional violations of class members as a group; 3) whether the individual defendants are entitled to the affirmative defenses of privilege or qualified immunity; 4) whether the City's enforcement of a summons quota and its deliberate indifference to training regarding summonsable offenses has perpetuated this practice   As such, the proposed class members not only share the same common issues of law and fact between them, but as will be discussed infra, those issues predominate all others and thus the requirements of Rule 23(a)(2) are met.

### 4.      Typicality – Rule 23(a)(3)

Rule 23(a)(3) requires that the claims of the class representatives must be "typical" of those of the absent class members. Fed. R. Civ. P. 23(a)(3).  Much of the same legal analysis applies to both commonality and typicality. See Marisol A. v. Giuliani, 126 F.3d 372, 376 (2nd Cir.1997)( "The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis."); In re MTBE Products Liability Litigation, 241 F.R.D. 435, 444 (S.D.N.Y. 2007)(same).  Further, when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiffs and the putative class, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims. See Robidoux, 987 F.2d at 937; Cromer Finance LTD v. Berger, 205 F.R.D. 113, 122 (S.D.N.Y. 2001) (The appropriate question is whether "'the disputed issue of law or fact occupies essentially

the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class.'") (citation omitted);  Additionally, typicality does not require that each member of the class suffer each and every harm alleged by the class.  See Ray M., 884 F.Supp. at 699 ("Although the claim of deprivation encompasses a number of categories of injury, the typicality requirement does not dictate that each named plaintiff claim that he or she has suffered *every* type of harm alleged by the class.")(emphasis added).

Further, typicality does not require plaintiff to prove the merits of the case but instead only that plaintiffs' case is based on the same legal theory and can establish the typicality requirement through anecdotal evidence.  See Robinson v. Metro-North R.R., 267 F.3d 147, 155-56  (2nd Cir. 2001)("[W]hen each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability…[p]laintiffs' statistical report, 'in conjunction with the anecdotal evidence, satisfie[d] the Class Plaintiffs' burden of demonstrating' commonality *and* typicality.")(emphasis added).  Finally, typicality is met where the class as a whole would benefit by the success of the named plaintiffs.  See Cutler v. Perales, 128 F.R.D. 39, 45 (S.D.N.Y. 1989)("[V]iewed in the most practical way, typicality is present when all members of the putative class would benefit by the success of the named plaintiff[s].").  Based on this criteria, typicality is clearly met in this case.

As previously stated, in the instant matter the plaintiffs' claims are all based solely on one theory – that defendants have a pattern and practice of issuing summonses without probable cause for behavior that did not occur or that does not constitute a summonsable offense.  This claim is the same for all plaintiffs and is the central claim in this litigation.  Additionally, plaintiffs in this case have much more than just anecdotal evidence to support their theory. The plaintiffs have the support of the OCA data, which reflects the astonishingly large number of summonses dismissed prior to trial each and every year.  Based on the number of dismissals alone, plaintiffs have established a strong presumption that the NYPD has a pattern and practice of issuing these

summonses without probable cause.  <u>See</u> <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2nd Cir. 1996)("'evidence of a subsequent dismissal [is] admissible to refute ... justification.'")(citing <u>Broughton v. State</u>, 37 N.Y.2d 451, 458 (N.Y. 1975)("evidence of a subsequent dismissal ... [is] admissible to refute the affirmative defense of justification.")

Finally, the class as a whole would clearly benefit by the success of the named plaintiffs herein.  Were the plaintiffs to succeed, the equitable relief sought would benefit those individuals who would be affected by this unlawful pattern and practice in the future.  Additionally, the monetary damages sought would serve to compensate all of the victims who have already been, and continue to be, harmed by this practice.  Given the obvious similarities in the claims and defenses as well as the benefits the class would reap as a whole were the named plaintiffs to succeed, it is clear that the requirements of typicality are met in this case.

### 5.   Adequacy of Representation – Rule 23(a)(4)

Rule 23(a)(4) requires that class representatives must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy of representation requirement entails two factors: (1) the interests of the named plaintiffs cannot be antagonistic to those of the remainder of the class, and (2) class counsel must be qualified, experienced and generally able to conduct the litigation. <u>See</u> <u>Hirschfeld v. Stone</u>, 193 F.R.D. 175, 183 (S.D.N.Y. 2000), citing <u>Marisol A.</u>, 126 F.3d at 378; <u>See also</u> <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 522, 60 (2nd Cir. 2000).

In the instant matter both requirements have been met.  With respect to the adequacy of the representative plaintiffs, under the Rule 23(a)(4) analysis, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." <u>Hirschfeld v. Stone</u>, 193 F.R.D. at 183 (citing <u>Kuck v. Berkey Photo, Inc.</u>, 81 F.R.D. 736, 740 (S.D.N.Y. 1979). Far from being in conflict, the interests of the named plaintiffs are *identical* to those of the putative class because all plaintiffs have been subject to the same unconstitutional actions by

defendants, and all seek to enjoin the same practices and policies of the named defendants. Further, all plaintiffs intend to pursue the same claims as the members of the class and, if successful, the relief they secure at law and in equity will benefit the class as a whole. Additionally, all plaintiffs were wronged by the same alleged unconstitutional conduct on the part of defendants, and all are proceeding on the same legal theory. As such, in the present matter, not only do the  interests or claims of the representative plaintiffs' not conflict with the class, but are utterly and completely harmonious, thus easily satisfying the adequacy requirements of Rule 23(a)(4).

As for the second requirement, the two firms appearing on behalf of the class are competent and experienced in federal class action and federal civil rights litigation.  Jon L. Norinsberg, Esq. is a civil rights attorney with almost twenty (20) years of civil litigation experience.  Further, Mr. Norinsberg has extensive experience in civil rights litigation against state and local governments, especially the NYPD, and also has experience in class action lawsuits in the Southern District of New York.  Additionally, the law firm working with Jon L. Norinsberg, Esq., Cohen & Fitch LLP has extensive experience in civil rights litigation against the City of New York.  The partners of Cohen & Fitch LLP are former prosecutors and have extensive experience in police, prosecutorial and court practices in the criminal courts throughout New York City.

Moreover, the partners of Cohen & Fitch LLP also maintain a significant criminal defense practice throughout the city.  In that capacity, they have spent hundreds of hours in the Summons Parts within the Criminal Courts throughout the City of New York and, as a result, have first-hand knowledge of the large volume of summonses that are dismissed every day as insufficient as a matter of law.  Collectively, the two firms have litigated thousands of civil rights claims against the City of New York and have an intimate knowledge of the criminal process from arrest through prosecution, as well as the issuance and the prosecution of summonses.

### B.     This Suit Qualifies as a Class Action under Rule 23(b)

The Named Plaintiffs seek to represent a class, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), consisting of all persons who have or will be issued a C-Summonses without probable cause for offenses that were never committed.

### 1.     A Rule 23(b)(2) Class Should Be Certified

Rule 23(b)(2) permits class actions for declaratory or injunctive relief where "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ P. 23(b)(2).  Further, as this Court noted in Loper v. New York City Police Department, 135 F.R.D. 81 (S.D.N.Y. 1991), class certification under Rule 23(b)(2) is particularly appropriate in civil rights litigation.  See id. at 83 ("Without class certification, their case – and its requested relief with respect to all similarly situated persons – could fail on a technicality.  Indeed, it is in part for concerns such as these that *civil rights actions are 'paradigmatic 23(b)(2) class suits.*'")(citations omitted)(emphasis supplied).

Certification under this section is particularly appropriate in this case as the acts applicable to the class as a whole are the issuance of summonses in the absence of probable cause.  Additionally, while plaintiffs do seek significant monetary damages, there can be no question about the overriding importance of the injunctive relief sought as well, given: 1) defendants' continuation of this pattern and practice over the past five (5) years in the face of evidence of its existence; and 2) defendants' continued enforcement of the summons quota over this time period.  See Daniels, 198 F.R.D. 409 (certifying 23(b)(2) class where named plaintiffs sought monetary damages and injunction to halt suspicionless stop and frisk policy); Martens v. Smith Barney, Inc., 181 F.R.D. 243, 260 (S.D.N.Y. 1998)("Money damages cannot be the predominant form of relief plaintiffs seek…, but can be part of an overall menu of relief that is predominantly equitable.").  Expounding on this point, the Second Circuit in Robinson, supra, explicitly enumerated the

procedure for analyzing 23(b)(2) certification requests where injunctive relief and monetary damages are sought:

> The district court may allow (b)(2) certification if it finds. . . that (1) the positive *weight*…of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed, and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy.

> Id. at 164 (emphasis added).

Application of this jurisdiction's balancing approach makes clear that the injunctive relief sought in this case is sufficiently important to warrant (b)(2) certification.   Defendants' unconstitutional pattern and practice frustrates the liberties and freedoms of the individuals who make up the communities and neighborhoods that are predominantly targeted.  Further, while the size of the class is potentially very large, the relatively small monetary compensation sought by each class member confirms that the driving force behind this action is ultimately the need to put an end to the unconstitutional harassment perpetuated by defendants' pattern of behavior. Additionally, courts in this circuit have already found far less meaningful injunctive relief to predominate over monetary damages in cases where both were sought.  See, e.g., Jermyn v. Best Buy Stores, L.P., 256 F.R.D. 418, 434 (S.D.N.Y. 2009)("Such damages are insufficient to incent a plaintiff to bring suit [individually]; they are exceeded by the filing fee. However, a reasonable plaintiff aggrieved by Best Buy's policy would want to prevent Best Buy from committing *wrongful acts* in the future.")(emphasis added).  For all of these reasons, the sheer *need* for the equitable relief to the plaintiffs is what makes it predominate, notwithstanding the monetary relief sought, thus rendering Rule 23(b)(2) certification appropriate.

### 2.      A Rule 23(b)(3) Class Should Be Certified

The Named Plaintiffs also seek class certification pursuant to Fed. R. Civ. P. 23(b)(3).  As this Court has recognized, courts may certify class actions under Rule 23(b)(2) and 23(b)(3) when the requirements of both are satisfied, and injunctive relief and damages are both important

components of the requested relief. See In re Nasdaq Market-Makers Antitrust Litig., 169 F.R.D. 493, 515 (S.D.N.Y. 1996)("In fact, where injunctive relief and damages are both important components of the relief requested, court[s] have regularly certified an injunctive class under Rule 23(b)(2) and a damages class under Rule 23(b)(3) in the same action.").

Rule 23(b)(3) certification is appropriate if "the court finds (1) that the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy…" Fed. R. Civ. P. 23(b)(3).   Further, Rule (b)(3) certification is especially appropriate in situations where, as here, "the Plaintiff Class member's claims all arise from the *same core allegation*." Brown, 609 F.3d at 484 (emphasis added).

### i.        Common Legal and Factual Issues Predominate

Rule 23(b)(3) certification is appropriate in cases in which common legal or factual issues predominate over individual issues and where a class action is superior to other methods of adjudication.  Fed.R.Civ. 23(b)(3).  This requirement is met "'if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, …predominate over those issues that are subject *only* to individualized proof.'" Brown, 609 F.3d at 483 (citation omitted)(emphasis added).   The Second Circuit has made it clear, however, that this does not preclude certification in cases subject to some level of individualized proof, but instead "Rule 23(b)(3) requires [only] that common questions *predominate*, not that the action include *only* common questions." Id. at 484 (emphasis added).  Nor do variations in how individual defenses may apply to members of the class individually prevent 23(b)(3) certification. See Brown, 609 F.3d at 483 ("'As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification under Rule 23(b)(3).").

Further, although predominance is a more stringent inquiry, "satisfaction of the typicality requirement of Rule 23(a)…goes a long way toward satisfying the Rule 23(b)(3) requirement of commonality." Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2nd Cir.1986). Additionally, predominance can still be met even where there are various individual questions throughout the class. See In re Nasdaq, 169 F.R.D. at 515 ("The predominance requirement is satisfied unless it is *clear* that individual issues will *overwhelm* the common questions and render the class action valueless.")(emphasis added). In fact there need only be one common question of fact and a single common question of law in order to satisfy the predominance inquiry. See, e.g., Burley 2002 WL at *6 (predominance requirement satisfied where plaintiffs raised "one common question of fact... and at least one common question of law.")(citation omitted).

In the present matter, it is clear that the central common questions of fact and law at the heart of plaintiffs' claim predominate over individualized circumstances unique to each class member: 1) whether defendants have engaged in a pattern and practice of issuing summonses in the absence of probable cause for no summonsable offense; 2) whether that pattern and practice has been fueled and motivated by the requirement that officers issue an arbitrary minimum number of summonses; 3) whether that pattern and practice has been perpetuated by gross inadequacies in training regarding probable cause and identifying behavior constituting a summonsable offense; and 4) whether and in what ways defendants have violated plaintiffs constitutional rights by summonsing them. See, e.g., Brown v. Kelly, 244 F.R.D. 222, 237 (S.D.N.Y. 2007)(certifying 23(b)(3) class where common questions were "(1) whether defendants maintained an unconstitutional policy…and (2) whether defendants violated individuals' constitutional rights by arresting, summoning, or prosecuting them…"), aff'd in part at 609 F.3d 467, 483 (2nd Cir. 2010)("[a]lthough a defense may arise and may affect different class members differently, this does not compel a finding that individual issues predominate over common ones"), citing In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 138 (2nd Cir. 2001).

Further, plaintiffs' claims are all subject to generalized proof such as the purely objective OCA statistical evidence of the sheer volume of summonses dismissed prior to trial. As previously stated, the allegations contained within these summonses were already judicially determined to be insufficient as a matter of law. Moreover, this evidence is readily available within the OCA and NYPD databases and reveals all summons issued, adjudicated, dismissed and tried throughout the city making the determination of class membership academic. See, e.g., In re Nassau County Strip Search Cases, 461 F.3d 219, 229 (2nd Cir. 2006):

> Defendants possess, but have not disclosed, records of all the newly-admitted misdemeanor detainees strip searched pursuant to the blanket policy. Absent class certification and its attendant class-wide notice procedures, most of these individuals-who potentially number in the thousands-likely never will know that defendants violated their clearly established constitutional rights, and thus never will be able to vindicate those rights.

> Id.

In opposition to the overwhelming evidence that predominance is met, the City defendants will presumably argue, as they did in Daniels, Brown and Casale that certification is improper because it would result in thousands of "mini-trials" in order to determine whether the affirmative defense of probable cause would be available for every summons. As previously stated, this argument was rejected in Daniels, Brown and Casale and should be rejected here. See Daniels, 198 F.R.D. at 414 ("Although factual distinctions exist among potential class members, the parade of mini-trials predicted by defendants will not be necessary to manage a (b)(3) class."). Additionally, this argument only illustrates that this common question predominates, as this defense would be applicable to the class as a whole and therefore constitutes a predominant common legal issue. See Brown, 609 F.3d at 486 ("Even if the district court ultimately agrees with defendants that the plaintiffs must still establish termination in their favor however, this threshold legal question *is itself a common preliminary issu*e.")(emphasis added). Notwithstanding, any determination on the merits of such a defense, which is applicable to the class as a whole, is inappropriate at the certification stage. See Burley, 2005 WL at *5 ("Whether

23

plaintiffs will be able to carry their burden of demonstrating the existence of an unlawful policy or practice is a *merits* question that is beyond the scope of plaintiffs' motion for class certification.").

For all of the aforementioned reasons, all of the issues is this case – both legal and factual, whether relating to claims or defenses – are common to the class as whole and permeate each and every aspect of this case, readily satisfying the predominance requirement of Rule 23(b)(3).

### ii.    A Class Action Is Superior to Other Methods of Adjudication

Finally, plaintiffs also satisfy the second prong of Rule 23(b)(3).  "Class actions are the superior method for resolving controversies when the main objectives of Rule 23 are served; namely the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979). Given the sheer number of potential class members, a class action is not just superior to other methods of adjudication; it is the *only* reasonable method of adjudication.  Similarly, consolidating a class involving hundreds of thousands of plaintiff promotes judicial economy.  Further, since the plaintiffs seek prospective injunctive relief, individual lawsuits could lead to potentially inconsistent results.

In the present matter, the plaintiffs allege that they suffered constitutional violations as the result of a single pattern and practice, making class certification especially appropriate.  See Brown, 609 F.3d at 484 ("where plaintiff were 'allegedly aggrieved by a single policy of the defendants,' and there is 'strong commonality of the violation of the harm,' this 'is precisely the type of situation for which the class action device is suited.'").   Additionally, without class certification, it is a virtual certainty that the constitutional violations suffered by plaintiffs herein would go unadjudicated, as many of the potential class members simply do not possess the knowledge or resources to vindicate their rights through individualized lawsuits.  See Brown, 244 F.R.D.at 238-39 (S.D.N.Y. 2007)("most members of the [class] lack the resources necessary to bring individual lawsuits and therefore, absent class certification, their rights will go

unvindicated."). Further, given the seemingly minimal length of detention, and ultimate damages suffered by the majority of class plaintiffs, the likelihood that individuals would be able to attract attorneys willing to take their cases is a virtual nullity. See Rios v. Marshall, 100 F.R.D. 395, 409 (S.D.N.Y.1983)("the relatively small amount likely in any individual recovery, the availability of treble damages notwithstanding, renders certification of a plaintiff class in this action *particularly* appropriate"); In re Master Key Antitrust Litig., 528 F.2d 5, 10 (2nd Cir.1975)("[C]lass action determination is fundamental when the individual damage claim of the class representative is insubstantial and the suit would unlikely be continued as a private action."). Finally, class certification will permit the resolution of literally hundreds of thousands of individual claims in a single forum, thereby promoting judicial economy and avoiding a multiplicity of repetitive lawsuits. As such, given the massive amount of potential plaintiffs, and the inefficiency and unlikelihood of bringing thousands of individual lawsuits, certification is not only superior, but is absolutely necessary.

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that the Court certify a plaintiff class as set forth above, pursuant to Rule 23(a), (b)(2) and (b)(3).


Dated: New York, New York
      February 4, 2011


                              Respectfully submitted,
                              COHEN & FITCH LLP

                    By: _____/S_____
                              JOSHUA P. FITCH (JF-2813)
                              GERALD M. COHEN (GC-0414)
                              COHEN & FITCH LLP
                              Attorneys for Plaintiffs
                              225 Broadway, Suite 2700
                              New York, N.Y. 10007
                              (212) 374-9115

_____/S_____
JON L. NORINSBERG (JN-2133)
Attorney for Plaintiffs
225 Broadway, Suite 2700
(212) 791-5396