**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7325**

WRITER'S INTERNET ADDRESS
**elinorsutton@quinnemanuel.com**

February 25, 2014

**VIA E-FILE & E-Mail**
Hon. Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re:** *Stinson v. City of New York*, No. 10-cv-4228 (RWS)

Your Honor:

      We represent Plaintiffs in this class action, and we respectfully move this Court now to disqualify the Office of Corporation Counsel, which represents Defendant the City of New York (the "City"), from representing individual police officers at any future depositions in this matter. As set forth in detail below, it has become clear that there is an inherent conflict of interest between the City and the individual police officers who may testify in this action. This conflict of interest implicates potential *criminal and civil liability as well as departmental discipline* on the part of the individual police officers, and as such, mandates that Corporation Counsel be disqualified from any further representation of these officers and that separate counsel represent these officers at future depositions.[1]

      **I.    CORPORATION COUNSEL MUST BE DISQUALIFIED FROM REPRESENTING NON-PARTY OFFICERS IN THIS MATTER, BECAUSE THERE IS A PRESENT AND INHERENT CONFLICT OF INTEREST IN CORPORATION COUNSEL'S CONCURRENT REPRESENTATION OF THE CITY AND THE NON-PARTY OFFICERS**

      An attorney should generally be disqualified from representing a party whose interests conflict with those of another party that the same attorney *concurrently* represents.[2] *See Pierce*

---

[1] This conflict became manifestly apparent at the recent deposition of P.O. Massafra who *invoked the Fifth Amendment* and refused to testify regarding certain aspects of the summons he filled out, on the ground that he might incriminate himself by doing so. *See* Pt. II(a), *infra.*, for further discussion.

[2] Corporation Counsel clearly claimed to concurrently represent the interests of the City and P.O. Massafra. *See* Massafra Dep. at 286:16-20 (Ex. B) ("[Corporation Counsel]: [] I represent the City's interest for the purposes of this deposition and [P.O. Massafra] for the purposes of this deposition.").

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG

& Weiss, LLP v. Subrogation Partners, LLC, 701 F. Supp. 2d 245, 251 (E.D.N.Y. 2010) ("If the representation was *concurrent*, it was considered '"*prima facie improper*" for an attorney to simultaneously represent a client and another party with interests directly adverse to that client.'") (quoting *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)) (emphasis added).

Consequently, when the possibility of a potential or actual conflict of interest presents itself, the court must "satisfy itself that no conflict exists or at least provide notice to the affected party if one does." *Dunton v. Cnty. of Suffolk*, 729 F.2d 903, 909 (2d Cir. 1984), *modified on other grounds,* 748 F.2d 69 (2d Cir. 1984). To that end, if there is any significant doubt as to the propriety of continued representation, disqualification is warranted. *See Pierce*, 701 F. Supp. 2d at 250 ("The Court is also mindful of its responsibility to supervise the members of its bar . . . and recognizes the admonition of the Second Circuit that any doubt is to be resolved in favor of disqualification.") (citations omitted).

Similarly, "[a]ll attorneys, regardless of their position in the litigation, have an obligation to call to the Court's attention possible disciplinary rule violations." *Burg v. Brunswick Hosp. Ctr. Inc.*, No. 85 Civ. 0050 (CPS), 1987 WL 19431, at *3 (E.D.N.Y. Oct. 23, 1987). Indeed, the Second Circuit has *criticized* plaintiff's counsel for failing to call to the trial judge's attention the fact that a defendant police officer had a conflict of interest with his co-defendant, the county for which he worked. *See Dunton*, 729 F.2d at 909. This obligation reflects that a party whose interest is potentially jeopardized may not be in a position to have a full awareness or understanding regarding the nature and scope of the potential conflicts. *See id.* ("Pfeiffer presumably knew little or nothing about the law of attorney conflicts and could not be expected to discern the nature of the conflict."). Accordingly, a motion seeking disqualification is an appropriate means for bringing the conflict to the Court's attention. *See id*.

### A.   The Officers Here Can Face Criminal Liability If They Admit That They Issued Summonses Without Probable Cause.

This case involves claims that the NYPD imposes a quota on its officers that has led to summonses being issued without probable cause. On every summons filled out by a New York City police officer, the officer must swear under penalty of perjury that he or she "personally observed the commission of the offense charged above." *See* Ex. A hereto. Furthermore, the officer is warned that "false statements made herein are punishable as a Class A Misdemeanor pursuant to Section 210.45 of the Penal Law," and that the officer's signature indicates the officer has affirmed the contents of the summons "under penalty of perjury." *Id*. Thus, any officer who admits that he or she did not, in fact, "personally observe" the offense for which he or she issued the summons, or that the summons contains false statements, faces criminal liability. This potential criminal liability creates a conflict of interest between the City and its individual officers.[3]

The existence of this conflict became starkly evident at the deposition of P.O. Marcello

---

[3] It should be noted that the officers also potentially could face internal NYPD discipline for admitting to the issuance of unconstitutional summonses, as occurred with P.O. Adhyl Polanco. *See* "NYPD Officer Adhyl Polanco Speaks Out Against Stop And Frisk In Video," Oct. 8, 2013, *available at* http://www.huffingtonpost.com/2013/10/08/nypd-stop-and-frisk_n_4066335.html.

Massafra, on February 12, 2014.[4]  P.O. Massafra showed up for the deposition with *two separate attorneys from two separate entities* representing him:  one from Corporation Counsel and one from the Patrolmen's Benevolent Association (PBA).[5]  As the deposition proceeded, it became clear that the role of the PBA attorney, Douglas LaBarbera, was to protect P.O. Massafra from any potential exposure to criminal and civil liability based on the officer's personal practices with regard to filling out summonses.  This was confirmed by Mr. LaBarbera's repeated assertion of the Fifth Amendment on behalf of P.O. Massafra during the deposition:

> Q:  What does that mean?
> A:  It says "Refused."
> Q:  I understand. What does that mean?
> MR. LaBARBERA:  Objection.  *I'm instructing my client not to answer it based upon his Fifth Amendment privilege.*
> ***
> Q:  What do you mean "practicing it"?
> A:  Well, the instruction that was given to me be a fellow officer, as a police officer, we always, our safety comes first. Therefore, if there's something –
> MR. LaBARBERA:  Objection. *I'm going to instruct him not to answer his practices with regard to the instruction on the basis of his Fifth Amendment privilege.*
> ***
> Q:  Well, if you wrote "Refused," wouldn't it be your practice that you would have asked him to sign it?
> MR. LaBARBERA:  Objection. *I'm going to instruct him not to answer based on a fifth amendment privilege, his practices with regard to what the signature was*[].
> MS. SUTTON:  But any further questions regarding his practices, you are going to object based on his fifth amendment rights?
> MR. LaBARBERA: *Yes, that's correct.*

Massafra Dep. (Ex. B) at 292, 301, & 335.

That P.O. Massafra repeatedly invoked the Fifth Amendment – and that he needed a separate attorney to do so – demonstrates the conflict of interest that exists between the City and the individual officers.  Given the non-party officers' clear penal and pecuniary interests at stake

---

[4]  Corporation Counsel would not allow Plaintiffs counsel to ask P.O. Massafra whether he had been asked to waive any conflicts of interest in this matter.  Massafra Dep. (Ex. B) at 13:2-10:
> Q:  []  I'm not going to go into the substance of any conversations you had with any attorneys. I have a question, have you ever been asked, though, to waive any conflicts with regard to your interest and the City's interest in this case?
> Corporation Counsel:  Objection, don't answer. Attorney/client privileged information.

[5]  Notwithstanding  multiple requests by Plaintiffs' counsel, neither attorney would state on the record the reason why it was necessary to have two different lawyers present for this one witness, or where one attorney's representation ended and the other's began.  *See, e.g.*, Ex. B at 283:17-24:
> Plaintiffs' Counsel:  Are you representing [P.O. Massafra] with regard to this summons?
> Corporation Counsel:  Yes, I am.
> Plaintiffs' Counsel:  With regard to all aspects of this summons?
> Corporation Counsel:  Ms. Sutton, is [sic] it is not your business what my representation of this client is.

3

in the substance of their testimony, their interests must be adequately protected by counsel whose representation will be unfettered by any competing interests adverse to the officers. *See, e.g.*, *Lee v. Charles*, 12 CIV. 7374 JFK, 2013 WL 5637658, at *1 (S.D.N.Y. Oct. 16, 2013) ("[A] lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interests; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.").

As noted, at P.O. Massafra's deposition, PBA attorney LaBarbera made various statements clearly intended to protect the officer from criminal and civil liability arising from his deposition testimony. The Corporation Counsel attorney, however, remained silent at critical moments in the deposition when P.O. Massafra needed the protection of his counsel.[6] That is because for reasons described below, the same counsel cannot simultaneously protect both these officers *and the City* from criminal and civil liability; in this deposition, Corporation Counsel chose the City over P.O. Massafra. And this conflict is likely to manifest itself repeatedly as discovery continues: Defendants themselves identified fourteen officers in their initial disclosures, and Plaintiffs expect that it will be necessary to depose other officers as well.[7]

### B. Exposing The Officers To Potential Individual Liability Would Be in Line with the City's Defense of The *Monell* Claim In This Case.

There is an actual and potential conflict between the interests of the City and the interests of individual officers in this case. While officers risk exposure to liability for their testimony regarding their knowing issuance of summonses without probable cause, the City has a *strong* incentive to deflect its own municipal liability – namely, that any such acts were taken at the behest of City policymakers – by asserting that the officers acted unilaterally in issuing improper summonses. This alone precludes the Corporation Counsel from simultaneously representing the City and the police officers here.[8]

Under similar circumstances, the Second Circuit held that a conflict between a municipality and its officer disqualified the county attorney from representing the officer in civil litigation. *See Dunton*, 729 F.2d at 908 ("The County Attorney's multiple representation in this case was *inconsistent with his professional obligation to Officer Pfeiffer*.") (emphasis added). In

---

[6] Notwithstanding that Corporation Counsel raised numerous objections and blocked questioning based on assertions of privilege and/or relevancy, it did not raise any objection to the line of questioning that caused Mr. LaBarbera to instruct P.O. Massafra to invoke his Fifth Amendment privilege.

[7] Plaintiffs notified Corporation Counsel on February 21 that they plan to depose officers that filed grievances against the City of New York alleging an unlawful quota policy that they learned about through a recent document production by the PBA. Plaintiffs requested that Corporation Counsel respond as to whether it intended to represent these officers at depositions, but have not yet received a response. Obviously it would be highly inappropriate for Corporation Counsel to represent the same individuals that have alleged that the City has acted unlawfully, and Corporation Counsel should automatically be disqualified from representing these officers.

[8] Some courts have held there is no conflict of interest when officers are non-parties to a case because they do not face liability in their individual capacity. *See, e.g.*, *Katz v. Morgenthau*, 709 F. Supp. 1219, 1227 (S.D.N.Y. 1989) *aff'd in part, rev'd in part*, 892 F.2d 20 (2d Cir. 1989). Such cases are inapposite, as here officers potentially face criminal and civil liability to the extent they are being questioned about their summons practices. *See* Massafra Dep. (Ex. B) at 301 & 335.

*Dunton*, plaintiff had brought a federal civil rights claim against Suffolk County and an individual, Officer Pfeiffer, alleging violation of the plaintiff's constitutional rights under Section 1983. At trial, the County's attorney, who was representing both the County and Officer Pfeifer, asserted that Officer Pfeifer was not acting under color of state law during the incident, but rather, was acting as an "irate husband." The Second Circuit found that this defense – while in *the County's* best interest – was not in the officer's best interest, given the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658 (1978):

> After *Monell* the interests of a municipality and its employee as defendants in a Section 1983 action are *in conflict*. A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality.

*Dunton*, 729 F.2d at 908 (emphasis added) (internal citations omitted).

In light of this inherent conflict between the County and its employee, the Second Circuit concluded in *Dunton* that "disqualification would have been appropriate here even before any proceedings began," because "[a] violation of Cannons 5 and 9 of the Code, which call for exercising independent judgment on behalf of a client and avoiding any appearance of impropriety, provides ample ground for disqualifying an attorney." *Id.*[9]

The rationale behind *Dunton* applies with even greater force here. While in *Dunton* the officer faced only civil liability for his alleged wrongdoing, here the officers face *both* potential criminal and civil liability for falsely issuing summonses. Under such circumstances, there is a far greater risk to the officers here than in *Dunton*. In addition, while the Massafra deposition here was the epitome of a present conflict incarnate, the presence of this *continuous* conflict going forward is illustrated by the testimony of P.O. Green and P.O. Robley at their respective depositions. Specifically, both officers testified that they had neither an understanding of the potential conflicts in representation nor had they been informed of same by the City's attorneys.

---

[9] While the Second Circuit declined to adopt a *per se* rule requiring disqualification in all such cases, it nonetheless suggested that adopting such a presumptive rule might indeed be warranted. *Dunton*, 729 F.2d at 908, n. 4 ("We need not create here a *per se* rule that disqualification is automatic in conflicts of this nature, although considering the responsibility of the court to supervise the ethical conduct of the Bar, such a rule might indeed be appropriate.") (internal citations omitted).

5

>   Q: Are you aware that your interests as a police officer may be in conflict with the City of New York?
>   Corporation Counsel: Objection.
>   Officer Green: No.
>   Q: Has anybody asked you to waive a conflict with respect to your personal feelings about whether there is a summons quota since you're not a defendant in this action?
>   Corporation Counsel: Objection.
>   Officer Green: No.

Green Dep. (Ex. C) at 295:6-16.

***

>   Q: And has anyone prior to this deposition asked you to sign a conflict waiver or asked to you waive a conflict of interest?
>   Officer Robley: No.

Robley Dep. (Ex. D) at 143:13-17.

Moreover, a PBA attorney did not attend either the Green or the Robley depositions, such that no attorney was present at those depositions for the sole purpose of protecting those officers from criminal and civil liability, as opposed to protecting the City from the same.

In light of the appreciable gravity of a motion to disqualify, the instant motion was made only after the conflicts became manifestly apparent at Massafra's deposition. *See U.S. v. Rivieccio*, No. CV-86-1441, 1989 WL 20638, at *2 (E.D.N.Y. Mar. 3, 1989) ("motions to disqualify opposing counsel should be approached with 'cautious scrutiny'") (citation omitted).

## II. AT A MINIMUM, THE POTENTIAL CONFLICTS OF INTEREST WITH THE CITY SHOULD BE DISCLOSED TO EACH OFFICER, AND THE CORPORATION COUNSEL THEN SHOULD ONLY BE PERMITTED TO REPRESENT THE OFFICER IF THE OFFICER, AFTER BEING INFORMED, SO CONSENTS.

Courts have recognized that certain conflicts present such serious concerns that waivers do not provide the requisite protection to avoid the need for disqualification. *See Burg*, 1987 WL 19431, at *4 ("Informed consent to joint representation, however, does not present an absolute bar to attorney disqualification."). This risk is particularly present where the municipality may at some point be required to determine statutorily mandated indemnification/representation of the officer in connection with the acts disclosed in his deposition, which in turn presents the more serious danger of the use of client confidences in a manner adverse to his interest. *See Pierce*, 701 F. Supp. 2d at 751 (holding that when "the attorney is in a position to use privileged information acquired in the representation of a client against that client in another matter," there is a "significant risk of trial taint").[10]

---

[10] P.O. Green's failure to be warned of potential conflicts arising from Corporation Counsel's joint representation of the City and individual officers in this case is especially concerning in this context. P.O. Green and the City are currently co-defendants in another lawsuit in New York Supreme Court, Bronx County (Index # 310327/2010). In that case, the City's liability depends on whether certain of P.O. Green's actions were within his scope of
(footnote continued)

In any event, even where a conflict is deemed waivable, "it is the court's duty to ensure that the attorney's client, so involved, is fully aware of the nature of the conflict and understands the potential threat to the protection of his interests." *In re Taylor*, 567 F.2d 1183, 1191 (2d Cir. 1977). Accordingly, notwithstanding Plaintiffs' belief that the severity of this conflict is incapable of waiver, if the Court were to deny Plaintiffs' motion for disqualification, it should nonetheless require the individual officers to expressly acknowledge – in an affidavit or through a detailed written waiver – the nature, extent and scope of the conflict which exists in sharing the same counsel with the City. *See Bonner v. Guccione*, No. 94 Civ. 7735, 1997 WL 91070, at *2 (S.D.N.Y. Mar. 3, 1997) ("Plaintiff is entitled to an affidavit by each individual defendant stating that [he] fully understands the nature of the conflict inherent in joint representation and chooses to continue the joint representation.") (internal citation, quotation marks and ellipse omitted).

## CONCLUSION

For the foregoing reasons, Plaintiffs very respectfully submit that the Court should issue an Order disqualifying the Office of Corporation Counsel from jointly representing both the City of New York and the individual police officers at any future depositions in this litigation. In the alternative, Plaintiffs request that the Court issue an Order mandating that all police officers who testify in this action sign a waiver form that expressly acknowledges the conflict of interest between the City and themselves, and which requires the officers to knowingly waive such conflicts in order to be represented by the Office of Corporation Counsel.

Respectfully submitted,

| | |
|---|---|
| s/ Elinor C. Sutton | s/ Steig D. Olson |
| Elinor C. Sutton | Steig D. Olson |

Quinn Emanuel Urquhart & Sullivan, LLP

*Co-Lead Class Counsel for Plaintiffs*

cc:  Qiana Smith-Williams (via E-mail and U.S. Mail)
     Suzanna Publicker Mettham (via E-mail and U.S. Mail)
     The City of New York Law Department, *Attorneys for Defendants*

---

employment. The City is not representing P.O. Green in that matter, indicating that the City has determined that its interests were adverse to P.O. Green's in that case. But by representing P.O. Green in *this* case (where subject matter arguably overlaps), the City may obtain confidential or privileged information from him that could presumably be used against him to protect the City's interest in avoiding liability and indemnification obligations in the Bronx County Court action.