```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------X

SHARIF STINSON, et al.,

                    Plaintiffs,
                                              10 Civ. 4228 (RWS)
     - against -
                                                    OPINION
CITY OF NEW YORK, et al.,

                    Defendants.

-------------------------------------X
```

A P P E A R A N C E S:



Attorneys for the Plaintiff

```
COHEN & FITCH LLP
225 Broadway
New York, NY  10007
By:  Joshua P. Fitch, Esq.
     Gerald M. Cohen, Esq.


THE LAW OFFICES OF JON L. NORINSBERG
225 Broadway, Suite 2700
New York, NY 10007
By:  Jon L. Norinsberg, Esq.

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
By:  Stephen R. Neuwirth, Esq.
     Steig D. Olson, Esq.
     Elinor C. Sutton, Esq.
```

Attorneys for the Defendants

```
MICHAEL A. CARDOZO
CORPORATION COUNSEL OF THE CITY OF NEW YORK
100 Church Street
New York, NY  10007
```

By: Qiana C. Smith-Williams, Esq.
    Zachary W. Carter, Esq.
    Steven M. Silverberg, Esq., Of Counsel

By: Qiana C. Smith-Williams, Esq.
    Zachary W. Carter, Esq.
    Steven M. Silverberg, Esq., Of Counsel

**Sweet, D.J.,**

Defendants have moved, pursuant to Local Civil Rule 6.3, for reconsideration of the Court's Order of February 11, 2014 ("Feb. 11 Hearing"), directing the City of New York (the "City") to provide a limited set of CompStat meeting videos to be designated by Plaintiffs. (See Transcript of Proceedings, dated Feb. 11, 2014 ("Feb. 11 Trans.").)

Because the Defendants have failed to identify any controlling law or facts that the Court overlooked, the motion is denied. However, Plaintiff's alternative proposal, which was not previously raised, to redact privileged portions of the videos, is granted in order to appropriately balance the competing concerns involved.

Plaintiffs have also moved to disqualify Corporation Counsel from representing non-party officers, or in the alternative requiring the City to provide a written statement to all non-party officers of the potential conflict involved in the City's representation, and the ability of the officers to seek independent counsel. Plaintiffs' request for the requirement of a written statement is granted.

**Prior Proceedings and Facts**

A detailed recitation of the prior proceedings and facts of this case is provided in the April 23, 2012 Opinion granting Plaintiffs' motion for Class Certification. *See Stinson v. City of N.Y.*, No. 10 Civ. 4228 (RWS), 2012 WL 1450553, at *2 5 (S.D.N.Y. Apr. 23, 2012) ("April 23 Opinion").

Familiarity with these prior proceedings and facts is assumed. Facts relevant to the instant motions are set forth below.

### A. Proceedings Surrounding the Feb. 11 Hearing Relating to the CompStat Video Production

In 2010, the City produced minutes of the CompStat meetings, which had been redacted based on relevance, the deliberate process privilege, individual privacy concerns, and the law enforcement privilege. (*See* City's Letter, dated Feb. 7, 2014 ("City Feb 7, 2014 Ltr.").) At this time, the City objected to Plaintiffs' demand for the videotaped CompStat meetings based on privilege concerns, and because the confidentiality agreements in this case allegedly offered insufficient production. (*See id.*)

3

On January 31, 2013, Plaintiffs again moved to compel disclosure of all videos of CompStat meetings pertaining to six precincts for the period of May 2007 through December 2010, given the inadequacy and illegibility of the accompanying meeting notes. (See Silverberg Decl. at ¶ 3; Plaintiffs' Letter, dated Jan. 31, 2014 ("Pl. Jan 31, 2013 Ltr.").) On February 11, 2014, this motion was heard and marked fully submitted. To address the competing relevancy and privilege concerns, Plaintiffs were ordered to designate a limited subset of the videos, which based on the notes were especially relevant to the litigation and which the City could still object to on privilege grounds, to be viewed attorneys' eyes only:

> Okay. Well this is what I think we'll do. The plaintiffs will designate which videos they want. The videos will be produced attorneys' eyes only. The plaintiffs will indicate any portions of the videos that they believe have an evidentiary value, and the defendants will then have an opportunity to assert any privilege arguments they want to make with respect to those designations.

(Feb. 11 Tr. at 9-10.) The Court cautioned sanctions if any privileged information was somehow leaked,

> Now, I take the attorneys' eyes only very seriously. If there is a leak in this case of any kind, I am going to ask the United States Attorney to investigate it, because it's a direct order of the Court and it will have been violated. So I take it very seriously. And if there is any kind of a leak and it can be proven, there will be hell to pay.

4

(*Id.*)

Following the Court's order, Plaintiffs designated videos pertaining to 56 meetings, across various precincts, encompassing approximately 170 hours of video.

On February 25, 2014, the City moved for reconsideration of the Court's order. This motion was heard and marked fully submitted on March 19, 2014.

**Applicable Legal Standard**

A motion for reconsideration is proper where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Farez-Espinoza v. Napolitano*, 08 Civ. 11060 (HB), 2009 U.S. Dist. ELXIS 35392, at *9 (S.D.N.Y. Apr. 27, 2009). Pursuant to Local Civil Rule 6.3 the Court may reconsider a prior decision to "correct a clear error or prevent manifest injustice." *Medisim Ltd. v. BestMed LLC*, 2012 U.S. Dist. LEXIS 56800, at *2-3 (S.D.N.Y. Apr. 23, 2012) (citing *RST*

*(2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 2009 WL 274467, at *1 (S.D.N.Y. 2009)).

**Defendants' Motion for Reconsideration is Denied Because there is No Evidence that the Feb. 11 Hearing Overlooked Any Controlling Law or Facts; However, Plaintiffs' Alternative Proposal, not Previously Raised, is Granted to Appropriate Balance the Competing Concerns**

Defendants' maintain that this Court overlooked both the Second Circuit's decision in *Chase Manhattan Bank v. Turner & New, PLC*, 964 F.2d 159 (2d Cir. 1992) ("*Chase*") and the admonition in *In re City of New York*, 607 F.3d 923 (2d Cir. 2010) ("*In re City*") in allowing an attorneys' eyes only production of certain CompStat videos, despite potential conflicts with the law enforcement privilege.

As an initial matter, *Chase* is irrelevant to the instant proceedings. There, the Second Circuit, pursuant to a mandamus petition, faced a comparable issue but in the context of an attorney-client privilege dispute. The Second Circuit vacated the Magistrate Judge's order, which allowed production of the documents with the attorneys' eyes only limitation, because it would permit the precise type of disclosure the attorney-client privilege was designed to prevent, namely, disclosure to opposing counsel in the litigation, and would

6

undermine the purpose of the privilege, to encourage free and full communication between lawyer and client. The opinion explains,

> In the case of the *attorney-client* privilege . . . a litigant claiming the privilege would probably prefer almost anyone other than adversary counsel to review the documents in question. The attorneys'-eyes-only condition simply does not limit disclosure to persons whose knowledge of the confidential communication is not material to the purpose of the privilege. To the contrary, it allows one kind of critical disclosure -- to opposing counsel in litigation - that the privilege was designed to prevent. . . . the privilege rests on the belief that in an adversary system, a client's full disclosure to an attorney is a necessary predicate to skillful advocacy and fully informed legal advice. The existence of the privilege thus allows attorneys to assure clients that any information given their attorneys will remain confidential. . . .
>
> If opposing counsel is allowed access to information arguably protected by the privilege before an adjudication as to whether the privilege applies, a pertinent aspect of confidentiality will be lost, even though communications later deemed to be privileged will be inadmissible at trial. Most importantly, an attorney cannot assure a client of complete confidentiality if the procedure at issue here becomes routine. At best, an attorney can assure the client that the communication, although made known to adversaries, will not be admissible as evidence at trial. This limited assurance, however, will not suffice to ensure free and full communication by clients who do not rate highly a privilege that is operative only at the time of trial.

*Id.* at 154-65 (emphasis added).

7

While the law enforcement privilege is of equal import, as the *Chase* opinion shows, the underlying concerns of, and the potential consequences of the attorneys' eyes only limitation relating to, the two privileges are dissimilar. Opposing counsel having access to attorney-client information is one of the critical harms the absolute privilege is designed to prevent; if a client worries that the adversary will have access to his communications, a chilling effect is almost certain. In contrast, the law enforcement privilege aims to protect investigate tactics and confidential individuals from disclosure to the public at large. Opposing attorneys accessing the information in confidence is not what the privilege aims to protect. Further, the law enforcement privilege is qualified, and as such "there are circumstances in which information subject to the privilege must nevertheless be disclosed," including relevance absent alternative means. *See In re the City of N.Y.*, 607 F.3d 923, 940 (2d Cir. 2010) ("[T]he law enforcement privilege is a *qualified* privilege, not an absolute privilege, [thus] there are circumstances in which information subject to the privilege must nevertheless be disclosed."). As such, the Feb. 11 Hearing did not overlook or contradict the *Chase* precedent.

Similarly, the Court's ruling did not contravene any bright line obligation imposed in *In re City*.

In *In re City*, the Second Circuit addressed an attorneys' eyes only confidentiality restriction in the context of a Magistrate Judge's disclosure order of documents the City claimed should be protected by the law enforcement privilege. The Magistrate Judge held that certain NYPD investigate field reports were categorically relevant to plaintiff's case and could, notwithstanding the law enforcement privilege, be disclosed with certain redactions made by the Magistrate Judge, with disclosure on an attorneys' eyes only basis. The Second Circuit decided that mandamus review was appropriate and vacated the Magistrate Judge's order. The Second Circuit admonished that the consequences of accidental disclosure of information protected by the law enforcement privilege were too severe to be employed, stating,

> Even if the "attorneys' eyes only" procedure works in some commercial litigation, as well as some criminal cases . . . the consequences of accidental disclosure are too severe to employ the procedure here. . . . [The] accidental disclosure of the Field Reports risks undermining important NYPD investigatory procedures and thereby endangering the safety of law enforcement personnel and countless New York residents. Not only is that injury more severe, it is far more difficult to remedy. . . . [I]f confidential law enforcement information is disclosed on an "attorneys' eyes only"

9

> basis, the police may never know if their undercover operations have been compromised by an unauthorized disclosure of that information.

*In re City of New York*, 607 F.3d at 936. The Second Circuit further noted the inability of courts to maintain total secrecy when confidential materials are filed "under seal," and the suspected unauthorized disclosure in the case at bar. *See id*. The Second Circuit limited its ruling to the facts presented in the case at bar.

Despite Defendants' contentions, the order in the Feb. 11 Hearing is not "virtually identical" to that struck down in *Chase*, or warned against in *In re City*. (Defendants' Reconsideration Memorandum, "Def. Recon. Br."; at 9.) The Feb. 11 Hearing did not, as Defendants contend, order the "wholesale disclosure of partially irrelevant and privileged materials to opposing counsel." (*Id.*) Instead, the Court specified that Plaintiffs should designate those videos most relevant to the instant litigation, based on the notes describing the meetings, and that "the defendants will then have an opportunity to assert any privilege arguments they want to make with respect to those designations." (Feb. 11 Trans. at 9-10.)

10

Accordingly, Defendants' current position represents more a disagreement with the Court's Order in the absence of any proffered legal basis to conclude that the decision was "obviously wrong," than a showing of "manifest injustice," and reconsideration is inappropriate. *Cohn v. Metro Life Ins., Co.*, No. 07-Civ-0928 (HB), 2007 WL 2710393 (S.D.N.Y. Sept. 7, 2007).

As an alternative to the wholesale production of the videos to Plaintiffs, the City now maintains that it is prepared to provide Plaintiffs with relevant portions of the CompStat videos pertaining to the six police precincts for which they sought production, on a rolling basis, over the next 30 days.

A reconsideration motion is an inappropriate avenue for this request, as the City previously maintained that such an alternative was impractical, if not virtually impossible, to accomplish. *See IP Innovation LLC v. Vizio, Inc.*, No. 08-Civ-393, 2010 WL 245557, at *2 (N.D. Ill. Jan. 13, 2010) ("Thus, it is improper for Defendants to seek a reconsideration of the court's ruling when during the briefing of the claim construction Defendants took a contrary position. Defendants did not raise their new proposed constructions in a timely manner."); (*see also* Lt. Corbett Decl. ¶ 21 ("I am unaware of any practical method of isolating any mention of C-Summonses

11

issued by a subset of six NYPD precincts on the videos . . . I do not believe there is a practical way to produce the video recordings that plaintiffs are currently seeking without also divulging highly confidential information that has no connection whatsoever to the issuance of C-Summonses, particularly not in the context of this litigation."; The City's September 24, 2013 Letter from Q. Smith-Williams to S. Olson, stating that they "are aware of no practical method for excising information from either audio or video recordings of the COMPSTAT meetings.").) Throughout discussions concerning the CompStat videos, Defendants consistently contended that there was no way to produce the requested information without capturing privileged communications.  In fact, the Court specifically tried to strike such a balance by asking the City if such a procedure was possible and the City maintained that it was not:

> THE COURT: I assume that it's not technologically possible to search the videos for, say, reference like summons.  I take it you don't have that capacity?
>
> MS. SMITH-WILLAIMS: No, your Honor.

(Feb. 11 Trans. at 11-12.)


There is some credence to Plaintiffs' contention that the City employed inappropriate gamesmanship in withholding the

12

proposed alternative only to now suggest what they initially maintained was impractical.  However, given the import of the privilege concerns involved, now that such an option exists, the Court agrees that this alternative more adequately balances the competing concerns at stake, and the City's request to amend in its initial position and redact the videos for privilege before production is granted.

The City will provide a privilege log with respect to the redacted portions of the videos, at which point Plaintiffs will have the opportunity to object and litigate such objections.  This will ostensibly alleviate Plaintiffs' concern with Defendants "unilateral redactions." (Plaintiffs' Opposition Memorandum, "Pl. Recon. Opp."; at 14-15.)

**Corporation Counsel Must Provide a Written Statement to Non-Party Officers Disclosing the Potential Conflict in the Counsel's Representation and Advising the Officers of the Appropriateness of Seeking Independent Counsel**

Plaintiffs also move to disqualify Corporation Counsel from representing individual police officers at any future depositions in this matter, given the conflict of interest between the City and the individual police officers who may testify in this action.  This inherent conflict is apparent to both parties. However, as the Court specified during the March

13

19, 2014 Hearing, the City maintains that they are not representing Non-Party Officers. This assertion will be credited.

The present issue concerns whether the City should be required to provide the non-party officers a statement in writing specifying this privilege and the right of the officers to seek independent counsel, which the City maintains it has done and will continue to do verbally, and whether the Plaintiffs may inquire as to what exactly the City has relayed to the officers concerning this conflict during depositions[1].

The City is correct that in the course of defending the City and its interest, corporation counsel is permitted, and may continue, to confer with the officers, as employees of the City. *See, e.g., Coleman v. City of New York*, 1999 U.S. Dist. LEXIS 10405 at *5 (S.D.N.Y. July 8, 1999) ("[T]he Corporation Counsel's Office is the legal counsel for the City and City agencies . . . [a]s such, the Corporation Counsel's discussion with non-adverse City employees about their deposition in a case in which the City (or City agency) is a defendant is protected by the City's attorney-client and/or work-product privilege.").

---

[1] According to Plaintiffs, the City has claimed privilege when Plaintiffs have asked non-party officers whether the City's corporation counsel informed the officers of the conflict of corporation counsel's representation.

14

As such, communications between corporation counsel and non-party officers relating to deposition preparation are privileged. *See id.*

However, Plaintiffs do not seek to inquire as to the content of corporation counsel's preparation of the officers relating to the depositions. Defendants' acknowledgement to the officers of an inherent conflict in representation of the officers by corporation counsel, and the ability of the officers to seek independent counsel, is not subject to privilege, but is an appropriate and necessary instruction. Though the City is correct that such statements are not a waiver, the City has agreed to instruct the officers of this potential conflict and Plaintiffs have the right to verify this assertion.

Given the continued conflict between the parties relating to this issue and others, to avoid unnecessary delay and further contention, the City will prepare a proposed statement to relay to officers, detailing the potential conflict of representation by corporation counsel and the right of the officer to seek independent counsel, which it will have the officers sign prior to deposition discussions and which it will provide to Plaintiffs prior to that officer's deposition. Plaintiffs will then have the ability to ask the officer if he

15

understands the statement in question, but may not inquire as to further communications the officer had with the city relating to preparation of the deposition.

## Conclusion

For the foregoing reasons, Defendants' motion for reconsideration is denied, and Plaintiff's request for the City to provide non-party officers with a statement relating the potential conflict of representation by corporation counsel is granted.

It is so ordered.

New York, NY  
March 24, 2014

ROBERT W. SWEET  
U.S.D.J.

16