UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

SHARIF STINSON, et al.,

                                    Plaintiffs,

                -against-                                10 Civ. 4228 (RWS)

THE CITY OF NEW YORK, et al.,

                                    Defendants.

------------------------------------------------------------------------- x


**MEMORANDUM   OF   LAW   IN   SUPPORT   OF
DEFENDANTS'   MOTION   FOR   DECERTIFICATION
PURSUANT TO FED. R. CIV. P. 23(c)(1)(C)**


*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, New York  10007*


*Of Counsel:*    *Qiana Smith-Williams*
*Tel:*            *(212) 356-2360*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

STANDARD OF REVIEW ........................................................................................ 2

ARGUMENT

     POINT I

          THE     PROPOSED     CLASS     IS     NOT
          ASCERTAINABLE ............................................................................ 3

          A.     Absent  Evidence  That  A  Facial
                    Insufficiency Dismissal Implicates A Lack
                    Of Probable Cause, A Class Cannot Be
                    Ascertained Here .................................................................. 3

          B.     The Class Herein Has Not Been Defined In
                    Light Of The Court's Decision That
                    Individuals Whose Summonses Have Been
                    Dismissed For Facial Insufficiency Are
                    Presumptive Members Subject to Challenge
                    By Defendants ...................................................................... 9

     POINT II

          THE CLASS SHOULD NOT BE CERTIFIED
          PURSUANT TO FED. R. CIV. P. 23(b)(2) SINCE
          PLAINTIFFS HAVE NOT DEMONSTRATED BY
          A PREPONDERANCE OF THE EVIDENCE
          THAT DEFENDANTS HAVE ACTED OR
          REFUSED TO ACT ON GROUNDS THAT
          APPLY GENERALLY TO THE CLASS ................................. 12

     POINT III

          THERE   ARE   NO   ISSUES   THAT
          PREDOMINATE AND THE CLASS AS
          DEFINED IS UNMANAGEABLE ......................................... 14

CONCLUSION ....................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**                                                                   **Pages**

Amchem Prods., Inc. v. Windsor,
521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ........ 15

Bakalar v. Vavra,
237 F.R.D. 59 (S.D.N.Y 2006) ........ 9, 10

Berndt v. Cal. Dep't of Corr.,
No. C 03-3174, 2012 U.S. Dist. LEXIS 37755 (N.D. Cal. Mar. 20, 2012) ........ 11

Boucher v. Syracuse Univ.,
164 F.3d 113 (2d Cir. 1999) ........ 2, 3

Brown v. City of New York,
306 F. Supp. 2d 473 (S.D.N.Y. 2004) ........ 11

Denney v. Deutsche Bank AG,
443 F.3d 253 (2d. Cir. 2006) ........ 11

Estrada v. Torres,
646 F. Supp. 2d 253 (D. Conn. 2009) ........ 18

Florida v. Harris,
133 S. Ct. 1050 (2013) ........ 18

Florida v. Jimeno,
500 U.S. 248 (1991) ........ 18

Fosamax Prods. Liab. Litig.,
248 F.R.D. 389 (S.D.N.Y. 2008) ........ 15, 16, 17, 19

Gen. Tel. Co. of the Southwest v. Falcon,
457 U.S. 147 (1982) ........ 2

Gonzalez Villa v. United Site Services of California, Inc.,
2012 U.S. Dist. LEXIS 162922 (N.D. Ca. Nov. 13, 2012) ........ 19

Illinois v. Gates,
462 U.S. 213 (1983) ........ 18

In re: Initial Public Offerings Sec. Litig.,
471 F.3d 24 (2d Cir. 2006) ........ 9

IPO Securities Litigation v. Merrill Lynch & Co., Inc. ("IPO"),
471 F.3d 24 (2d Cir. 2006) ........ 3

| Cases | Pages |
|---|---|

Jackson v. Motel 6 Multipurpose, Inc.,
    130 F.3d 999 (11th Cir. 1997) ............................................................. 17

Joyner v. Officer Alexander Morales,
    04 Civ. 569, 2005 U.S. Dist. LEXIS 6540 (S.D.N.Y. Apr. 15, 2005) ................................... 18

Khan v. Ryan,
    145 F. Supp. 2d 280 (E.D.N.Y. 2001) ..................................................... 11

Lightfoot v. District of Columbia,
    273 F.R.D. 314 (D. D.C. 2011) ............................................................ 20

Moore v. Paine Webber, Inc.,
    306 F.3d 1247 (2d Cir. 2002) ............................................................. 14

Morse v. Spitzer,
    2011 U.S. Dist. LEXIS 35014 (E.D.N.Y. Mar. 15, 2011) ....................................... 11

N.J. Carpenters Health Fund v. Residential Capital, LLC,
    272 F.R.D. 160 (S.D.N.Y. 2011) .......................................................... 19

O'Neill v. Town of Babylon,
    986 F.2d 646 (2d Cir. 1993) ............................................................. 19

Ohio v. Robinette,
    519 U.S. 33 (1996) .................................................................... 18

People v. Coley,
    2013 N.Y. Misc. LEXIS 471 (Crim. Ct. Bronx Co.) ........................................ 6, 7

Ross-Randolph v. Allstate Insurance,
    99-3344, 2001 U.S. Dist. LEXIS 25645 (D. Md. May 11. 2001) ............................... 19

Sanders v. Apple Inc.,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ................................................ 10, 11

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995) .............................................................. 18

Stinson v. City of New York,
    10 Civ. 4228,
    2012 U.S. Dist. LEXIS 56748 (S.D.N.Y. April 23, 2012) ............. 1, 3, 4, 5, 7, 8, 10, 12, 20

Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,
    546 F.3d 196 (2d Cir. 2008) ............................................................. 3

**Cases**                                                                                                    **Pages**

United States v. Arvizu,
     534 U.S. 266 (2002)..................................................................................... 18

Vigus v. S. Ill. Riverboat/Casino Cruises, Inc.,
     274 F.R.D. 229 (S.D. ILL. 2011)................................................................ 10

Vulcan Golf, LLC v. Google Inc.,
     254 F.R.D. 521 (N.D. Ill. 2008).................................................................. 19

Wal-Mart Stores, Inc. v. Dukes,
     131 S. Ct. 2541 (2011)............................................................................ 2, 17

Wu v. Pearson Educ. Inc.,
     09 Civ. 6557, 2012 U.S. Dist. LEXIS 182300 (S.D.N.Y. Dec. 20, 2012).............................. 2

**Statutes**

Fed. R. Civ. P. 23(a) ........................................................................... 2, 12, 14

Fed. R. Civ. P. 23(b) ........................................................................... 1, 2, 12

Fed. R. Civ. P. 23(b)(1) ............................................................................ 3

Fed. R. Civ. P. 23(b)(2) ......................................................................... 2, 12

Fed. R. Civ. P. 23(b)(3) .................................................................. 2, 12, 14, 19

Fed. R. Civ. P. 23(b)(3)(D) ........................................................................ 19

Fed. R. Civ. P. 23(c)(1) ............................................................................ 2

Fed. R. Civ. P. 23(c)(1)(C) ......................................................................... 1

N.Y. ADC Law § 10-111 .............................................................................. 8

N.Y.C. Admin. Code § 10-125 ...................................................................... 5, 6

N.Y. C.P.L. § 100.15 ............................................................................. 1, 4

N.Y. C.P.L. § 100.15(1) ............................................................................. 4

N.Y. C.P.L. § 100.15(2) ............................................................................. 4

N.Y. C.P.L. § 100.15(3) ............................................................................. 4

N.Y. C.P.L. § 100.40 ............................................................................. 1, 4

N.Y. C.P.L. § 100.40(1)(b) ....................................................................... 4, 5

**Statutes**                                                                                      **Pages**

N.Y. C.P.L. § 100.40(1)(c) .................................................................................. 4

**Other Authorities**

7A Wright, Miller & Kane, Federal Practice and Procedure § 1760 at 121 ..........................9

William B. Rubenstein, et al., Newberg on Class Actions, § 3:3 at 1-160..........................10

William B. Rubenstein, et al., Newberg on Class Actions, § 3:3 at 1-163............................9

## PRELIMINARY STATEMENT

On April 23, 2012, this Court certified a class consisting of all individuals who were issued summonses that were later dismissed upon a judicial finding of facial insufficiency and who were ticketed absent probable cause. Stinson v. City of New York, 10 Civ. 4228, 2012 U.S. Dist. LEXIS 56748 (S.D.N.Y. April 23, 2012).[1]  The Court's certification of the class was based heavily on the premise that a dismissal of a summons for lack of facial sufficiency presumptively establishes a lack of probable cause for the issuance of such a summons pursuant to New York Criminal Procedure Law ("N.Y. C.P.L.") §§ 100.15 and 100.40.  In reaching its decision, the Court did not have before it any first-hand information from the Criminal Court of the City New York (the body which adjudicates the disputed criminal court summonses) explaining the analysis undertaken in determining whether a summons should be dismissed as facially insufficient.  Since the decision, however, the Chief Clerk of the Criminal Court has provided a declaration explaining that a facial insufficiency dismissal is not tantamount to a decision that probable cause was presumptively lacking for the issuance of a particular summons, as the Court concluded at the time of the certification decision.  See Declaration of Justin Barry, dated April 11, 2013 ("Barry Declaration"), attached to the Declaration of Qiana Smith-Williams, dated April 4, 2014 ("QSW Decl.") as Exhibit A.  In light of the declaration, defendants now move to decertify the class herein, pursuant to Fed. R. Civ. P. 23(c)(1)(C), on the grounds that the class is not ascertainable, and furthermore, does not satisfy the requirements of Fed. R. Civ. P. 23(b).  The shifting of the burden to defendants to essentially establish class membership also merits decertification.

---

[1] Thereafter, on May 7, 2012, defendants filed a motion seeking reconsideration of the Court's certification decision.  The Court declined to reconsider its certification of the class.  See Court's Memorandum and Order, dated July 3, 2012.

## STANDARD OF REVIEW

Class actions are the exception not the rule.  See Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550 (2011) ("The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.") (internal quotation omitted). "Prior to the point at which notice is sent to class members, a certification order is 'inherently tentative'." Wu v. Pearson Educ. Inc., 09 Civ. 6557, 2012 U.S. Dist. LEXIS 182300, at *12 (S.D.N.Y. Dec. 20, 2012) (citing Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147 (1982)) (finding that neither commonality nor predominance could be established since the court would have to delve into the factual underpinning of a multitude of contracts at issue, and therefore, decertifying the class). "[U]nder Rule 23(c)(1), courts are required to reassess their class rulings as the case develops." Boucher v. Syracuse Univ., 164 F.3d 113, 118 (2d Cir. 1999) (internal quotations omitted).  A court should revisit its certification order when necessary to correct a clear error or prevent manifest injustice or when presented with new evidence. Wu, 2012 U.S. Dist. LEXIS 182300 at *13.  "Decertification of a class requires a court to ask the same questions as on the original motion: does the certified class, in fact, meet the requirements of Rule 23 by a preponderance of the evidence."[2] Boucher, supra.  Just as in resolving the original

---

[2] Class certification is appropriate where plaintiffs meet all of the prerequisites of Fed. R. Civ. P. 23(a) and at least one of Rule 23(b).  Fed.R.Civ.P. 23(a) provides:  One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Rule 23(b)(2) will be satisfied where plaintiffs show that defendants "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Rule 23(b)(3) provides that a class can be maintained if: the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include:  (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in

certification motion, the court must undertake a rigorous analysis of plaintiffs' evidence on a decertification motion.   Id.; see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008); In Re: IPO Securities Litigation v. Merrill Lynch & Co., Inc. ("IPO"), 471 F.3d 24, 26 (2d Cir. 2006).  Here, plaintiffs' proffered evidence cannot not survive a rigorous analysis, especially in light of the Barry Declaration.

ARGUMENT

POINT I

THE   PROPOSED   CLASS   IS   NOT ASCERTAINABLE

**A.     Absent Evidence That A Facial Insufficiency Dismissal Implicates A Lack Of Probable Cause, A Class Cannot Be Ascertained Here**

In their motion for certification, plaintiffs defined the proposed class as "consisting of all persons who have been or will be issued a summons in the absence of probable cause for offenses that were never committed and whose summonses were ultimately dismissed prior to trial."  Stinson, 2012 U.S. Dist. LEXIS 56748 at *40.  Recognizing that plaintiffs' definition was unworkable, the Court modified the definition of the class to include only those "individuals who were issued summonses that were later dismissed upon a judicial finding of facial insufficiency and who were ticketed without probable cause."  Id. at *75.  The Court's modification of plaintiffs' proposed definition recognized that the class as proposed by plaintiffs -- of all individuals who were issued summonses that were later dismissed -- was not ascertainable since the "[d]ismissal of a summons does not, by itself, indicate that the summons was issued without probable cause."  Id. at *40.  Finding that the "theory binding together the putative plaintiffs' claims is that the NYPD and other city officials have engaged in a pattern and

the particular forum; (D) the difficulties likely to be encountered in the management of a class action. Rule 23(b)(1) is irrelevant in this action.

- 3 -

practice of issuing summonses to individuals without probable cause in response to a requirement and constant pressure to meet a summons quota," the Court found that the definition of the class would need to be narrower than that proposed by plaintiffs since certifying a class of individuals whose summonses were dismissed absent a judicial determination of probable cause would fail to "capture the group of putative plaintiffs who have been harmed by the wrong Plaintiffs allege." Id. at *51-*52.

In tailoring the definition of the class the Court was guided by N.Y. C.P.L. §§ 100.15 and 100.40.[3]  As an initial matter, the Court noted that a summons is in reality an appearance ticket subject to the provisions of these two statutes. Id. at *41-*48.  Pursuant to N.Y. C.P.L. § 100.40, which sets forth the facial sufficiency standard for an accusatory instrument, an information must contain factual allegations which provide reasonable cause to believe that the alleged offender engaged in the criminal offense with which he was charged. Stinson, 2012 U.S. Dist. LEXIS 56748 at *46-*47.  Relying on the "reasonable cause" language of N.Y. C.P.L. § 100.40(1)(b), the Court found that "the facial sufficiency review conducted as part of the Citywide Summons Operation involves a judicial determination of whether the summons issued lacked probable cause" since "N.Y. C.P.L. § 100.40(1)(b) requires the

---

[3] N.Y. C.P.L. § 100.15 is entitled" Information, misdemeanor complaint and felony complaint; form and content."  The section dictates that each of the referenced charging instruments must contain an accusatory part and a factual part. N.Y. C.P.L. § 100.15(1).  "The accusatory part of each such instrument must designate the offense or offenses charged."  N.Y. C.P.L. § 100.15(2).  "The factual part of such instrument must contain a statement of the complainant alleging facts of an evidentiary character supporting or  tending to support the charges."  N.Y. C.P.L. § 100.15(3).  The provision also requires that the charging instrument must meet the sufficiency requirements of N.Y. C.P.L. § 100.40 and also set forth non-hearsay allegations.

N.Y. C.P.L. § 100.40 is entitled "Local criminal court accusatory instruments; sufficiency on face."  The applicable provisions here are N.Y. C.P.L. § 100.40 (1)(b) which provides that "[t]he allegations of the factual part of the information, together with those of any supporting depositions which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of the information."; and N.Y. C.P.L. § 100.40(1)(c) which provides that "[n]on-

reviewing court to determine whether 'reasonable cause' existed for the issuance of the summons." Id. at *48-*49. The Court found the term 'reasonable cause' contained in N.Y. C.P.L. § 100.40(1)(b) to be synonymous with 'probable cause'. Id. at *49.

At the time that it made the certification decision, however, the Court did not have the benefit of an explanation from the criminal court about what a dismissal for facial insufficiency really means. Subsequent to the certification decision, the Chief Clerk of the Criminal Court of the City of New York, Justin Barry, has explained that a dismissal for facial insufficiency does not mean that there has been a judicial determination regarding probable cause for the issuance of a summons. Barry Declaration at ¶ 18. As explained by Mr. Barry, criminal court judges are instructed that a summons must, on its face, include non-hearsay allegations setting forth every element of a statute charged in order to meet the facial sufficiency requirements.[4] Where the court dismisses a summons that fails to articulate a charge on its face, such a dismissal reflects poor drafting by the issuing officer, not a determination by a judge that the summons lacked merit. Barry Declaration at ¶ 17.

By way of example, Mr. Barry discussed summonses issued for public consumption of alcohol, a violation of New York City Administrative Code § 10-125. According to Mr. Barry, a violation of New York City Administrative Code § 10-125 is the most frequently charged summons offense filed with the criminal court. Barry Declaration at ¶ 16. This statute prohibits the consumption of alcohol on New York City streets, except in very limited circumstances. Id. at ¶ 15. In order for a summons charging a violation of New York

---

hearsay allegations of the factual part of the information and/or of any supporting depositions establish, if true, every element of the offense charged and the defendant's commission thereof."

[4] See Barry Declaration at ¶ 13 ("1) a summons must set forth all of the elements of an offense charged in order to meet the facial sufficiency requirement; and 2) where language addressing each part of a statute

City Administrative Code § 10-125 to be deemed facially sufficient it must contain certain non-hearsay allegations, including an allegation that the alleged offender was (1) in possession of an open container that (2) contained a beverage containing more than ½ of 1% of alcohol by volume, (3) in a public place.  Id.  Nonetheless, summonses charging a New York City Administrative Code § 10-125 violation frequently fail to allege such simple information as the fact that a container was open, thus failing to survive facial sufficiency review.  Id.  The failure of an officer to indicate that a container was open, as required by the statute, may result in a dismissal for facial insufficiency but the dismissal in no way "involve[s] any factual finding about the status of the container."[5]  Id.

---

is missing from the summons or the elements are not supported by non-hearsay allegations, the summons may be dismissed for facial insufficiency.").

[5] People v. Coley, 2013 N.Y. Misc. LEXIS 471 (Crim. Ct. Bronx Co.) is instructive here.  In Coley, the defendant was charged with Resisting Arrest, Obstructing Governmental Administration, and Disorderly Conduct.  Id. at *1.  In the criminal court complaint, the arresting officer alleged that the defendant stood "in the middle of the above location, a public sidewalk, impeding the flow of pedestrian traffic."  Id. at *2.  The defendant moved to dismiss the criminal court complaint as facially insufficient.  In resolving the motion to dismiss, the criminal court focused on the disorderly conduct charge since it was the predicate offense upon which the other allegations stood.  Id. at *7-*8 (fn 1).  The court noted that "[o]n a motion to dismiss, [the court's] review is limited to whether or not the People's allegations as stated in the Criminal Court information are facially sufficient.  The facts alleged need only establish the existence of a prima facie case, even if those facts would not be legally sufficient to prove guilt beyond a reasonable doubt."  Id. at *4-*5.  According to the applicable statute, a person is guilty of disorderly conduct when s/he "obstructs vehicular or pedestrian traffic"; "the proscribed conduct must be accompanied by the stated culpable mental state of intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof."  Id. at *5.  The court, however, indicated that "[t]he temporary inconvenience of pedestrians being required to walk around defendant and the apprehended others, without more, is insufficient to sustain [a disorderly conduct] charge."  Id. at *5-*6.  The criminal court complaint at issue failed to meet the necessary facial sufficiency requirements because it did not include allegations regarding "what pedestrians were forced to do as a result of defendant's...behavior."  Id. at *6.  Although, the dismissal motion was granted, the court allowed the prosecution thirty days to file a superseding information providing the necessary additional factual information that would cure the defect.  Id. at *6-*7.  The court also ordered a hearing at which the issue of probable cause for the arrest would be addressed.  Id. at *9.

There are two important facts to cull from Coley.  First, in examining whether a charging instrument has met the facial sufficiency standards, the court's review is limited to whether the prosecutor has alleged enough facts to set forth a prima facie case, thus, supporting the court's jurisdiction.  Id. at *6-*7 ("where a complaint is found to be facially insufficient, curing the defect is imperative, because...the court's jurisdiction is no longer assured.") (internal citations omitted).  The court is not concerned with the

As the Barry Declaration makes clear, when a summons is analyzed to determine whether it is facially sufficient, there is nothing in the criminal court record that would indicate whether or not the court had concerns about the circumstances surrounding the issuance of a particular summons.  Barry Declaration at ¶ 18.  In this way, a dismissal for facial insufficiency is just like the dismissals that occur at the defect review stage.  As the Court recognized in the certification decision, dismissals of summonses at the defect review stage occur for any number of reasons that are completely unrelated to a probable cause determination, e.g., a missing signature or invalid return date.  Stinson, 2012 U.S. Dist. LEXIS 56748 at *51.  Because there is no evidence indicating whether a defect dismissal is indicative of probable cause, the Court rejected inclusion of individuals whose summonses were dismissed as defective in the class herein.  Id.  Just as with defect dismissals, the criminal court record is silent on whether a summons dismissed for facial insufficiency implicates a judicial determination of probable cause for the issuance of a summons.  Barry Declaration at ¶ 18.  Because the facial insufficiency dismissals – like defect dismissals – are neutral regarding the question of probable cause, such dismissals cannot provide a means for defining the class.

---

underlying factual circumstances of the arrest, but with the prosecution going forward.  Second, a facial insufficiency dismissal need not implicate a judicial determination of probable cause.  The fact that the Coley court allowed the prosecution to file a superseding information clearly demonstrates that the facial insufficiency determination had no bearing on the issue of whether there was probable cause for the underlying arrest since, if the dismissal represented an assessment of probable cause for the arrest, a superseding information would not have been permitted.  Moreover, the fact that the court also ordered a probable cause hearing further undermines any contention that the facial insufficiency determination addressed the legality of the underlying incident.

As the Court is aware, summonses charging disorderly conduct account for a significant portion of summonses filed with the criminal courts.  Stinson, 2012 U.S. Dist. LEXIS 56748 at *50.  It is fair to assume that, similar to Coley, the disorderly conduct summonses dismissed for lack of facial sufficiency also suffered from drafting deficiencies which required their dismissal rather than any conjecture concerning the constitutionality of the issuance of the summons.

Absent the Court's finding that facial insufficiency dismissals are the equivalent of a presumptive finding of a lack of probable cause, there is no evidence linking plaintiffs' "binding theory" that summonses are being issued without probable cause pursuant to a City of New York policy or practice, as the Court initially found.  Even narrowing the pool of dismissed summonses to those dismissed for facial insufficiency, the Court would have to engage in countless mini-trials in order to ascertain which summonses may have conceivably been issued absent probable cause.[6]  This point is underscored by deposition testimony given by certain putative plaintiffs herein where it is clear that there was probable cause for the summonses they received even though those summonses were later dismissed as facially insufficient.

For example, plaintiff Gary Shaw was issued a summons on February 23, 2009, charging him with violating N.Y. ADC. Law § 10-111, which makes it unlawful for anyone to leave their vehicle unattended on a city street, with the engine running and the key in the ignition.  Plaintiff testified that on the subject date, his car was double-parked in front of a friend's driveway, with the engine running, while he travelled back and forth to her home helping her unload groceries.  See Deposition Transcript of Gary Shaw, dated June 30, 2011, at 81:5-87:5, 89:2-10, and 94:3-4, attached to the QSW Decl. as Exhibit B.  Based on plaintiff's own testimony, it is clear that probable cause existed to issue plaintiff a summons for leaving his vehicle unattended.  Also, plaintiff Ryburn Walkes, testified that he received a summons in early

---

[6] Relying on the Criminal Court of the City of New York Annual Reports for the years 2008 and 2009, the Court noted that the putative plaintiffs numbered at least 195,417.  Stinson, 2012 U.S. Dist. LEXIS 56748 at *22 (fn 3).  Since the original certification motion, the New York State Office of Court Administration ("OCA") has released data for the years 2010, 2011, and 2012.  According to the annual reports, 87,553 summonses were dismissed as facially insufficient in 2010, 94,809 in 2011, and 83,600 in 2012.  Thus, the class as defined is composed of at least 461,379 putative plaintiffs.  It should be noted that this number is fairly conservative since it does not take into account summonses dismissed for facial insufficiency for the periods May – December 2007, 2013 and 2014.  In fact, the class likely includes more than 600,000 summonses.

2009, charging him with public consumption of alcohol.  Plaintiff further testified that although the summons was dismissed, he was in fact drinking beer from a bottle on the subject date.  <u>See</u> Deposition Transcript of Walkes, dated June 24, 2011 at 46:1-47:16, attached to the QSW Decl. as Exhibit C.  The class as defined now easily includes over 600,000 putative plaintiffs.  In a class of this size, instances where summonses have been dismissed despite evidence that the summons were supported by probable cause, as shown in the foregoing examples, are sure to abound.

Based on the evidence in the record, there is simply no way to ascertain a class of individuals who allege to have been issued summonses absent probable cause as a result of a municipal policy and/or practice without requiring the Court to make tens, if not hundreds of, thousands of individualized factual determinations regarding the inclusion of potential putative plaintiffs.[7]

**B.    The Class Herein Has Not Been Defined In Light Of The Court's Decision That Individuals Whose Summonses Have Been Dismissed For Facial Insufficiency Are Presumptive Members Subject to Challenge By Defendants**

That a class be ascertainable is an implicit requirement of Fed. R. Civ. P. 23.  <u>In re Initial Public Offerings Sec. Litig.</u>, 471 F.3d 24, 45 (2d Cir. 2006).  The description of the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Wright, Miller & Kane, Federal Practice and Procedure § 1760 at 121; <u>Bakalar v. Vavra</u>, 237 F.R.D. 59, 64 (S.D.N.Y 2006).  The test for ascertainability of a class is "whether the class can be ascertained by objective criteria". William B. Rubenstein, et al., Newberg on Class Actions, § 3:3 at 1-163 (2011); <u>Bakalar v.</u>

---

[7] Not only does this inability to prove causation without mini-trials result in a failure of class ascertainability, it illustrates plaintiffs' inability to make the requisite showing that a common issue of causation for <u>Monell</u> liability exists, as such cannot be done without mini-trials.

Vavra, 237 F.R.D. at 64 ("Class membership must be readily identifiable such that a court can determine who is in the class and bound by its ruling without engaging in numerous fact-intensive inquiries").

The Court defined the class herein to presumptively include individuals whose summonses were dismissed as facially insufficient.  However, in recognition of the fact that even in those circumstances where a summons is dismissed as facially insufficient, the dismissal might have no bearing on probable cause, the Court permitted defendants to "challenge any of [the] presumptive class members on grounds that their summonses were dismissed for reasons other than a lack of probable cause."  Stinson, 2012 U.S. Dist. LEXIS 56748 at *52.  First, by requiring defendants to challenge class membership, the Court has, in effect, shifted the burden to defendants to define the class instead of placing it upon plaintiffs where it belongs.[8]  Newberg on Class Actions, § 3:3 at 1-160 ("Where courts require the showing to be made, they have held that the plaintiff bears the burden of pleading a sufficiently definite class").  Because the presumption is rebuttable, class membership cannot be ascertained until the factual analysis of probable cause for each summons is undertaken.  Therefore, "presumptive" inclusion of those whose summonses were dismissed for facial insufficiency only results in the artificial satisfaction of the ascertainability requirement and in no way meets the manageability test.

Second, the class is overbroad to the extent that "it could include a substantial number of people who have no claim under the theory advanced by the named plaintiff."  Vigus v. S. Ill. Riverboat/Casino Cruises, Inc., 274 F.R.D. 229, 235 (S.D. ILL. 2011).  "[N]o class may be certified that contains members lacking Article III standing . . . The class must therefore be

---

[8] Regardless of which party bears the burden of establishing class membership, this action cannot proceed in the absence of a clearly defined class as such is necessary to determine who will be bound by the judgment for purposes of res judicata.  Here, there is no practical method whereby to establish class membership.

defined in such a way that anyone within it would have standing." <u>Sanders v. Apple Inc.</u>, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (quoting <u>Denney v. Deutsche Bank AG</u>, 443 F.3d 253, 264 (2d. Cir. 2006).[9]  As it stands now, the class herein could include innumerable individuals who have no standing to advance a claim since their summonses were dismissed for reasons other than a lack of probable cause.  <u>See</u>, <u>e.g.</u>, Exhibits B and C.  The class should be decertified for this reason alone.

Third, beyond the definitional problem, the Court has shifted the burden to defendants to establish that there is no liability here, when, in fact, the opposite should be the case – it is plaintiffs' burden to establish liability.  "In the context of section 1983 claims, federal courts have held that the plaintiff bears the burden of establishing the absence of probable cause." <u>Khan v. Ryan</u>, 145 F. Supp. 2d 280, 283-284 (E.D.N.Y. 2001); <u>see</u> <u>also</u> <u>Brown v. City of New York</u>, 306 F. Supp. 2d 473, 479 (S.D.N.Y. 2004) ("The burden of establishing absence of probable cause is on the plaintiff."); <u>Morse v. Spitzer</u>, 2011 U.S. Dist. LEXIS 35014 (E.D.N.Y. Mar. 15, 2011) ("the burden of establishing the absence of probable cause ordinarily rests on the plaintiff").  The burden of establishing wrongdoing, or a lack thereof in this case, cannot, and should not, be shifted to defendants.

---

[9] <u>See</u> <u>also</u>, <u>e.g.</u>, <u>Berndt v. Cal. Dep't of Corr.</u>, No. C 03-3174, 2012 U.S. Dist. LEXIS 37755 (N.D. Cal. Mar. 20, 2012).  There, plaintiffs sought to certify a class a female corrections officers who were involved in incidents in which male inmates would masturbate publicly.  The proposed class definition included "all women employed by [the correctional facility] at any time since November 1989, at which male inmates are incarcerated and incidents of inmate exhibitionist masturbation have been reported." <u>Id.</u> at *34.  The court refused to certify the class since, among other reasons, the proposed definition was too broad.  <u>Id.</u>  The court stated that "plaintiffs' definition fails to distinguish between women who were actually subjected to an [exhibitionist masturbation] incident, and those who were not.  Only the former can possibly demonstrate a past injury, since logic dictates that the latter cannot complain of harassment where they have not experienced any grounds for such a claim.  Thus, because plaintiffs' class definition fails to limit itself to class members who have actually suffered harm by reason of defendants' alleged harassment, it is impermissibly broad."). <u>Id.</u>

POINT II

**THE CLASS SHOULD NOT BE CERTIFIED PURSUANT TO FED. R. CIV. P. 23(B)(2) SINCE PLAINTIFFS HAVE NOT DEMONSTRATED BY A PREPONDERANCE OF THE EVIDENCE THAT DEFENDANTS HAVE ACTED OR REFUSED TO ACT ON GROUNDS THAT APPLY GENERALLY TO THE CLASS**

A successful motion for class certification must meet the prerequisites of Fed. R. Civ. P. 23(a) and also at least one of the provisions of Fed. R. Civ. P. 23(b).  The class herein was certified pursuant to Rules 23(b)(2) and 23(b)(3).  As to the Rule 23(b)(2) certification, the rule provides that a class may be certified pursuant to this provision where plaintiffs demonstrate that defendants "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief is appropriate respecting the class as a whole."  In deducing that plaintiffs had satisfied their burden of demonstrating their entitlement to declaratory and/or injunctive relief, the Court found that the fact that a large number of summonses were dismissed for facial insufficiency throughout the City of New York was indicative of a policy of issuing summonses absent probable cause, and thus, sufficed to show that defendants acted on grounds generally applicable to the class.  Stinson, 2012 U.S. Dist. Lexis 56748 at *69-*70.

However, in light of the Barry Decl., demonstrating that facial insufficiency dismissals have no bearing on a probable cause determination, the foundation upon which the holding that such dismissals were indicative of a Citywide policy is now lacking.  The result being that plaintiffs' *only* evidence that there is a policy of issuing summonses without probable cause are roll call recordings taken at two out of the City's seventy-seven police precincts (not including the City's twelve transit districts which comprise the Transit Bureau and nine Police Service Areas which comprise the Housing Bureau), and a January 14, 2006 arbitration decision

which determined that there was a traffic summons quota at the 75th precinct eight years ago and that police officers were improperly subjected to substandard performance evaluations as a result of failing to issue a particular number of traffic tickets.

Absent from the evidence upon which plaintiffs rely is any evidence, testimonial or otherwise, that police officers throughout the City of New York are issuing criminal court summonses absent probable cause as a matter of policy. In fact, the deposition testimony of Adrian Schoolcraft, the NYPD officer who recorded one set of the tapes at issue, demonstrates how flimsy plaintiffs' evidence is. During his deposition, Schoolcraft denied ever having issued a summons absent probable cause. See Deposition Transcript of Adrian Schoolcraft, dated October 11, 2012, at 54:13-15, attached to the QSW Decl. as Exhibit D. He further denied ever being denied the opportunity to work overtime and/or having his work tour changed as a result of failing to issue a certain number of summonses. Id. at 60:24-61:9; 63:17-20. Further, despite general allegations that the NYPD has a quota policy, Schoolcraft's testimony belies the contention that any such policy pressures officers to issue summonses without probable cause as Schoolcraft clearly testified that he only issued summonses that were supported by probable cause regardless of any quota. Id. at 51:20-52:5 (Q. Did you ever fail to make the number of required summons in a month? A. Yeah. I don't believe – I don't believe I handed in the number of summonses that they were happy with, no. Q: Have you ever turned in the number of summonses [supervisors] were happy with? A. If they were happy, I am not aware of it. I just – I went about my day. If I had summonses and arrests, they were based on probable cause, not a quota or making the boss happy). Additionally, plaintiffs have not identified any policy maker that has established a quota for summonses and/or who was aware that officers are allegedly

issuing criminal court summonses without probable cause in order to meet such a quota as required pursuant to <u>Monell</u>.

Plaintiffs cannot meet their burden of demonstrating by a preponderance of the evidence that defendants have acted in a manner generally applicable to the class based on their own say so that there is a Citywide policy of issuing summonses without probable cause.

## POINT III

### THERE ARE NO ISSUES THAT PREDOMINATE AND THE CLASS AS DEFINED IS UNMANAGEABLE

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation...It is a more demanding criterion than the commonality inquiry under Rule 23(a). Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, *and* if these particular issues are more substantial than the issues subject only to individualized proof." <u>Moore v. Paine Webber, Inc.</u>, 306 F.3d 1247, 1252 (2d Cir. 2002) (emphasis added) (internal quotations and citations omitted). Here, plaintiffs have not presented any evidence showing that the majority of their common questions can be resolved through generalized proof, nor that the individual issues which plague this class are less predominant than the common questions within it.

Plaintiffs here have not identified any written citywide policy, or any evidence demonstrative of such a policy, much less established any causal link to the violations claimed herein. Furthermore, plaintiffs have similarly failed to identify any evidence indicative of a pattern or practice of officers issuing summonses absent probable cause because the dismissals at issue do not represent that judgment. What's more -- absent the contention that facial insufficiency dismissals are presumptive evidence of summonses being issued without probable

cause -- plaintiffs cannot establish such a practice/pattern without examining the circumstances underlying each of the putative class members' claims. Crucially, the need to engage in thousands of fact-specific inquiries into the putative class members' allegations in itself belies any claims that the City engaged in an unitary course of conduct applicable to the class, and therefore, a finding of predominance is precluded.

In re Fosamax Prods. Liab. Litig., 248 F.R.D. 389, 396 (S.D.N.Y. 2008) ("Fosamax") is informative here. In Fosamax, the proposed class representatives sought to certify three state-wide classes comprised of individuals who were users of Fosamax. Id. at 391. The plaintiffs alleged that the ingestion of Fosamax either caused users to develop a medical condition called osteonecrosis of the jaw ("ONJ") or to be at an increased risk of later developing ONJ. Id. at 390-391. Thus, the plaintiffs moved to certify a class seeking to have Merck fund a program which would allow for medical monitoring of the class members for the condition. Id. at 391. The court refused to certify the class finding that "class-treatment of these claims is inappropriate because they present too many individual questions of fact particular to each class member's claim." Id.

In analyzing the question of certification, the Fosamax court preliminarily noted the impracticality of litigating mass tort cases as class actions, especially in the context of pharmaceutical products liability actions. Id. at 396 ("it should be noted that the class action device typically is not very useful in mass tort cases, which tend to 'present significant questions, not only of damages but of liability, … affecting the individuals in different ways.' … Lower courts almost unanimously have rejected class certification in pharmaceutical products liability actions[.]" (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)). The court denied certification since, among other reasons, the plaintiffs

could not satisfy the predominance standard.  Id. at 402.  The court held that issues such as: (1) each member's medical condition and use of Fosamax; (2) the reasonableness of Merck's acts or omissions in comparison to what was known, or should have been known, about the risk of ONJ at time of each member's use of the drug; and (3) the timing of Merck's warnings to customers regarding the risks of ONJ, or lack thereof, were highly individualized inquiries not subject to resolution through generalized proof.[10]   Id. at 399.   More importantly, the court denied certification since the ultimate question of whether Fosamax proximately caused each user to be highly sensitive to ONJ could not be answered by reference to general evidence, but instead was unique to each user.  Id. ("A plaintiff cannot prevail by proving that, in general, Fosamax could cause a significant increase in the risk of ONJ in some users.").

      Similarly, here, there are no predominant issues within the class that can be resolved through generalized proof.  In fact, the necessary "generalized proof" fails at two crucial levels.  First, the question of whether there is a citywide practice or pattern of issuing summonses cannot be resolved without delving into the circumstances of the more than 600,000 summonses at issue.  In other words, the alleged proof of the existence of the pattern/practice can only be found within the individual cases themselves.  This is the antithesis of a "cohesive" claim subject to generalized proof.  Second, an affirmative answer to the question of whether defendants had a policy/practice of issuing summonses absent probable cause would not dispose of this matter since the question of whether *each* plaintiff received an unconstitutional summons – the real crux

---

[10] The court also found that these issues precluded a finding of typicality since, because of the necessity of inquiring into each member's medical condition and the circumstances surrounding their use of Fosamax, the proposed class representatives could not establish that their claims were typical of Fosamax users generally.  Fosamax, 248 F.R.D. at 399.  Typicality is also missing here due to the individual assessments that would have to be made regarding the underlying probable cause for potentially thousands of summonses.

of this matter – would still remain unanswered.[11] See, e.g., Fosamax, 248 F.R.D. at 399; see also Wal-Mart, 131 S. Ct. at 2552 ("Without some glue holding the alleged reasons for all those decisions together, it [would] be impossible to say that an examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.") (emphasis in original)

Here, the resolution of each plaintiffs' claim hinges on a determination of whether there was probable cause for the summonses received. The probable cause inquiry is

---

[11] See, e.g., Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999 (11th Cir. 1997). In that matter, the district court certified a class of plaintiffs alleging that Motel 6 discriminated against non-white customers by either denying them accommodations or providing them with substandard rooms pursuant to a nationwide policy whereby Motel 6 refused to rent vacant rooms to non-white patrons, segregated white and non-white customers within its facilities, and provided substandard services to non-white customers. Id. at 1001. The Eleventh Circuit subsequently vacated the certification order, finding that plaintiffs had not met the predominance requirement. Id. at 1006. The circuit found that:

> The Jackson plaintiffs' claims will require distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination. The issues that must be addressed include not only whether a particular plaintiff was denied a room or was rented a substandard room, but also whether there were any rooms vacant when the plaintiff inquired; whether the plaintiff had reservations; whether unclean rooms were rented to plaintiff for reasons having nothing to do with the plaintiff's race…and so on…Furthermore, even factual issues that are common to many of the Jackson plaintiffs--such as whether any rooms were in fact available when a particular plaintiff inquired--will require highly case-specific determinations at trial. These issues clearly predominate over the only issue arguably common to the class--whether Motel 6 has a practice or policy of racial discrimination. Indeed, we expect that most, if not all, of the plaintiffs' claims will stand or fall, not on the answer to the question of racial discrimination, but on resolution of these highly case-specific factual issues.

Id. This case further highlights the fact that general allegations of a practice/policy alone are insufficient to push a push a putative class over the predominance threshold. Here, plaintiffs do no more than allege that the City and/or NYPD has a policy of issuing summonses without probable cause. It is not enough.

highly fact-specific and cannot be resolved by proof that defendants have a policy/practice of issuing summonses absent probable cause, even if that were true, but must be made upon analysis of each summons given. Illinois v. Gates, 462 U.S. 213, 232 (1983) ("probable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts -- not readily, or even usefully, reduced to a neat set of legal rules."); see also Joyner v. Officer Alexander Morales, 04 Civ. 569, 2005 U.S. Dist. LEXIS 6540, at *6 (S.D.N.Y. Apr. 15, 2005) ("probable cause generally requires a fact-specific determination"); Estrada v. Torres, 646 F. Supp. 2d 253, 258 (D. Conn. 2009) ("By its nature an inquiry into the existence of probable cause is fact-specific[.]").

In the context of a Fourth Amendment probable cause analysis, the Supreme Court has repeatedly cautioned courts to examine "the totality of the circumstances." Florida v. Harris, 133 S. Ct. 1050, 1055 (2013).   Therefore, even the examination of the facially insufficient summonses, cannot be the basis of finding of probable cause.  While the summonses themselves may provide a starting point for inquiring into the legality of an officer's conduct, plenary judicial analysis requires examination of a wealth of information that cannot be captured in documentary evidence alone, especially just the face of a summons.  E.g., United States v. Arvizu, 534 U.S. 266, 273-77 (2002); Ohio v. Robinette, 519 U.S. 33, 39-40 (1996); Florida v. Jimeno, 500 U.S. 248, 250 (1991).  The determination of probable cause turns on what was known to the officer at the time s/he issued the summons and whether such information would lead a reasonable person to believe that the offender committed the offense with which he was charged. Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir. 1995) (Probable cause exists "when the arresting officer has knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the

person to be arrested.") (citing <u>O'Neill v. Town of Babylon</u>, 986 F.2d 646, 650 (2d Cir. 1993)). Police paperwork, by necessity, only provides a general record of the rationale for police action, and cannot satisfy plaintiffs' judicial burden. The sort of individualized assessment required to determine probable cause precludes a finding of predominance here.

Finally, in informing the predominance inquiry, the court may examine the manageability of the proposed class. Fed. R. Civ. P. 23(b)(3)(D). Where the court would have to engage in significant individualized assessments of the putative class members claims, the class is unmanageable and certification should be denied. <u>See</u>, <u>e.g.</u>, <u>N.J. Carpenters Health Fund v. Residential Capital, LLC</u>, 272 F.R.D. 160, 170 (S.D.N.Y. 2011) (in a proposed security class action the court denied certification on predominance and manageability grounds where court would have to hear individualized evidence concerning the purchasers' knowledge of the offering documents.); <u>see also</u> <u>Fosamax</u>, 248 F.R.D. at 403 ("Finally, the predominance of individual questions would make the proposed class actions unmanageable."); <u>Ross-Randolph v. Allstate Insurance</u>, 99-3344, 2001 U.S. Dist. LEXIS 25645, at *29-*30 (D. Md. May 11. 2001) (Rule 23(b)(3) not met since it was "apparent from the pleadings that individual factual determinations will constitute a significant part of this action"); <u>Vulcan Golf, LLC v. Google Inc.</u>, 254 F.R.D. 521, 534 (N.D. Ill. 2008) (in an action alleging claims pursuant to the Anti-Cybersquatting Protection Act, the court denied certification since the resolution of the ownership of trademarks and the distinctiveness of the marks would require the court to engage in numerous time-consuming individual inquiries, making the proposed class unmanageable); <u>Gonzalez Villa v. United Site Services of California, Inc.</u>, 2012 U.S. Dist. LEXIS 162922 (N.D. Ca. Nov. 13, 2012) (proposed class unmanageable where the court would have to engage in fact-finding determinations for approximately 492 putative plaintiffs).

The plaintiffs in the present case number more 600,000.  It would be nearly impossible for the Court to engage in the required, individual probable cause fact assessments necessary in a class this large.  Even if plaintiffs attempted to forego presenting evidence for any but the ten class representatives herein, defendants are entitled to challenge any member of the class on the issue of probable cause for his/her summons.  <u>Stinson</u>, 2012 U.S. Dist. LEXIS 56748 at *3.  Dealing with such unwieldy evidence for the purposes of discovery and/or trial would be a huge burden on the Court and would negate any efficiency allegedly gained by litigating this matter as a class action.  <u>See</u>, <u>e.g.</u>, <u>Lightfoot v. District of Columbia</u>, 273 F.R.D. 314, 338 (D. D.C. 2011) ("Mindful that Plaintiffs need not establish constitutional violations for each and every class member in order to prevail on their claim, the Court is not oblivious to the fact that Defendants may legitimately raise the particulars of individual cases in order to defend against the contention that violations occurred with sufficient frequency "across the board."…Therefore, with the continued certification of the class, there is a risk that the trial in this action would devolve into multiple mini-trials going to the propriety of Defendants' conduct as to individual class members.").

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court decertify the class herein.

Dated:      New York, New York
            April 4, 2014


                              ZACHARY W. CARTER
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants*
                              100 Church Street
                              New York, New York 10007
                              (212) 356-2360

                       By:    _____
                              Qiana Smith-Williams
                              Senior Counsel


To:   <u>Via ECF</u>
      Jon Norinsberg, Esq.

      Gerald Cohen, Esq.
      Joshua Fitch, Esq.
      Cohen & Fitch LLP

      Steig Olson, Esq.
      Stephen Neuwirth, Esq.
      Elinor Sutton, Esq.
      Quinn Emanuel Urquhart & Sullivan, LLP

      *Attorneys for Plaintiffs*