

1095 Avenue of the Americas
New York, NY  10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

EDWARD A. MCDONALD

edward.mcdonald@dechert.com
+1 212 698 3672  Direct
+1 212 698 0472  Fax

April 8, 2014

**VIA E-FILE AND HAND DELIVERY**

Hon. Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY  10007

Re:  *Stinson, et al. v. City of New York, et al.*, No. 10-cv-4228

Dear Judge Sweet:

We represent non-party the Patrolmen's Benevolent Association of the City of New York, Inc. (the "PBA").  We respectfully submit this letter in opposition to Plaintiffs' March 26, 2014 request for an order compelling the PBA to produce additional documents pursuant to a third-party subpoena ("Plaintiffs' March 26 letter" or "Pl. Br.").

Under Fed. R. Civ. P. 45, Plaintiffs must "take reasonable steps to avoid imposing undue burden or expense" on a non-party.  *See* Fed. R. Civ. P. 45(d).  Plaintiffs have made no such effort here. The PBA has already produced documents responsive to the majority of the requests set forth in the subpoena.  Plaintiffs now seek to compel the production of large swaths of documents, without any date restriction whatsoever, including communications between union members and the legal staff of the PBA and internal analyses which, as counsel for the PBA has repeatedly explained, are privileged.

The remaining requests seek documents that are: (1) readily available from *parties*; and/or (2) would place an undue burden on a non-party to search for, review and produce materials that are of marginal probative value at best.

Ironically, Plaintiffs assert they now seek an order compelling the PBA to comply with document requests that are "narrower" than the requests set forth in the subpoena.  In fact, Plaintiffs' "narrowed" requests simply delete the requests with which the PBA has already complied.

Plaintiffs' request for an order to compel should be denied.



## I. Background

### A. Procedural History

#### 1. The Subpoena

Plaintiffs issued the subpoena on August 6, 2013.  The subpoena attached a list of 17 document requests.  The subpoena sought, among other things, all documents regarding any arrest and summons quota policies or practices of the NYPD; all documents concerning any grievance or allegations made by a NYPD officer relating to quotas and all communications with the NYPD relating to quotas; all analyses, reports and other compilations concerning quotas; all documents relating to statements, publications, or other information released by the PBA concerning quotas, including specific publications; all documents relating to an arbitration between the PBA and the City of New York; and all documents concerning a certain Senate bill.  A copy of the subpoena and the attachment setting forth the requests is annexed hereto as Exhibit A.

#### 2. The Parties' Dispute About The Protective Order

After reviewing the subpoena, the PBA quickly determined that it called for sensitive, confidential information.  The PBA, therefore, took the unremarkable position that it would not produce any responsive, non-privileged documents until the protective order in this matter was extended to apply to third parties.  Plaintiffs concede that they "readily agreed to this request." Pl. Br. at 2.

Plaintiffs then sought agreement from defendant the City of New York (the "City") to extend the protective order to third parties.  As Plaintiffs note in their March 26 letter, however, "the City of New York refused to enter into such an agreement." *Id.*; *see also* Exhibit B (Feb. 27, 2014 email from G. Cohen to E. McDonald, in which Plaintiffs' counsel stated that "the City has attempted to delay at every turn in this case").  This dispute plainly had nothing to do with the PBA.  Plaintiffs, in their March 26 letter, admit that they did not seek the Court's intervention in the parties' dispute about the protective order until January 13, 2014 – *over five months after the Plaintiffs issued the subpoena to the PBA*.  Pl. Br. at 2.[1]

After briefing on the issue was submitted by the Plaintiffs and the City (the PBA was not involved in this motion practice), Your Honor entered the Stipulation and Protective Order on

---

[1] Although Plaintiffs allege that the PBA has "strung them along for months," and raised "a litany of boilerplate objections" (Pl. Br. at 5), the record makes clear that any delay has been caused *by the parties*, not the PBA, that the PBA has responded to the subpoena in good faith and that the PBA has already produced the non-privileged documents in its possession that are arguably relevant to this case.



Hon. Robert W. Sweet
April 8, 2014
Page 3

February 5, 2014, and then entered a revised order on February 10, 2014 which explicitly stated that all of the terms of the protective order applied to third parties.  The next day, Plaintiffs' counsel forwarded a copy of the protective order to counsel for the PBA.  Exhibit C (Feb. 11, 2014 email from G. Cohen to E. McDonald).

Therefore, despite the unwarranted hyperbole in Plaintiffs' March 26 letter, it is clear that the PBA could not possibly have produced any documents until, at the earliest, February 11, 2014.  Plaintiffs' assertion that the PBA "strung" Plaintiffs along (Pl. Br. at 5), therefore, is entirely without support in the record and demonstrates that the Plaintiffs, in their March 26 letter, simply were not candid with this Court.

### 3. The PBA's Document Production

Promptly after entry of the confidentiality order, the PBA made an initial document production on February 18, 2014, providing the Plaintiffs with the documents that are arguably relevant to their claims in this case: formal grievances filed on behalf of PBA members regarding quotas.  *See* Exhibit D (Feb. 18, 2014 cover letter from E. McDonald to G. Cohen).

### 4. February 27, 2014 Meet And Confer

Counsel for the PBA and the Plaintiffs held a meet and confer (by telephone) on February 27, 2014.  In that call, counsel for the PBA repeated its position that the subpoena was overly broad and unduly burdensome.  In the meet and confer, Plaintiffs stated they were prepared to narrow the scope of the subpoena.  *See* Exhibit E (Feb. 28, 2014 email from E. McDonald to G. Cohen).  As a follow-up to the meet and confer, on March 6, 2014, the PBA offered to search for and produce additional filed grievances and publications related to quotas, if any, and explained again its objections to the remainder of the requests.  *See* Exhibit F (Mar. 6, 2014 email from E. McDonald to G. Cohen, explaining that the requests were overly broad, required speculation by the PBA, and called for documents were either protected by privilege or more easily obtained from a party to the litigation).  The PBA also offered to consider a more narrowly drawn, less broad version of the subpoena.  *Id.*

### 5. March 10, 2014 Requests

On March 10, 2014, Plaintiffs sent the PBA a revised version of the subpoena requests (the "March 10 Requests"), which Plaintiffs claim "narrowed" their requests.  In reality, however, the March 10 Requests contained substantial *additional document requests*.  For example, Plaintiffs expanded Request 5 from "[a]ll documents reflecting communications with the NYPD relating to Quotas or summons policies or practices" to "[a]ll communications with the NYPD relating to Quotas or summons policies or practices, *all documents reflecting oral communications with the NYPD relating to Quotas or summons policies or practices, and all documents reflecting the PBA's reaction, response, or opinion regarding such communications*."  Exhibit G (March 10 Requests) (emphasis added).  Plaintiffs did not remove any of the original requests.



Hon. Robert W. Sweet
April 8, 2014
Page 4

### 6. The PBA's Second Document Production

Despite this, the PBA, in a good faith effort to comply, made an additional production of documents in response to the March 10 Requests 9 through 16, which sought certain PBA publications. Plaintiffs' March 26 letter omits any reference to the PBA's second production of documents. *See* Exhibit H (Mar. 14, 2014 cover letter to Plaintiffs).

### 7. Order Compelling Discovery

Without making further efforts to resolve the issues, Plaintiffs then filed the instant letter requesting an order compelling production. As described in their March 26 letter, Plaintiffs have now created a third version of their document requests (the "March 26 Requests," annexed hereto as Exhibit I). Before Plaintiffs filed the March 26 Requests with this Court, Plaintiffs never provided this version of their requests to the PBA.

### B. The Documents Plaintiffs Seek To Compel The PBA To Produce

While presenting their March 26 Requests to this Court as "narrow[ing] the topics at issue even further" (Pl. Br. at 1), in fact, Plaintiffs have merely deleted requests 1 and 9 through 16 of the original subpoena requests, obviously because the PBA *has already produced documents responsive to those requests*. Plaintiffs made minor changes to other requests but did not meaningfully narrow the scope of documents requested. And, the March 26 Requests still contain no time limitation whatsoever.

As described in Plaintiffs' March 26 letter (Pl. Br. at 4), Plaintiffs seek to compel production of five broad categories of documents: (1) documents concerning grievances filed by PBA members against the NYPD which involved allegations of an illegal quota [March 26 Requests 2, 6, and 7]; (2) affidavits from NYPD officers provided to the PBA alleging an illegal quota [March 26 Request 3]; (3) any transcripts, exhibits, or pleadings relating to a certain arbitration between the PBA and the City of New York [March 26 Request 8]; (4) written communications between the PBA and the NYPD relating to quotas, summons policies, and practices or a certain Senate bill[2] [March 26 Requests 5 and 17]; and (5) documents sufficient to show the information relied on by the PBA in its position regarding the Senate bill in question [March 26 Request 17].

As discussed above, Plaintiffs have already produced all filed grievances concerning quotas from 2007 to the present. Any additional documents concerning grievances or potential grievances that were never filed (including affidavits) are communications between PBA members and PBA in-house counsel and are privileged. The other documents Plaintiffs seek either have little or no

---

[2] The Senate bill in question, S2956A, was designed to amend the labor law and included provisions to prohibit disciplinary actions against officers for failing to meet quotas for tickets, summonses or arrests.



Hon. Robert W. Sweet
April 8, 2014
Page 5

probative value (such as internal documents relating to the PBA's position on a Senate bill), do not justify burdening a non-party or are readily available from a party to the litigation (such as communications between the PBA and the NYPD).

## II. ARGUMENT

### A. Legal Standards Applicable To Non-Party Discovery Requests

In seeking discovery from a non-party, Plaintiffs "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The serving party bears the burden of showing the appropriateness of a subpoena served on a nonparty." *In re Subpoena Duces Tecum Served on Bell Commc'n Research, Inc.,* No. MA–85, 1997 WL 10919, at *2 (S.D.N.Y. Jan.13, 1997), *modified on other grounds,* 1997 WL 16747 (S.D.N.Y. Jan.17, 1997). Moreover, "special weight should be given to the burden of non-parties in producing documents to parties involved in litigation." *Copantitla v. Fiskardo Estiatorio, Inc.*, 2010 WL1327921, at *10. (Apr. 5, 2010) (quoting *Travelers Indemnity Co. v. Metropolitan Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005).

"[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the nonparty." *Fears v. Wilhemina Model Agency, Inc.*, No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. Apr. 1, 2004). And the status as a non-party entitles that non-party "to consideration regarding expense and inconvenience." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 49 (S.D.N.Y. 1996).

A subpoena that attempts to subject a non-party to an undue discovery burden must be quashed or modified. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). The Court should "take steps to relieve a nonparty of the burden of compliance even when such accommodations might not be provided to a party." *Wertheim Schroder & Co v. Avon Prods., Inc.*, No. 91 Civ. 2287, 1995 U.S. Dist. LEXIS 79, at *6 (S.D.N.Y. Jan. 9. 1995). Tellingly, nearly all of the cases cited by Plaintiff involve discovery from a *party* and, thus, are inapplicable.

"Whether a subpoena imposes an 'undue burden' depends on factors including relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Noel v. Bank of N.Y. Mellon*, 2011 U.S. Dist. LEXIS 84106, at *4-5 (S.D.N.Y. 2011). *See also In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 75 (S.D.N.Y. 2007) (a subpoena which is "unlimited in time or at least not addressed to the proposed class period" is unduly burdensome, particularly when there is a "broad scope of discovery sought").



Hon. Robert W. Sweet
April 8, 2014
Page 6

**B. The Bulk Of The Discovery Sought In The March 26 Requests Is Protected By Privilege**

The March 26 Requests contain eight of the requests originally set forth in the subpoena: Requests 2 through 8 and Request 17.  Requests 2 through 7 of the March 26 Requests seek documents reflecting communications between PBA in-house lawyers and PBA members [Requests 2, 3, 6, and 7] and/or documents involving internal PBA analyses and evaluations [Requests 4 and 5].  Such documents are squarely protected by the attorney-client privilege, work product doctrine, union member privilege, and self-critical analysis privilege.[3]

*First*, Requests 2, 3, 6, and 7 seek documents related to allegations of quotas.  As discussed above, the PBA has already produced all relevant filed grievances related to quotas from 2007-present, the applicable class period.[4]  Documents and communications between PBA members and the legal staff of the PBA about the filed grievances, or about potential grievances that were never filed, are clearly privileged, as PBA members initiated such communications with PBA in-house lawyers for the purposes of obtaining legal advice.  The attorney-client privilege attaches to communications with in-house counsel even where there are other non-legal considerations, so long as the communication is for "predominately" legal purposes.  *See*, *e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, No. 673, 2002 WL 31458230, at *2 (S.D.N.Y. Nov. 4, 2002) (communications with in-house counsel that "predominantly provide[] legal advice. . . [are] entitled to the attorney-client privilege."); *see also Peterson v. Kennedy*, 771 F.2d 1244, 1258 (9th Cir. 1985) ("an attorney who is handling a labor grievance on behalf of a union" enters into

---

[3]   Plaintiffs claim that the PBA's invocation of attorney-client privilege is somehow insufficient because the PBA has not produced a privilege log.  Pl. Br. at 6.  Plaintiffs are incorrect.  When a non-party describes generally the privileged communications, courts have found this to be sufficient.  Under Fed. R. Civ. P. 45(e)(2)(A), a party asserting a privilege must "describe the nature of the withheld documents, communications, or tangible things in a manner that . . . will enable the parties to assess the claim."  While this often takes the form of a privilege log, "the courts retain some discretion to permit less detailed disclosure in appropriate cases. . . . This would certainly be the case if (a) a document-by-document listing would be unduly burdensome and (b) additional information to be gleaned from a more detailed log would be of no material benefit to the discovering party in assessing whether the privilege claim is well grounded."  *SEC v. Thrasher*, No. 92 Civ. 6987, 1996 U.S. Dist. LEXIS 3327, at *2-3 (S.D.N.Y. Mar. 20, 1996); *GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, No. 11 Civ. 1299, 2011 WL 5439046, at *11 (S.D.N.Y. Nov. 10, 2011.)  *See also* Suevon Lee, "OCA Proposal on Privilege Logs Seeks to Trim Costs, Time," *New York Law Journal*, April 7, 2014 (because a privilege log can run hundreds of pages and cost hundreds of thousands of dollars, the Commercial Division of the New York State Supreme Court is considering changing privilege log standard to "allow[] parties to group entries by category" instead of item-by-item documentation).

[4]   Plaintiffs complain that the PBA offered to produce additional grievance letters dating back to May 2007, but then claimed there were none.  Pl. Br. at 3.  In fact, the PBA offered to search for grievances related to quotas back to 2007; it conducted a search and found there simply were no filed grievances in 2007 through 2009 based on quotas.  *See* Exhibit J (Mar. 18, 2014 letter from E. McDonald to G. Cohen).



an attorney-client relationship with the union). Similarly, any attorney work product related to grievances, is clearly protected as work product created in anticipation of potential litigation. Fed R. Civ. P. 26(b)(3)(A).

Moreover, any communications between the PBA and its members are also protected by the union member privilege. There is "a species of privilege for labor union leaders. If unions are to function, leaders must be free to communicate with their members about the problems and complaints of union members without undue interference." *Seelig v. Shepard*, 578 N.Y.S.2d 965, 967 (Sup. Ct. N.Y. Cnty. 1991). This privilege is designed to "protect[] . . . the right to fully participate in an employee organization, with the full benefits thereof and inquiries such as the one herein would seriously hamper such participation." *City of Newburgh v. Newman*, 421 N.Y.S.2d 673, 676 (3d Dep't 1979). There is a strong public policy rationale behind this privilege, as the "[q]uestioning of a union official as to his observations and communications with a union member facing disciplinary proceedings, if permitted, would tend to deter members of the union from seeking advice and representation with regard to pending charges, thereby seriously impeding their participation in an employee organization." *Id.* at 675-76. The rationale applies forcefully here where the PBA members' employer, the City, is a party to the case and would receive in discovery copies of communications between PBA members and union officials about the NYPD.

*Second*, Requests 4 and 5 (which request documents reflecting the PBA's internal responses, opinion, analyses, and evaluations relating to quotas) are privileged because they seek documents protected by the self-critical analysis privilege, which shields institutional self-analyses from discovery. The privilege applies where 'an intrusion into the self-evaluative analyses of an institution would have an adverse effect on the [evaluative] process, with a net detriment to a cognizable public interest.'" *Flynn v. Goldman, Sachs & Co.,* No. 91 Civ. 0035, 1993 WL 362380, at *1 (quoting *Cobb v. Rockefeller Univ.*, 1991 WL 222125, *1 (S.D.N.Y. Oct. 24, 1991). *See also Troupin v. Metropolitan Life Ins. Co.*, 169 F.R.D. 546, 549 (S.D.N.Y. 1996) (Sweet, J.) (recognizing the privilege where disclosure would have a chilling effect on self-evaluation and examination as to issues clearly in the public interest and where "disclosure would cause injury and thwart . . . desirable social policy"). Compelling disclosure of the PBA's internal analyses related to quotas would be chilling and counterproductive.

**C. Plaintiffs Seek Documents That Lack Probative Value And Can Be Obtained From Parties**

    **1. Documents That Have No Probative Value**

Requests 4, 5, and 17 of the March 26 Requests seek information that has no probative value to Plaintiffs' claims in this case. As discussed above, Requests 4 and 5 seek documents reflecting the PBA's internal responses, opinion, analyses, and evaluations relating to quotas. Request 17 seeks documents regarding the PBA's position as to Senate Bill S2965A. These documents, to



Hon. Robert W. Sweet
April 8, 2014
Page 8

the extent they exist, are not relevant to Plaintiffs' claims in this litigation and will not lead to the discovery of any admissible evidence.

Plaintiffs have brought this *Monell* liability case under Section 1983 against the City regarding the alleged policy, practice and custom of issuing summonses without probable cause. The PBA's internal deliberations, if any, about these matters have nothing to do with policies instituted by the City or the NYPD. And, any marginal probative value cannot justify the burden to search for such documents without any date restriction.

"A subpoena that 'pursues material with little apparent or likely relevance to the subject matter' . . . is likely to be quashed as unreasonable even where the burden of compliance would not be onerous." *Kirschner v. Klemons*, No. 99 Civ. 4828, 2005 WL 1214330, at *2 (S.D.N.Y. May 20, 2005) (quoting *Concord Boat,* 169 F.R.D. at 50). This is particularly true where, as here, the person or entity on whom the demand is made is not a party to the action. *See Copantitla*, 2010 WL1327921, at *10.

Plaintiffs' claim that they are seeking discovery from the PBA in order to identify additional witnesses makes no sense. *See* Pl. Br. at 5. According to their complaint, Plaintiffs have already been contacted by "a large number" of police officers (Aug. 31, 2010 Amended Class Action Complaint ¶ 37) and grievances already produced in this litigation have provided the Plaintiffs with the names of officers who filed those grievances. And, presumably, Plaintiffs have already identified police officers who issued the alleged summons that were dismissed for lack of probable cause.

In light of this, using a non-party subpoena to collect the names of PBA members who chose *not* to file grievances would yield no evidentiary support for Plaintiffs' claims. This search for cumulative information is an "'undue burden' on. . . a non-party" and ultimately constitutes a "fishing expedition." *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (citing Fed. R. Civ. P. 26(c)); *see also Eugenia VI Venture Holdings, Ltd. v. Chabra*, No. 05 Civ. 5277, 2006 WL 1293118, at *3 (S.D.N.Y. May 10, 2006) (additional deposition sought was unnecessarily cumulative where there was "no reason to believe that a deposition of [an additional deponent] could improve" the case.)[5]

In fact, as noted above, the PBA searched for and produced grievances related to quotas back to 2007; there simply were no filed grievances in 2007 through 2009 based on quotas. *See* Exhibit J (Mar. 18, 2014 letter from E. McDonald to G. Cohen). This is not surprising, given that the New York labor law providing employees with protection from adverse employment consequences for

---

[5]   Pursuant to Fed. R. Civ. P. 45(d)(1), the PBA reserves the right to seek expenses, including lost earnings, reasonable attorney's fees, and any other allowable costs, resulting from Plaintiffs' imposition of undue burden and expense in connection with this subpoena and request for an order to compel.



Hon. Robert W. Sweet
April 8, 2014
Page 9

failing to meet quotas was significantly amended in 2010, and thus the burden was lowered for filing grievances related to any alleged quotas in 2010 and after.  *See* New York Labor Law §215-a.  In addition, pre-2010 Section 215-a limited quota grievances to traffic violations.  For this reason as well, to impose a burden on a non-party to search its documents in the hopes of finding additional witnesses who may have complained to their union about this limited class of quotas where all filed quota grievances during the class period have been produced is particularly burdensome and outweighed by any probative value that could be produced.

### 2. Documents Discoverable From Parties

Plaintiffs' insistence on burdening the Court to force a non-party to produce documents that Plaintiffs could easily request from a party or chose not to request from a party is equally inappropriate.

Request 5 seeks documents reflecting communications with the NYPD and Request 8 asks for all documents related to an arbitration between the PBA and the City of New York.  Any non-privileged documents regarding the arbitration are plainly in the possession of the City of New York, a defendant in this case.

"[S]ubpoenas under Rule 45 are clearly not meant to provide an end-run around the regular discovery process under Rules 26 and 34."  *Burns v. Bank of Am.*, 03 Civ. 1685, 2007 U.S. Dist. LEXIS 40037, at *46 (June 4, 2007).  Where there is an opportunity to obtain documents from a party to the litigation, a mere "speculation that the non-parties. . .  may have relevant documents that would be useful to the [requesting party] does not justify the significant burden that identification and production of the documents subpoenaed . . . would be place on the non-parties."  *Arista Records LLC v. Lime Grp. LLC*, 06 CV 5936, 2011 U.S. Dist. LEXIS 20709, at *18 (Mar. 2, 2011).

**Conclusion**

For the foregoing reasons, the PBA respectfully requests that the Court deny Plaintiffs' request for an order compelling the production of documents by the PBA.


Respectfully Submitted,


/s/ Edward A. McDonald
Edward A. McDonald

15206530.10