quinn emanuel trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
(212) 849-7325

WRITER'S INTERNET ADDRESS
elinorsutton@quinnemanuel.com

August 14, 2014                              **Ruling Requested on Submission of Papers**

**Via E-File & Hand Delivery**
Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Stinson v. City of New York*, 10-cv-4228 (RWS)

Dear Judge Sweet:

     I write on behalf of Plaintiffs in the above-referenced class action.  In light of the Patrolmen's Benevolent Association of the City of New York's ("PBA"'s) failure to comply with this Court's April 17, 2014 order that it produce certain documents ("Order," attached hereto as Exhibit A), Plaintiffs respectfully request that the Court sign Plaintiffs' proposed order to compel the PBA to produce the same documents ("Proposed Order," attached hereto as Exhibit B).  The PBA's failure to comply with the Court's Order to produce documents affects the parties' ability to move forward with depositions in August 2014.  Plaintiffs understand that the Court will not be available for oral argument until September 2014.  Based on the impending close of fact discovery in this matter, as well as the fact that the Court has already heard oral argument on this same issue, Plaintiffs respectfully request that the Court rule on this issue on submission of the papers.

**Background**

     On March 26, 2014, Plaintiffs moved the Court to compel the production of certain documents that the PBA refused to produce in response to Plaintiffs' August 6, 2013 subpoena, as narrowed on March 10, 2014 ("Narrowed Subpoena," attached hereto as Exhibit D).  Ex. C, Plaintiffs' Mar. 26, 2014 Letter to the Court (Docket No. 103).  On April 17, 2014, Plaintiffs and the PBA appeared before Your Honor regarding the PBA's failure to comply with the Narrowed Subpoena.  Specifically, at the hearing, Plaintiffs sought an order requiring the PBA to produce documents responsive to seven of the requests for production contained in Plaintiffs' Narrowed Subpoena (Nos. 2-4, 6-8, and 17), identified in Exhibit A to Plaintiffs' March 26, 2014 Letter to

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG

the Court (attached hereto as Exhibit E).[1]  At the hearing, your Honor granted Plaintiffs' motion and ordered that the PBA produce or log documents responsive to those requests.  In addition, while Plaintiffs did not move as to certain requests for production contained in Plaintiffs' Narrowed Subpoena because Plaintiffs understood the PBA to have agreed to produce responsive documents to those requests(Nos. 9-16), when the PBA alleged at the hearing that Plaintiffs had "abandoned" these requests, after hearing Plaintiffs' position, the Court ordered the PBA to produce or log documents responsive to these requests as well.

Notwithstanding the time and effort the Court spent considering Plaintiffs' motion to compel and issuing the Order—and the time and money the parties spent briefing and arguing the matter—the PBA is patently *refusing to comply with this Court's Order*:

- Following the Court's Order, the PBA produced only 167 pages, all of which are responsive to only one of the requests for production (No. 8).  In other words, the PBA has produced *zero* documents in response to fourteen of the fifteen requests included in the Order.

- The PBA has refused to conduct a reasonable search for the documents that this Court ordered it to produce, and it has refused to even confirm that it has run a simple electronic search of its files.

- Although the PBA claimed that it could not produce documents responsive to certain requests because the documents were privileged, *see* Ex. A at 6:3-4, 8:12-13, 11:23-12:5, according to its privilege log, the PBA has withheld only five documents on the basis of privilege.  In addition, the PBA has continued to assert the "union member privilege," which the Court specifically held was not applicable in federal court, *id.* at. 16:25-17:3.  And, notwithstanding the Court's Order that the PBA must provide the necessary information in its privilege log for Plaintiffs to determine if withheld documents were first provided to union delegates, as opposed to counsel, *id.* at 15:16-23, the PBA has failed to do so.

- The PBA has improperly refused to produce certain documents responsive to request No. 8 on the basis of confidentiality and Civil Rights Law Section 50-a, which does not apply to the PBA.

Because the PBA has refused to comply with the Court's oral ruling contained in the April 17, 2014 Order, Plaintiffs respectfully request that the Court issue a written order and sign Plaintiffs' Proposed Order, thus preventing the PBA from further attempts to avoid complying with this Court's April 17, 2014 Order.

---

[1] While Plaintiffs had initially moved on eight requests for production, after carefully considering the PBA's burden objection, and in an attempt to compromise, at the April 17, 2014 hearing, Plaintiffs did not press for a ruling with regard to the eighth request for production (No. 5).  That request is also not the subject of this letter.

2

**<u>The PBA's Failure To Produce Documents In Compliance With This Court's Order</u>**

The PBA has failed to produce documents it was specifically ordered to produce during the April 17, 2014 hearing.

*First*, the PBA has refused to produce or log all documents that police offers provided to the PBA in connection with the PBA's process for determining whether to file a grievance. As Plaintiffs previously explained, these files are highly relevant and may include concrete evidence of illegal quotas, such as recordings of roll calls, internal NYPD memos, or performance evaluations that mention quota policies. *See* Ex. F, Plaintiffs' Apr. 14, 2014 Letter to the Court (Docket No. 118) at 3-4. The Court specifically ordered production of these documents:

> MS. SUTTON: The next type of evidence we're seeking, your Honor, the PBA has only produced grievance letters that were actually filed with the NYPD, and there's two issues with that. The first is they have not produced any of the underlying evidence that may exist, and we don't even have any insight into what may be there.
>
> . . . .
>
> THE COURT: Let's make it clear. Any grievance and any supporting material to the grievance that would be filed will be produced.
>
> MS. SUTTON: Okay, Your Honor. Does that also include material that was used during the decision-making process on the grievance?
>
> THE COURT. Yes. Anything that was submitted in connection with that.

Ex. A at 2:16-21, 13:12-19. Thus, at the April 17, 2014 hearing, Plaintiffs specifically requested clarification—and received it—that the Court was ordering the PBA to produce material submitted by the officers in connection with the "decision-making process" as to whether to file a grievance and not—as the PBA now claims—only "supporting material to the grievance that would be filed." *See id;* Ex. G, PBA's June 25, 2014 Email to Plaintiffs.

The PBA's coy attempt to play word games and claim that the Court's ruling only includes documents that were filed as exhibits with grievances is nonsensical. First, the PBA had already represented that it had produced the exhibits to any grievances that were filed with the NYPD concerning summonses, *see* Ex. A at 6:24-8:4, so the PBA's reading of the Court's ruling would render the Order superfluous. Second, if the Court only intended for the PBA to produce "[a]ny grievance and any supporting material to the grievance that would be filed," then the Court would not have clarified its ruling in response to Plaintiffs' inquiry and ruled that the

3

PBA must also produce "[a]nything that was submitted in connection with [the grievance]." *See id.* at 13:12-19.

Moreover, these documents clearly fall within the scope of the requests for production that Plaintiffs moved to compel compliance with, including the following:

> 2. All documents You have collected from any source concerning any allegation of the existence of a Quota, or the use of a Quota, by the NYPD in any performance evaluation or disciplinary or grievance proceedings.
>
> 3. All documents provided to the PBA by any NYPD Officer, current or former, alleging or relating to the existence of a Quota or the use of a Quota by the NYPD, including any completed Affidavit–Summons Quota or any similar affidavit or form, correspondence of any type, and any documentation.
>
> 6. All documents concerning any grievance, individual or group, pursued by or with the assistance of You, arising out of the alleged maintenance or use of summons Quotas by the NYPD, including all Formal Grievances filed by You on behalf of NYPD Officers that relate to Quotas.
>
> 7. All documents relating to any grievance, formal or informal, by an NYPD Officer that relates to the NYPD's alleged use of Quotas, regardless of whether You elected to represent the NYPD Officer in that grievance, including [a list of specific grievances].

Ex. E. Plaintiffs' requests Nos. 6 and 7 even included a footnote stating, "[T]he PBA has produced formal grievances filed by certain officers, but to Plaintiffs' knowledge it has not produced the full underlying PBA files for the grievances, documents concerning any investigations by the PBA of the grievances, all evidence presented by the officers to the PBA, or communications regarding the same." *Id.*

*Second*, the PBA has failed to produce the underlying evidence and any data analysis that the PBA relied on in choosing to support the Anti-Quota Bill (Senate Bill S 2956A). Plaintiffs' prior motion specifically requested that the Court order production of such documents:

> 17. Documents sufficient to show the PBA's position with regard to Senate Bill S2956A, including data, information, or research considered or relied upon in forming that position, and documents sufficient to show any differences in the position of the PBA and the NYPD regarding Senate Bill S2956A and the reasons behind those differences.

*Id.*; *see also id.* ¶ 4; Ex. A at 3:24-4:6.

4

At the hearing, the PBA claimed that any such documents were privileged and attorney work product.  Ex. A at 11:23-12:5.  The Court acknowledged that Plaintiffs sought "any documentation underlying" the PBA's position on the Anti-Quota Bill, and ordered that if the PBA withheld production of such documents, it was required to "say so" in a privilege log.  *Id.* at 12:6-9, 12:13-20.  But the PBA has not done this; it has not produced any documents, and its privilege log makes no mention of any materials that the PBA considered or relied on in determining its position on the Anti-Quota Bill.  *See* Ex. H, PBA's June 10, 2014 Privilege Log.  Instead—notwithstanding that the Court recognized that Plaintiffs sought *any* underlying documentation—the PBA now maintains that it is only required to produce "data or research" underlying the PBA's position on the Anti-Quota Bill, and that no responsive "data or research" has been identified.[2]  Ex I, PBA's June 10, 2014 Letter to Plaintiffs.

*Finally*, the PBA has not produced a single document responsive to requests for production Nos. 9-16 of Plaintiffs' Narrowed Subpoena.  These requests sought, among other things, documents and information "concerning or relat[ing] to positions that the PBA has expressed or supported through various news articles, memoranda, press releases, and advertisements."  *See* Ex. D.  As documented at the April 17, 2014 hearing, Plaintiffs understood the PBA to have already agreed to produce those documents prior to their motion to compel.  After hearing Plaintiffs' position, the Court then solidified the PBA's obligation to produce those documents:

> MR. MCDONALD: . . . [W]ith respect to the articles and the press releases and position papers. . . there's no reference to these articles.  They appear to have abandoned that claim until now. . . .
>
> MS. SUTTON:  That's because they agreed to produce it and they haven't yet.  We assumed you're going to produce it; that's why we only went after the Senate bill, which they had said they would not produce underlying materials.  But we narrowed those [other requests], and they said, We agree; we will produce this.  Thus far, they've only produced the articles, but I assume they are also going to produce the materials they agreed to produce.
>
> THE COURT:  Well, they will produce the materials, unless the materials are privileged.

Ex. A at 14:23-15:13.  With respect to such documents, the Court also specifically required that any assertions of privilege over the documents be included in a privilege log.  *See id.* at 11:18-12:20.  As with the materials underlying the PBA's position on the Anti-Quota Bill, the PBA now claims that it is only obligated to produce "data or research" and that it has not "identified" any such documents.  Ex. I.

---

[2]  This representation is meaningless because the PBA has failed to conduct a reasonable search for responsive documents, as set forth below.

5

Plaintiffs therefore respectfully request that the Court enter Plaintiffs' Proposed Order compelling the PBA to produce or log documents responsive to requests Nos. 2-4 and 6-17 of Plaintiffs' Narrowed Subpoena, as previously ordered by the Court at the April 17, 2014 hearing.

**The PBA's Failure To Search For Documents That The Court Ordered Must Be Produced**

Using its own, improperly limited, reading of the Order, the PBA claims that following the Order, it only identified responsive documents to one of the requests for production that was subject to the Order. *See, e.g.*, Ex. I. This representation is meaningless, however, because the PBA has refused to conduct any thorough or reasonable search for responsive documents.

In fact, to the best of Plaintiffs' knowledge, the PBA has not conducted a single search of its electronic documents for material that is responsive to either the August 6, 2013 subpoena or the Narrowed Subpoena. In recent meet and confers, the PBA's counsel stated that he was not sure if the PBA had searched its email system because the client was handling the collection of documents, but that he would look into the matter and inform Plaintiffs if emails had been searched. Notwithstanding that representation, the PBA now refuses to tell Plaintiffs if it has *even searched* its email system or electronic files, much less the parameters it utilized if any searches were conducted. *See* Ex. J, Plaintiffs' June 25, 2014 E-mail to the PBA, to which the PBA did not respond. Plaintiffs also have no insight into the steps—or lack thereof—that the PBA has taken to search paper files.

The PBA's refusal to conduct a thorough and reasonable search—and the apparent lack of involvement on the part of the PBA's counsel—is a clear violation of the Federal Rules. *See Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 08-CV-5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010) ("A party that has been served with a request for ESI is charged with find[ing] and disclos[ing] all responsive documents or properly set[ting] forth why the documents are being withheld. This obligation to conduct a diligent search requires good faith on the part of the responding party and its attorneys, and mandates that they work together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review and produce responsive documents. When parties and/or their counsel fail in their duty to conduct proper searches of ESI, sanctions may be appropriate." (internal quotation marks and citations omitted)); *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) ("Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search." (internal quotation marks omitted)); *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 224 (S.D.N.Y. 2003) (finding that defendant and its counsel "employed an unconscionably careless procedure to handle discovery matters," where they made "disjointed searches, each time coming up with a few more documents, and each time representing that that was all they had," and where "[s]ometimes they did not even go to the trouble of making a disjointed search but just stated that no responsive documents exist" (internal quotation marks omitted)).

Moreover, it is simply not plausible that no documents exist in response to many—if not all—of Plaintiffs' requests. For example, Plaintiffs have requested the material underlying certain positions that the PBA has taken regarding quotas in published articles and advertisements, and the material underlying its decision to support certain legislation. *See* Ex. D

6

¶¶ 9-17.  The suggestion that the PBA published articles and advertisements and publicly supported proposed legislation without relying on any underlying information is absurd.  Equally as absurd is the idea that not a single record of that information still exists, even in electronic format.

In fact, at the April 17, 2014 hearing, the PBA itself did not claim that the documents did not exist, but rather that they were categorically privileged:

> MR. MCDONALD: . . . It strikes us that asking for underlying materials that were used in drafting these newspaper articles or ads or supporting the public position that was taken with respect to legislation, this really gets to the heart of privilege[….]
>
> THE COURT:  What they are asking for is – you've given them the ads or the position papers and so on.  As I understand it, they are asking you is there any documentation underlying those materials.  And if there is, that's fine.  It if is counsel's work product, that's one thing, but maybe it isn't.  I don't know what it is.  I don't know.
>
> Mr. MCDONALD: We'll give you a log on that, your Honor.

Ex. A at 11:23-12:20.  Yet, the PBA has not logged a single document regarding this topic, and it now claims that it cannot "identify" any documents called for by these requests.

For these reasons, Plaintiffs respectfully request that the Court order that the PBA and its counsel comply with their obligation to conduct a good faith search for responsive documents and provide written confirmation of the same.

### The PBA's Improper Privilege Log And Erroneous Assertion Of The Union Member Privilege

In addition to its failure to search for and produce documents as required by the Order, the PBA continues to improperly assert bases for privilege that are not recognized by the federal courts.  Specifically, the PBA's paltry privilege log withholds five out of seven documents at least partially on the basis of "union member privilege."  *See* Ex. H.  But Your Honor expressly stated at the April 17 hearing that "there is no union privilege recognized in the federal courts."  *See* Ex. A at 16:25-17:3.  Since that time, the PBA has not pointed to any new authority that supports its tired contention otherwise.

Unfortunately, the PBA's privilege log is so lacking in required information that Plaintiffs cannot ascertain whether the five documents logged as "union member privilege" are covered by any other recognized privilege.  The Court had predicted this potential problem, and therefore specifically ordered the PBA to include enough information in its privilege log to allow Plaintiffs to determine whether logged documents were transmitted directly from a police officer to counsel—and therefore potentially subject to the attorney-client privilege—or whether the

documents were transmitted to non-attorneys, such as a union delegate.  Ex. A at 15:16-23.  If the documents or information were first provided to and discussed with a union delegate without the participation of an attorney, then because there is no "union member privilege," there is no basis to withhold the material under the attorney-client or work product privileges.  Despite the Court's Order, the PBA's log fails to provide the information necessary to make this determination.  Plaintiffs therefore request that the Court again order the PBA to provide this necessary information, as laid out in Plaintiffs' Proposed Order (Ex. B).

Furthermore, notwithstanding the fact that that it is the PBA's burden to establish that a document is privileged, it has not demonstrated that the documents that it has withheld—affidavits available on the internet to be completed by officers—are privileged.

First, the PBA has failed to provide even the most basic information concerning the withheld affidavits, such the author and recipient of the affidavits.  It is a well-establish tenet of the Federal Rules, as well as the SDNY Local Rules, that parties must provide certain basic information in connection with purportedly privileged documents—including the authors and recipients of the documents—in order to allow opposing parties to test the assertion of privilege.  *See* SDNY Loc. Civ. R. 26.2 (The person asserting the privilege shall provide, in addition to other information, "the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other."); Fed. R. Civ. P. 45(e)(2)(A) (A person withholding information under a claim of privilege must "describe the nature of the withheld documents . . . in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.").  Here, the PBA has claimed that the author of each affidavit is "Police Officer John Doe," and the recipient of each affidavit is "PBA General Counsel's Office," such that Plaintiffs do not even have the name of a single individual associated with its claim of privilege.[3]

Furthermore, the PBA has not established that the affidavits are protected by the attorney-client privilege.  According to the PBA's privilege log, the affidavits contain "information communicated by officer for the purpose of obtaining legal advice."  Ex. H.  The log, however, provides no basis to support this claim.  The affidavit form that was freely available on the PBA's website:

- does not state that it should be completed for the purpose of obtaining legal advice;

- does not state that it is for the purpose of providing information to the officer's attorney;

- does not state that it should be provided to a lawyer upon its completion;

- does not state that the officer will be provided with legal advice;

---

[3] If the PBA has confidentiality concerns regarding the identity of the officers that completed the affidavits, it may designate the privilege log as Attorneys' Eyes Only.  But, it must provide this basic information.

- does not state that it is protected by any type of privilege; and

- does not state that the officer should not share the completed affidavit with anyone other than his or her attorney.

*See* Ex. K, PBA Affidavit Form.  The PBA has not claimed—much less established—that the affidavits were provided directly to an attorney by the officers, or that the officers even completed the affidavits for the purpose of obtaining legal advice.

Finally, the affidavits are not protected by the work product privilege.  There is no evidence that any of the affidavits are the work product of an attorney in anticipation of litigation.  There is also no evidence that any of the affidavits were filled out at the request of and under the supervision of an attorney in anticipation of litigation.

Plaintiffs therefore respectfully request that the PBA be ordered to produce the five affidavits corresponding to rows 1-5 of the PBA's privilege log.

**The PBA's Refusal To Produce Documents On The Purported Basis Of Confidentiality And Civil Rights Law Section 50-a**

The entirety of the PBA's production following the Order has consisted of certain documents responsive to request No. 8, which calls for the production of non-privileged documents related to a certain arbitration (Ex. E).  Even with regard to that request though, the PBA has provided information with regard to only *four* of the *thirty-seven* exhibits from the arbitration.  Of those four it has produced only two, claiming that the third and fourth exhibits are "confidential" and subject to Civil Rights Law Section 50-a, and that the fourth is also subject to a confidentiality order.[4]  *See* Ex. H at rows 6-7.

As an initial matter, there is no basis for the PBA to withhold documents as confidential when it may designate the documents not just confidential, but Attorneys' Eyes Only, under the protective orders in this case.  Further, Civil Rights Law Section 50-a applies only to certain types of government entities that are specifically listed therein.[5]  The PBA does not fall within any of those categories, and it therefore may not withhold documents under that provision.

---

[4] At this time Plaintiffs are not challenging the PBA's withholding of the document that is subject to the confidentiality order on the page produced as PBA000249, but Plaintiffs reserve their right to request the production of that document should circumstances change.

[5] Specifically, Civil Rights Law Section 50-a applies only to records that are "under the control of any police agency or department of the state or any political subdivision thereof including authorities or agencies maintaining police forces of individuals defined as police officers in section 1.20 of the criminal procedure law and such personnel records under the control of a sheriff's department or a department of correction of individuals employed as correction officers and such personnel records under the control of a paid fire department or force of individuals employed as firefighters or firefighter/paramedics and such personnel records under the control of the division of parole for individuals defined as peace officers pursuant to subdivisions twenty-three and twenty-three-a of section 2.10 of the criminal procedure law . . . ."

9

Plaintiffs therefore request that the Court order the PBA to produce all documents that it has withheld on the basis of confidentiality or Civil Rights Law Section 50-a.

**Conclusion**

For all of the foregoing reasons, Plaintiffs respectfully request that the Court endorse Plaintiffs' Proposed Order (Ex. B) upon submission of the papers concerning this motion.

Respectfully submitted,

/s/ Elinor Sutton

Elinor Sutton

Quinn Emanuel Urquhart & Sullivan, LLP
*Co-Lead Class Counsel for Plaintiffs*


cc:   Edward McDonald (via E-file and Email)
      Dechert LLP
      *Attorneys for the PBA*

      Qiana Smith-Williams (via E-file and Email)
      The City of New York Law Department
      *Attorneys for Defendants*