**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7325**

WRITER'S INTERNET ADDRESS
**elinorsutton@quinnemanuel.com**

September 10, 2014

**Via E-File & Hand Delivery**
Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Stinson v. City of New York*, **10-cv-4228 (RWS)**

Dear Judge Sweet:

    I write on behalf of Plaintiffs in the above-referenced class action in response to the Patrolmen's Benevolent Association of the City of New York's ("PBA"'s) September 5, 2014 opposition ("Opposition") to Plaintiffs' August 14, 2014 motion ("Motion") to enforce the Court's April 17, 2014 order requiring the PBA to produce documents ("Order"). Not only is the PBA violating this Court's Order through improper privilege claims and word games, it is also refusing to provide any details confirming that it even conducted a reasonable search for documents.

    The PBA's contention that it has been unduly burdened by Plaintiffs' August 6, 2013 subpoena ("Subpoena") – in response to which it has produced *only 292 pages and logged only seven documents in over a year* – is preposterous on its face. As the PBA is well aware, this is a federal civil rights action concerning the constitutional rights of more than 700,000 individuals. Despite the gravity of this case, and the fact that this Court has ordered it to produce documents, the PBA has failed to comply with its obligations and instead vaguely claims that it has been unable to "identify" documents responsive to the majority of the requests. But the PBA will not provide a *single detail* regarding its search for these documents – either to the Court or to Plaintiffs – and will not even confirm if it has run an electronic search. Moreover, the PBA's repeated statements that it cannot produce the responsive documents because to do so would be overly burdensome only fuels Plaintiffs' fear that the PBA is withholding a substantial amount of

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG

key evidence related to this matter.  Plaintiffs respectfully request that this Court put an end to the PBA's games and sign Plaintiff's Proposed Order, attached as Exhibit B to the Motion.[1]

**The PBA's Failure To Search For Documents That The Court Ordered Must Be Produced**

The PBA does not dispute that on April 17, 2014, the Court ordered it to produce or log as privileged a number of categories of documents.  Rather, the PBA asserts that it cannot "identify" such documents – a claim that is highly suspicious given the PBA's paltry and glaringly deficient production, as well as its refusal to provide any information about how it attempted to "identify" responsive documents.

The entirety of the PBA's production in this action is only 292 pages.  Since the Court's Order, the PBA has produced only 167 pages – all of which relate to only one of the fifteen requests for production included in the Order – and logged only seven documents.[2]  Not surprisingly, as explained in Plaintiffs' Motion, there are entire categories of documents – documents that the PBA does not dispute that it was ordered to produce – missing from this small production.  For example:

- While the PBA does not dispute that it was ordered to produce, at the very least, the "data and research"[3] the PBA relied on in choosing to support the Anti-Quota Bill, it has not produced or logged a single such document.

- While the PBA does not dispute that it was ordered to produce, at the very least, the "data and research" underlying certain PBA memoranda, advertisements, and articles, it has not produced or logged any such data or research.

- While the PBA does not dispute that it was ordered to produce all materials in its possession related to a particular arbitration, it has produced or logged only *four* of the *thirty-seven* exhibits from that arbitration.

- While the PBA does not dispute that it was ordered to produce all grievances filed by the PBA related to summons quotas, along with, at the very least, all materials that it submitted to the City of New York ("City") in connection with such grievances – and indeed repeatedly boasts that it has done so – the PBA has failed to produce an entire grievance.[4]

---

[1]   As used herein, Exhibits A through K shall refer to the exhibits attached to Plaintiffs' Motion, while Exhibits L through Q shall refer to the exhibits attached hereto.

[2]   As these numbers make clear, this is in no way a case of a non-party being unduly burdened by discovery requests.

[3]   The PBA has improperly attempted to narrow certain requests to the "data and research" the PBA relied upon, as opposed to all of the information the PBA relied upon.  *See infra* at 8.

[4]   On August 21, 2014, Plaintiffs notified the PBA that it had a reasonable basis to believe that a relevant grievance had been filed by the PBA on behalf of P.O. Mary Cole (Tax #916089).  Ex. L,
    (footnote continued)

2

For each of these categories, the PBA offers no factual explanation as to why it could not locate documents responsive to the requests.

The state of the PBA's production raises obvious red flags about the process it used to locate responsive documents. But rather than addressing Plaintiffs' concerns, the PBA refuses to disclose if it has even searched its electronic files or email systems, much less the parameters it utilized if any searches were conducted. Plaintiffs' concerns are further heightened by the apparent lack of involvement by the PBA's counsel in the document search and collection process, especially after the PBA's counsel disclosed during a meet and confer that he did not know if the PBA had searched and reviewed emails.

Tellingly, in its Opposition, the PBA provides no additional insight as to the steps it took to identify responsive documents. And while the PBA quotes a case that sets forth a responding party's duty to "develop[] a reasonably comprehensive search strategy," which "might, for example, include identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation," (Opposition at 9, citation omitted) *the PBA does not claim to have actually developed such a strategy, identified any key employees, or reviewed any of their likely relevant files*. Instead, the PBA conclusorily claims, without any elaboration, that it has "made good faith, diligent efforts to identify the requested materials." The only conclusion Plaintiffs can draw from the PBA's blatant avoidance of the details of its search is that it has not fulfilled its discovery obligations.

Contrary to the PBA's suggestion, Plaintiffs are not demanding that the PBA "examine every scrap of paper in its potentially voluminous files." Opposition at 9 (citation omitted). Plaintiffs seek only to hold the PBA and its counsel accountable for their duty, under the Federal Rules of Civil Procedure, to conduct a thorough and reasonable search for responsive documents. Plaintiffs thus respectfully reiterate their request that the Court order the PBA and its counsel to comply with their obligation to conduct a thorough and reasonable search for responsive documents and to provide written confirmation of the same, as set forth in Exhibit B.

**The PBA's Failure To Produce, Or Adequately Log As Privileged, Responsive Documents Based On Its Unreasonably Narrow Interpretation Of The Court's Order**

Apart from the PBA's apparent failure to search for documents that the Court ordered should be produced, there are three additional disputes between the parties arising from the PBA's unreasonably narrow interpretation of the scope of the Order.

*1.    Affidavits*

The PBA has failed to establish that the five logged Summons Quota Affidavits completed by police officers and submitted to the PBA ("Affidavits," *see* Ex. K) are, in fact, protected by any recognizable privilege. The PBA's reasoning that because "these Summons

---

Plaintiffs' Aug. 21, 2014 Email to the PBA. The PBA has not denied the existence of the Cole grievance, but instead has simply not responded to Plaintiffs' email.

Quota Affidavits were received by the PBA General Counsel's Office, [they are] therefore . . . clearly attorney-client communications protected by privilege" is misplaced.  Documents do not become protected by the attorney-client privilege by merely being passed from an actual or potential client to counsel.  If they did, for example, every document that is collected by counsel from a client in connection with discovery could be withheld as privileged, and the rules of discovery would become moot.

First, although the PBA claims that these Affidavits "were prepared for the purpose of obtaining a legal determination about whether or not to file a grievance," the PBA has not provided any factual evidence supporting this conclusory statement.  There is no evidence of a relationship between the completion of an Affidavit and the filing of a grievance.  To the contrary, based on the PBA's own production and statements, not a single one of the officers that filed a grievance through the PBA alleging an illegal summons quota ("Grievance Officers") completed an Affidavit.  At the same time, the only five Affidavits allegedly in the possession of the PBA were completed by officers that did *not* file a grievance.  *See* Opposition at 6 (stating that the affiants' names are not relevant because they did not file grievances and the affiants' names must be protected from disclosure to the City).

Moreover, the PBA's own website never states that the Affidavit should be filled out for the purpose of seeking legal advice, or to start the process of filing a grievance.  *See* Ex. M, PBA website at http://www.nycpba.org/gc/forms/summons_affidavit.html (September 10, 2004). Instead, it provides officers with the option to choose either "Filing a Grievance," and/or "Summons Quota."  Ex. N, PBA website at http://www.nycpba.org/gc/forms.html (September 10, 2014).  The link to the Affidavit form on the PBA's website is accompanied by the following request for information that makes no reference to grievances:  "If the Department has imposed a summons quota upon you and subjected you to transfer or other form of penalty because of your failure to meet quota requirements, please complete and print out the Summons Quota Affidavit and forward to your Delegate or Trustee."[5]  The summons quota affidavit form is also linked on another page concerning summons quotas specifically, while a separate page concerning grievances provides a link to the form for initiating a grievance.  The form to file a grievance requests different information than the Affidavit, including a description of the grievance, the name of the supervisor, the violation and remedy sought and documentary evidence attached. Ex. O, PBA website at http://www.nycpba.org/gc/forms/grievance.pdf (September 10, 2014). The example list of documentary evidence to be attached to the form to file a grievance tellingly does not include the Affidavit.  *Id.*  The website does not link the two, nor ever state or suggest that it is necessary to complete both forms to file a grievance or obtain legal advice regarding filing a grievance.  This disconnect between the Affidavits and grievance forms completely discredits the PBA's assertion that the purpose of the Affidavits is for officers to obtain legal advice concerning filing a grievance.

---

[5] Plaintiffs have no way of knowing why the PBA seeks this information from police officers or how the PBA uses this information.  If the PBA communicated this information to third parties, such as legislative bodies in connection with anti-quota initiatives, for example, this would further defeat the PBA's claim of privilege.

Second, the PBA has not alleged – much less established – that the affiants directly provided the Affidavits to counsel, such that they can be considered attorney-client communications, and the evidence gathered to date suggests just the opposite. On its face, the affidavit form is merely a vehicle for police officers to communicate facts *to their union*, and it does not state that it should be submitted to a lawyer. Ex. K. The PBA website similarly directs officers to provide the completed Affidavits directly to their "Delegate or Trustee," and *not to PBA counsel*. And testimony confirms that affiants follow this directed procedure: a PBA delegate and Grievance Officer recently confirmed that, in his experience, these affidavits are not provided directly to PBA counsel but rather are given to a PBA delegate who then gives them to a PBA trustee. *See* Ex. P, Excerpt of Transcript of Aug. 26, 2014 Deposition of Officer Christian Falconi at 135:17-139:13. Like the PBA delegates, the PBA trustees are not lawyers (*id.*), such that the any material the officer submitted goes through at least two rounds of transfers and communications before reaching a lawyer. Because there is no union member privilege, no privilege attaches to documents provided to a PBA delegate or a PBA trustee, nor does any privilege attach to communications between a PBA delegate and an officer, and a PBA delegate and a PBA trustee. The Grievance Officers who have been deposed, as well as their independent counsel, have confirmed this understanding by testifying about the details of their conversations with their PBA delegates, as opposed to claiming that such communications are protected by a privilege.

Third, the PBA has failed to give a sound reason as to why it should not be required to provide the names of the affiants in accordance with applicable federal and local rules, so that Plaintiffs may assess the PBA's privilege claim.[6] If the PBA is concerned that disclosing the names would result in retaliatory harm to those police officers, the PBA may designate them Attorneys' Eyes Only ("AEO"), just as the City has been ordered to do with regard to certain sensitive information.[7] This will ensure that the identity of the officers cannot be disclosed to the NYPD, or even to counsel employed by the NYPD.[8] Moreover, any public policy rationale there may be for withholding the names should not trump the "overriding [public] policy" in favor of disclosing all relevant information "in the interest of promoting the search for truth" in a federal civil rights action, especially when the names may be protected through an AEO designation.

---

[6] Having the names of the authors would allow Plaintiffs to, at the very least, test the PBA's privilege claim by asking the affiants via discovery for information surrounding their preparation of the Affidavits and submission of the Affidavits to the PBA.

[7] Likewise, there is no basis for the PBA to withhold the arbitration exhibit (No. 3) it has logged as confidential. Not only has the PBA failed to even address the fact that Civil Rights Law Section 50-a does not apply to records in its control—and especially to records that are subject to a Subpoena and Court Order—to the extent it is concerned about the confidentiality of the document, it may designate it AEO.

[8] While meeting and conferring with Plaintiffs regarding materials designated AEO, Corporation Counsel for the City has confirmed that is willing to sign a stipulation and proposed order containing a provision that it will not disclose materials Plaintiffs designate AEO to counsel employed by the NYPD. Plaintiffs have no reason to believe that the City would not make the same agreement with regard to materials designated AEO by the PBA, and in any event the Court could order the same.

5

*Cruz v. Kennedy*, 97 Civ. 4001, 1997 WL 839483, at *2 (S.D.N.Y. Dec. 19, 1997) (internal quotation marks omitted).

Fourth, there is no basis for the PBA's assertion that producing the Affidavits – or even just providing the names of the authors – would be "cumulative" and "burdensome." Plaintiffs have alleged that the NYPD is utilizing an illegal quota that has resulted in officers violating the constitutional rights of more than 700,000 citizens. The Affidavits contain sworn statements by five police officers that the City is indeed implementing an illegal quota. These sworn statements are clearly critical documentary evidence for Plaintiffs' case, and their authors could potentially be important witnesses for Plaintiffs as well. Plaintiffs are not yet in possession of the Affidavits and have no other way of obtaining them, because they do not know the identity of the officers that completed the Affidavits. The Affidavits are, in total, five pages. The PBA has presumably already located those five pages in order to review them and log them.

Finally, it has come to Plaintiffs attention that there is more than one version of the Summons Quota Affidavit. *See* Ex. K; Ex. Q, PBA website at http://www.nycpba.org/gc/forms/summons_affidavit.pdf (September 10, 2014). Based on the Court's Order and Plaintiffs' requests for production, Plaintiffs understand that the PBA is required to produce all Summons Quota Affidavits, regardless of any changes to the form of the Affidavit, or any additional information requested in the Affidavit. Plaintiffs request that the PBA confirm the same.

    *2.    Grievances*

As explained in Plaintiffs' Motion, at the April 17, 2014 hearing Plaintiffs specifically requested clarification – and received it – that the Court was ordering the PBA to produce material submitted to the PBA by police officers in connection with the "decision-making process" as to whether to file a quota-related grievance and not – as the PBA now claims – only materials that were submitted by the PBA to the City. The PBA's interpretation of the Court's Order is inconsistent with both the record and the requests for production that Plaintiffs moved to compel compliance with, which were drafted to capture information submitted by police officers to the PBA that demonstrates the existence of quota policies.

To date, the PBA has failed to produce a single grievance form submitted by any of the Grievance Officers. According to the PBA's website, police officers complete and submit grievance forms to the PBA, attaching documentary evidence, in order to initiate a grievance. There is evidence that at least one Grievance Officer did so. In the August 26, 2014 deposition of P.O. Christian Falconi, Officer Falconi testified that he completed and submitted to the PBA a grievance form with information concerning summons quotas. Ex. P at 135:17-139:13. This grievance form has not been produced or logged by the PBA.

With regard to evidence submitted by the officer relating to the grievance, the PBA's own website states, "Documentary evidence is invaluable for any successful grievance. Therefore, please attach all documentary evidence, (i.e. memo book entries, copies of roll calls, department memos, overtime slips, etc.) [to your grievance form]." Ex. R, PBA website at http://www.nycpba.org/gc/forms/grievances.html (September 10, 2014). Thus, the PBA itself

has admitted the critical nature of the evidence submitted to the PBA with regard to grievances. In addition, none of the examples of documentary evidence that the PBA provides on their website – "memo book, overtime slip, roll call, department memos, etc." – would be privileged. *Id;* Ex. O.[9]  This type of evidence goes directly to the heart of Plaintiffs' case.  In a civil rights case of this magnitude, the PBA must be required to disclose all such evidence that sheds light on the existence of an illegal quota within the NYPD, regardless of whether or not the PBA or the officer ultimately decided to file the grievance, and regardless of whether the materials were submitted to the City.

      Further, the PBA's blanket claim of attorney-client privilege and work-product protection for all documents that police officers provided to the PBA in connection with the PBA's process for determining whether to file a grievance is baseless.[10]  The PBA has not logged as privileged any such documents, nor has it provided any information necessary to establish that all such documents contain information that was communicated by the officers to counsel for the purpose of obtaining legal advice.  Certainly, for example, an internal NYPD memorandum evidencing an illegal quota would not become privileged because an officer provided the document to the PBA.  The same would be true for recordings of officers or supervisors, officers' performance evaluations, and a myriad of other types of information that officers may have provided to the PBA.

      Finally, to the extent that the PBA has refused to produce or log these documents because it would be "too burdensome," it has not adequately demonstrated that burden.  These documents are undeniably relevant to Plaintiffs' claims, and thus the PBA bears the burden of showing why it cannot produce them.  *See Schoolcraft v. City of N.Y.*, No. 10 Civ. 6005 (RWS), 2012 WL 2161596, at *2 (S.D.N.Y. June 14, 2012) (Sweet, J.), *reconsideration denied*, No. 10 Civ. 6005 (RWS), 2012 WL 2958176 (S.D.N.Y. July 20, 2012) ("Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is overbroad, duplicative, or unduly burdensome.").  It has not done so, especially given that i) it has not provided a single fact regarding the burden related to producing these documents and ii) this is a federal civil rights action, in which there is an overriding policy in favor of full, truth-seeking disclosure, *see Cruz*, 1997 WL 839483 at *2.

      3.     *Materials Related to Memoranda, Advertisements, Articles, and the PBA's Position on the Anti-Quota Bill*

     By taking out of context snippets of the April 17, 2014 hearing transcript that characterize Plaintiffs' document requests, rather than the language of the requests themselves,

---

[9] It is Plaintiffs understanding that other types of documentary evidence that may be submitted with grievance forms includes recordings of supervisors instructing officers to issue a certain number summonses, performance evaluations indicating the penalization of officers for failing to meet a summons quota, or internal NYPD documents referencing a summons quota.

[10] Likewise, the PBA's claim that these documents are protected by the "union member privilege," which this Court has indicated is not recognized in federal courts, is without merit.

the PBA is improperly and unilaterally narrowing more than half of Plaintiffs' requests. Specifically, the PBA claims that it is only required to produce "data and research" relied on in drafting certain memoranda, advertisements, and articles, when Plaintiffs clearly requested "any data, information, or research considered or relied upon in drafting the content" of those documents. It similarly claims that it is only required to produce "data and research" that it relied upon in forming its position with regard to Senate Bill S2956A (the Anti-Quota Bill), when Plaintiffs clearly requested "any data, information, or research considered or relied upon in forming that position." While this may seem like a distinction without a difference, the PBA has been clear in meet and confers that it is limiting its production based on this self-serving limitation. Indeed, if the PBA is not limiting its production based on this limitation, then it should confirm that it is indeed producing all "data, information, or research considered or relied upon" in drafting the memoranda, advertisements, or articles, and in forming its position with respect to the Anti-Quota Bill.

**Plaintiffs Are Prejudiced By The PBA's Continuing Violations Of Its Discovery Obligations**

As Plaintiffs explained in their Motion, the documents at issue are relevant to ongoing discovery, including but not limited to the depositions of multiple Grievance Officers. For this reason, Plaintiffs first sought these documents from the PBA over a year ago, have since met and conferred with the PBA regarding its production countless times, and have now twice sought the Court's intervention in obtaining these documents from the PBA. In light of the impending close of fact discovery in this matter, and the number of relevant depositions that need to be conducted before that time, Plaintiffs urgently require the documents at issue.

* * * *

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' August 14, 2014 Motion upon submission of the papers.

Respectfully submitted,

/s/ Elinor Sutton

Elinor Sutton
Quinn Emanuel Urquhart & Sullivan, LLP
*Co-Lead Class Counsel for Plaintiffs*


cc:   Edward McDonald (via E-file and Email)
      Dechert LLP
      *Attorneys for the PBA*

      Qiana Smith-Williams (via E-file and Email)
      The City of New York Law Department
      *Attorneys for Defendants*