**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7325**

WRITER'S INTERNET ADDRESS
**elinorsutton@quinnemanuel.com**

October 17, 2014

<u>VIA FAX</u>
Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    ***Stinson v. City of New York*, 10-cv-4228 (RWS)**

Dear Judge Sweet:

      I write on behalf of the Plaintiff class in response to Defendants' October 8 letter (the "October 8 Letter") regarding their withholding of the New York City Police Department Briefing Book for fiscal year 2013 and Topics of the City Council Book (together, the "Books") based on claims of privilege and relevancy.  The Books, produced to Plaintiffs on September 16, 2014, have been the subject of a longstanding dispute between the parties.  Although Plaintiffs have not reviewed the Books since Defendants clawed them back, based on Defendants' inability to provide a proper privilege justification (notwithstanding the opportunity to provide declarations, a revised privilege log, and a brief on the issue), Plaintiffs' recollection of the contents of the Books, as well as Plaintiffs' examination of an identical copy of the Books that Defendants produced with a small portion unredacted (which Defendants have not clawed back, despite acknowledgement by Defendants of its production), Plaintiffs have reason to believe that the Books are not, as Defendants claim, privileged, especially not in their entirety.  Nor should Defendants be permitted to withhold the Books on relevancy grounds.  Plaintiffs thus respectfully request that the Court order Defendants to turn over the portions of the Books they are withholding on relevancy grounds and, pursuant to Rule 26(b)(5)(B), review the Books *in camera* and order Defendants to produce the Books (or any portions thereof) to the extent they are not properly withheld as privileged.

## DEFENDANTS ARE IMPROPERLY WITHHOLDING INFORMATION ON RELEVANCY GROUNDS

      Despite the admitted relevance of the Books as a whole, Defendants acknowledge that they are withholding information contained therein on the basis of relevancy.  *See*

**quinn emanuel urquhart & sullivan, llp**
LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG

Defendants' Privilege Log (Ex. B to the October 8 Letter).  Such refusal to disclose information on these grounds is plainly improper.  *See, e.g.*, *In re State St. Bank and Trust Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. April 8, 2009) (ordering party to cease and desist from redacting documents unilaterally on relevance grounds); *Howell v. City of New York*, 2007 WL 2815738, at *2 (E.D.N.Y. Sept. 25, 2007) ("It is not the practice of this court to permit parties to selectively excise from otherwise discoverable documents those portions that they deem not to be relevant).  This is particularly so where, as here, there is a protective order in place.  *See, e.g.*, *In re State St.*, 2009 WL 1026013, at *1 (holding that "the stipulated protective order makes it unnecessary to redact any portion of a document on the ground that the portion is non-responsive and irrelevant," and directing parties not to make such redactions); *Strategic Growth Int'l Inc. v. RemoteMDX Inc.*, 2007 WL 3341522, at *3 (S.D.N.Y. Nov. 9, 2007) (ordering production of previously redacted non-privileged information in meeting minutes because, "[t]o the extent that [defendant] is concerned about the sensitive nature of the redacted information, those concerns should be allayed by the . . . Stipulated Protective Order").

Moreover, Defendants' assertion that the Books are "overwhelmingly irrelevant" (October 8 Letter at 7) is implausible.  Despite having allegedly reviewed "hundreds of thousands" of electronic documents, Defendants have only produced approximately 211 to date.  *See* Defendants' Memorandum of Law in Support of Their Motion for an Order to Show Cause dated September 22, 2014 at 1.  Based on these numbers, Defendants have clearly chosen to take a *very narrow* view of relevancy.  Even under this limited view of relevancy, however, the City made two independent decisions (the Books were produced in two unrelated locations) that the Books—which constitute 30% (1,344 pages of 4,358 pages total) of the City's total electronic document production to date—are relevant.

In addition, there is clear evidence that the City is withholding relevant and contextual information based on relevancy, and not privilege.  For example, Defendants produced to Plaintiffs an identical copy of the Books, which were entirely redacted save for a single bullet point (the "Unredacted Bullet Point," produced at Bates Stamp page NYC-E0001313).  *See* Ex. D, discussed *infra* at 5.  That bullet point corresponds to the information on Bates Stamp page NYC_E0000629 of the unredacted document presented to Your Honor for *in camera* review.  Based on its production (which the City has acknowledged but has not clawed back), it is clear that the City does not view the Unredacted Bullet Point as privileged.  Plaintiffs believe that the text surrounding the Unredacted Bullet Point is also not privileged, and that if the Court turns to Bates Stamp page NYC_E0000629 of the unredacted document provided for *in camera* review, it will see a clear example of a situation where Defendants have picked and chosen bullet pointed information to withhold not because of privilege, but rather because of their own unilateral view that only *portions* of the document are relevant.

Furthermore, publicly available documents regarding the hearing to which the Books pertain indicate that relevant information was discussed.  For example, at the hearing Commissioner Raymond Kelly expressly discussed "quotas" and "goals" for officers in response to a question from a council member.  *See* Ex. B at 101-04.  Commissioner Kelly also noted in his statement at the hearing that "[e]very year it gets harder [for the NYPD] to beat our own records" on crime (*see* Ex. D at 1), demonstrating the focus on numbers at the executive level which Plaintiffs contend contributes to the implementation of quotas.  These statements

demonstrate that relevant material was discussed by Commissioner Kelly at the hearing, including material that may weigh on Plaintiffs' *Monell* claim such as the allocations of resources, training, and disciplinary matters. Plaintiffs are therefore entitled to the Books as they were used to prepare the Commissioner for this testimony.

## DEFENDANTS' CLAIMS OF ATTORNEY-CLIENT AND WORK PRODUCT PRIVILEGE ARE IMPROPER

Defendants fail to establish that the Books qualify as attorney-client communications. It is well settled that the attorney-client privilege must be narrowly construed. *Walsh v. Northrop Grumman Corp.*, 165 F.R.D. 16, 18 (E.D.N.Y. 1996) (citing *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir. 1992) (the Second "[C]ircuit remains committed to the narrowest application of the [attorney-client] privilege such that it protects only legal advice that discloses confidential information given to the lawyer by the client."). Additionally, the "heavy burden" remains squarely on Defendants to establish their privilege claims. *See S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 158 (S.D.N.Y. 2014); *see also In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007). Defendants fail to meet this heavy burden.

*First*, Defendants fail to establish that the Books qualify as attorney-client communications. Simply having an attorney involved in a communication does not cloak it in privilege. *Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings, Inc.*, 2014 WL 1327952, at *1 (S.D.N.Y. Apr. 3, 2014) ("The mere fact that attorneys are involved in a communication does not cloak it with privilege."). Rather, the attorney-client privilege only "protects from disclosure communications between a client and a lawyer, where the lawyer is acting in a professional capacity and the client has communicated information to the lawyer in confidence *for the purpose of seeking legal advice*." *In re Grand Jury Subpoenas dated March 9, 2001*, 179 F. Supp. 2d 270, 283 (S.D.N.Y. 2001) (emphasis added).

Your Honor correctly pointed out the need for more than simply attorney "involvement" to establish the attorney-client privilege at the October 1, 2014 hearing. After counsel for Defendants represented to Your Honor that "attorney counsel was involved in the actual preparation of the document," Your Honor correctly pointed out that "'involved' is not quite the word that works." October 1, 2014 Hearing Transcript at 17:18-21.

Defendants had the opportunity to correct this deficiency in their October 8 Letter and the supporting declaration of Assistant Deputy Commissioner for Legislative Affairs Susan Petito ("Petito Declaration"). However, the October 8 Letter and accompanying declaration are strikingly devoid of any assertion that Assistant Deputy Commissioner Petito—who did not prepare the Books but only "helped shape information contained in" a portion of the Books (*id.* at 18)—either provided legal advice that was incorporated into the Books or that the content of the Books reflect privileged legal communications she had with anyone. The Petito Declaration takes astonishing linguistic strides in an effort to describe Assistant Deputy Commissioner Petito's role in the preparation of the Books, asserting that she was "familiar," "played an integral role," was "involved," and "helped shape" the Books. Petito Declaration at ¶¶ 4, 7, 18. These descriptions are so vague as to be meaningless and thus do not establish the privileged

nature of the Books.  Even where the Petito Declaration attempts to provide more specific information regarding her involvement in the Books, it solely demonstrates her tangential role in preparing the Books.[1]  Notably, Assistant Deputy Commissioner Petito *never states that she provided legal advice* in the preparation of the Books, never states that attorney-client communications are reflected in the Books, and does not assert that the entirety of the Books are devoted to legal issues.  Defendants' silence as to the presence of legal advice in the Books speaks volumes.  The Books cannot be withheld as attorney-client privileged as Defendants do not adequately establish that that they reflect legal advice from or correspondence with Assistant Deputy Commissioner Petito.

> *Second*, even if the Books involve correspondence from an attorney, much of the correspondence is non-legal and thus not protected by the privilege.  "The mere fact that attorneys are involved in a communication does not cloak it with privilege."  *Fed. Hous. Fin. Agency*, 2014 WL 1327952, at *1.  The attorney-client privilege "shields only confidential communications made between a client and his attorney for the purpose of facilitating the rendition of legal advice or services and does not protect communications that relate primarily to [non-legal] matters."  *See MASTR Adjustable Rate Mortgs. Trust 2006-OOA2, et al. v. UBS Real Estate Secs. Inc.*, 2013 WL 4860583, at *2 (S.D.N.Y. Sept. 12, 2013).  In the governmental context, "[c]ommunications about non-legal issues such as public relations, the solicitation of prominent individuals[,]…strategies for persuading [government officials,]…[and] lobbying efforts are not privileged (or protected by the work product doctrine)" even if these communications are between lawyers.  *In re Grand Jury Subpoenas dated March 9, 2001*, 179 F. Supp. 2d at 291.  Moreover, while the attorney-client privilege protects certain communications between privileged persons, it does not permit a party to resist disclosure of the *facts* underlying those communications.  *See Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981); *see also Women's InterArt Ctr., Inc. v. N.Y.C. Econ. Dev.*, 223 F.R.D. 156, 160 (S.D.N.Y. 2004) (ordering disclosure of factual information, noting that the attorney-client privilege does not protect "underlying facts" to privileged communications).

---

[1]  The remaining portions of the Petito Declaration reflect Assistant Deputy Commissioner Petito:

   1) preparing—along with other high-ranking, and presumably non-legal staff members—for information gathering prior to the drafting of the books ("formulated questions that needed to be answered for the Books' preparation" (*id.* ¶ 8));

   2) engaging in ministerial tasks ("arrange[] for [additional] information to be gathered" (*id.* ¶ 13));

   3) reviewing information others gathered ("personally review all of the summarize [sic.] prepared by OMAP," (*id.* ¶ 9)); and

   4) editing the books to make sure certain information is not included ("edit the Briefing Book…to frame the best possible response for the Commissioner, keeping in mind what information is for public disclosure and what is not" (*id.* ¶ 10)).

Nowhere does she claim that these tasks entail legal analysis.

Based on their limited review of the Books, Plaintiffs recall that much of the content therein was factual in nature and thus not protected.  And based on the Petito Declaration, much of the role of the attorneys seems to be centered around non-protectable, non-legal correspondence regarding public relations or persuading government officials to support certain legislation rather than the provision of legal advice.  *See* Petito Declaration ¶ 4 ("I draft and review proposed legislation for the NYPD, confer with the Mayor's legislative representatives in response to legislative initiatives and inquiries, and prepare members of the NYPD for hearings before legislative bodies."), ¶ 7 ("Because of my unique role and experience as NYPD counsel dealing primarily with legislative issues, I have knowledge of what the City Council members are interested in, what has transpired at prior hearings, and I am aware of the topics of communications amongst the Commissioner and other high ranking members of the NYPD and members of City Council as well."), ¶ 10 ("I also edit the Briefing Book…to frame the best possible responses for the Commissioner….").

One clear and concrete example of Defendants' improper redaction of purely factual and non-legal material can be found on Bates Stamp page NYC_E0000629 of the Books.  In addition to the Books at issue, Defendants produced to Plaintiffs an identical copy of the Books, which were entirely redacted save for the Unredacted Bullet Point.  *See* Ex. D.  The Unredacted Bullet Point—which has been withheld as privileged at Bates Stamp page NYC_E0000629 of the Books—merely summarizes certain *facts* surrounding an NYPD officer's conviction for official misconduct.  Defendants' decision to withhold the Unredacted Bullet Point in the Books exemplifies the impropriety of their redactions.  A description of an officer's actions without any indicia of legal analysis is plainly the type of factual information which cannot be withheld under a claim of privilege.[2]

Plaintiffs believe that the Books contain significant non-legal information beyond

█████████████████████████████████████████████████████████████████████████

NYPD officers.  Additionally, the transcript of the hearing referenced in the Petito Declaration and related summaries of the same—all of which are publically available—demonstrate that the hearing for which the Books were prepared touched on a tremendous amount of non-legal material.  *See* Ex. B and *supra* at 2.  Thus, any portions of the Books containing such non-legal material must be produced.

---

[2]   Through this selective disclosure, Defendants have also waived the attorney-client, work product, deliberative process, and law enforcement privileges.  *Schiller v. City of New York*, 2007 WL 136149, at *7 (S.D.N.Y. Jan. 19, 2007) ("If a party voluntarily discloses a privileged document, it waives the privilege for that document and cannot later seek to keep the document confidential." ); *see also Kitevski v. City of New York*, 2006 WL 680527, at *4 (S.D.N.Y. March 16, 2006) (law enforcement privilege); *Nat'l Council of La Raza v. Department of Justice*, 339 F. Supp. 2d 572, 585 (S.D.N.Y. 2004) (deliberative process privilege).

Finally, although Defendants do not seriously contend in the October 8 Letter that the Books are protected by the work-product privilege, they do list the privilege as an entry on their log. *See* Ex. B to the October 8 Letter. To qualify for work-product protection, "the material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. at 159. A document is prepared "in anticipation of litigation," however, if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (emphasis in original). In her declaration, Assistant Deputy Commissioner Petito explains that the Books are created not because of litigation, but rather "to prepare the Police Commissioner for his testimony before the New York City Council each year," Petito Decl. ¶ 4. The work-product privilege "does not apply to [m]aterials assembled in ordinary course of business, or pursuant to public requirements unrelated to litigation." *Nat'l Cong. for Puerto Rican Rights v. City of New York*, 194 F.R.D. 105, 109 (S.D.N.Y. 2000) (citation and internal quotation marks omitted) (holding that documents were "not prepared 'because of' pending or anticipated litigation, but merely to respond to the City Council's request for information."). Nor does it apply to a summary of facts regarding a litigation. *See supra* at 3-4. Thus, Defendants' assertion of work product protection must be rejected.

## THE DELIBERATIVE PROCESS PRIVILEGE DOES NOT APPLY

The deliberative process privilege will only apply to the Books if it is "(1) an inter-agency or intra-agency document; (2) predecisional; and (3) deliberative." *Tigue v. U.S. Dep't of Justice*, 312 F.3d 70, 76 (2d Cir. 2002). Significantly, "[a]s with the attorney-client privilege, it is the burden of the party raising the deliberative process privilege to demonstrate its applicability." *Nextg Networks, of NY, Inc. v. City of New York*, 2005 WL 857433, at *3 (S.D.N.Y. Apr. 13, 2005). Defendants' bald assertions of the deliberative process as pertaining to the Books fail on numerous ground.

*First*, the deliberative process privilege is "inappropriate for use in civil rights cases against police departments" *Puerto Rican Rights*, 194 F.R.D. at 95 (quoting *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995)). Indeed, "decisions made by local law enforcement units …. are simply not the type of important public policies whose creation the privilege was designed to protect." *Morrissey v. City of New York*, 171 F.R.D. 85, 89 (S.D.N.Y. 1997). In light of this, Courts have repeatedly rejected attempts—including by the NYPD—to assert the deliberative process privilege over a wide array of police documents, including briefing documents. *Puerto Rican Rights*, 194 F.R.D. at 97 (privilege does not apply to NYPD files including mayor's briefing documents, disciplinary records, memorandum regarding evaluation of specific unit and proposals to change same, and statistical information regarding personnel and arrests); *MacNamara v. City of New York*, 249 F.R.D. 70, 85 (S.D.N.Y. 2008) (privilege does not apply to NYPD meeting agendas and summaries, e-mails regarding talking points, and e-mails regarding NYPD drills and operational procedures); *Morrissey*, 171 F.R.D. at 88-89 (privilege does not apply to NYPD files reflecting information from the Civilian Complaint Review Board and Internal Affairs Department); *Mercado v. Div. of New York State*

*Police*, 989 F. Supp. 521, 523 n.1 (S.D.N.Y. 1998) (privilege does not apply to officer disciplinary records).

Most notably, attempts by the NYPD to assert the deliberative process privilege over documents prepared to assist high ranking officials with certain testimony—like the Books—have been expressly rejected.  In *Puerto Rican Rights*, the court rejected the City's attempt to withhold "briefing documents selected and compiled by the Office of the Criminal Justice Coordinator in preparation for Mayor Giuliani's testimony before the U.S. Civil Rights Commission" on the ground of deliberative process.  194 F.R.D. at 97.  In so holding, the Court noted that "[a]lthough the Mayor's staff did decide what materials to include in the Mayor's briefing, this is not the type of decision-making protected by the deliberative process privilege [and] [f]urthermore, defendants themselves state that the briefing materials in issue contained factual information." *Id.*  As Defendants here have provided no basis to differentiate the content in the Books from this type of material, the deliberative process privilege does not apply.[3]

*Second*, Defendants cannot claim deliberative process privilege on any backward-looking portion of the Books.  "The most basic requirement of the [deliberative process] privilege is that a document be *antecedent to the adoption of an agency policy*." *Nat'l Day Laborer Org. Network v. Immig. & Cust. Enforcement*, 811 F. Supp. 2d 713, 742 (S.D.N.Y. 2011) (emphasis added).  The privilege will not apply to documents which simply summarize prior decisions by a governmental agency, or even those that review or reconsider a previous policy. *See Schiller*, 2007 WL 136149, at *9 (rejecting privilege claim over document that "seem[ed] to outline decisions that had been made previously," regardless of the "fact that the NYPD may have subsequently reviewed and reconsidered those decisions"); *see also A. Michael's Piano v. Fed. Trade Comm'n*, 18 F.3d 138, 147 (2d Cir. 1994) (document not predecisional if it is a "postdecisional memoranda setting forth the reasons for an agency

Books from disclosure.

---

[3]    Defendants only support for their assertion that "this type of briefing in advance of legislative testimony has been previously found to be protected pursuant to the deliberative process" (October 8 Letter at 6) are three inapposite decisions from the District of Columbia. Each of these decisions concern Freedom Of Information Act ("FOIA") requests made of federal government agencies—outside of the private litigation context—and implicate FOIA Exemption 5, which was enacted by Congress "to promote the full and frank discussion of issues *within and among federal agencies*." *See Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999) (holding that "FOIA Exemption 5 applies to federal agencies only") (emphasis added); *see also Sec. Fin. Life Ins. Co. v. Dep't of Treasury*, 2005 WL 839543, at *3 (D.D.C. Apr. 12, 2005) ("Department claims each document is exempted from FOIA production in whole or in part under the deliberative process privilege *embodied in FOIA Exemption 5*.") (emphasis added); *Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau*, 2014 WL 1245303, at *5-6 (D.D.C. Mar. 27, 2014) (analyzing application of "Exemption 5's deliberative process privilege"); *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 306 F. Supp. 2d 58, 73 (D.D.C. 2004) (withholding redacted material under the deliberative process privilege because it was protected by FOIA Exemption 5).

*Third*, even if portions of the Books contain material that is predecisional and deliberative, the deliberative process still does not apply as Defendants have not met their burden of establishing—as they must—that the material relates to a specific policy decision. "The Second Circuit has noted some factors to consider in determining whether a document is 'predecisional,' including whether the document asserting the privilege can [] 'pinpoint the specific ... decision to which the document correlates.'" *MacNamara*, 249 F.R.D. at 78 (citing *Grand Central P'ship*, 166 F.3d at 482. Courts routinely reject assertions of the deliberative process privilege when the asserting party fails to adequately specify the "important policy decision" to which the document in question pertains. *See City of New York v. Grp. Health, Inc.*, 2008 WL 4547199, at *4 (S.D.N.Y. Oct. 10, 2008) (rejecting application of deliberative process privilege to documents that did "not specifically relate to important public policy decisions"); *Puerto Rican Rights*, 194 F.R.D. at 94-95 (privilege did not attach to police disciplinary records because the "deliberative process privilege should be invoked only in the context of communications designed to directly contribute to the formation of important public policy."); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 643 F. Supp. 2d 439, 444 (S.D.N.Y. 2009) (holding that the City of New York's "general briefing materials [that] 'facilitate formulating policy and the decision-making process' [were] not sufficiently specific to support invocation of the deliberative process privilege."). Nowhere in the October 8 Letter or in the Petito Declaration do Defendants point to a single specific policy decision to which the purportedly privileged material in the Books relate. This failure is fatal to Defendants' assertion of the deliberative process privilege.

*Finally*, even if the Court were to find that the deliberative process privilege applies to some portion of the Books, any "[p]urely factual" material is not protected by the privilege and must be produced. *Grand Central P'ship*, 166 F.3d at 482 (privilege does not extend to "purely factual" material); *E.B. v. New York City Bd. of Educ.*, 233 F.R.D. 289, 292 (E.D.N.Y. 2005) ("factual findings and conclusions, as opposed to opinions and recommendations, are not protected"). As the Unredacted Bullet Point demonstrates, the Books contain purely factual information that is not covered by the deliberative process privilege. This, and any other factual information, must be produced.

## THE LAW ENFORCEMENT PRIVILEGE DOES NOT APPLY

Defendants' claims of law enforcement privilege over the Books should be narrowly construed, as it is a qualified privilege that can only be overcome by a compelling need that outweighs any interest in non-disclosure. *See In re City of New York*, 607 F.3d 923, 940 (2d Cir. 2010) ("[T]he law enforcement privilege is a *qualified* privilege, not an absolute privilege, [thus] there are circumstances in which information subject to the privilege *must nevertheless* be disclosed.") (emphasis added); *Floyd v. City of New York*, 739 F. Supp. 2d 376, 380-81 (S.D.N.Y. 2010) ("Because the law enforcement privilege is a qualified privilege (*i.e.,* not absolute), the inquiry does not end with a successful showing that the privilege applies to the materials in question…the party seeking disclosure may rebut the presumption."). Defendants have the burden of showing that the law enforcement privilege is applicable to the Books. *S.E.C. v. Yorkville Advisors*, 300 F.R.D. at 158 ("the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question") (citation omitted).

The type of material covered by the law enforcement privilege "includes information pertaining to 'law enforcement techniques and procedures,' 'the confidentiality of sources,' information that would endanger 'witness and law enforcement personnel [or] the privacy of individuals involved in an investigation,' and information that would 'otherwise ... interfere[ ] with an investigation.'" *In re City of New York*, 607 F.3d at 944 (quoting *In re Dep't of Investigation of New York*, 856 F.2d 481, 484 (2d Cir. 1988)). In order to resist production of any portion of the Books on the basis of law enforcement privilege, Defendants must first "make a clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted." *Kunstler v. City of N.Y.*, 2005 WL 2656117, at *1 (S.D.N.Y. Oct. 18, 2005). In the absence of such a harm, the information must be produced. *See, e.g.*, *Kunstler v. City of N.Y.*, 439 F. Supp. 2d 327, 327 (S.D.N.Y. 2006) (law enforcement privilege inapplicable over whether undercover police officers were present at demonstration); *Adams v. City of N.Y.*, 993 F. Supp. 2d 306, 313 (E.D.N.Y. 2014) (identity of undercover police officer was not protected by law enforcement privilege); *Haus v. City of New York*, 2004 WL 3019762, at *4 (S.D.N.Y. Dec. 29, 2004) (rejecting claim of law enforcement privilege with respect to document that described number of officers at specific locations during protest).

Defendants' October 8 Letter notably does not contend that the law enforcement

███████████████████████████████████████████████████████████

conclusory assertion of the law enforcement privilege,[4] and Defendants should not be entitled to simply invoke the word ████████████████████████████████ in law enforcement privilege. Furthermore, documents *filed publicly* concerning the Books (provided at the link to the City Council's Oversight Hearing meeting referenced in ¶ 5 of the Petito Declaration) demonstrate that matters relating to the NYPD's counter-terrorism efforts are not *per se* privileged. In fact, one such document contains the word "counter-terrorism" on at least 5 pages, and contains an in-depth discussion of the City's access to funding for counter-terrorism on pages 21-22 of that document. *See* Hearing on the Mayor's Fiscal 2013 Preliminary Budget & the Fiscal 2012 Preliminary Mayor's Management Report for the Police Department (Ex. A) at 1, 7, 20, 21-22, and 28 (detailing accounting for "Security and Counter-Terrorism Grants Program").

To the extent that certain portions of the Book could be properly protected by the law enforcement privilege, Defendants should not be able to use this fact to extend the law enforcement privilege to all information on any page that contains such material. It is difficult to envision how Defendants can credibly establish the requisite "clear and specific evidentiary showing" of harm that would result from disclosure of much of the information in the Books, which by Defendants' own admission includes "a wide array of policy matters" and "forty-one

---

[4]   *See Kitevski v. City of New York*, 2006 WL 680527, at *3 (S.D.N.Y. Mar. 16, 2006) ("vague and conclusory statements without any specific or particularized facts" insufficient to show that privilege attached to IAB records).

(41) different topics" including budget issues, staffing, school safety, traffic and transit and Quality of Life. *See* Petito Declaration at ¶¶ 6, 15, 18. Defendants must produce the portions of the Books for which they cannot make such a showing.

## THE PROTECTIVE ORDER ALLOWS FOR LAW ENFORCEMENT AND DELIBERATIVE PROCESS MATERIALS TO BE PRODUCED

"When considering whether to compel disclosure of items subject to [the deliberative process or law enforcement] privileges, the Court 'must consider the effect of a protective order restricting disclosure to the plaintiff and the plaintiff's attorney, or to the plaintiff's attorney alone. Such an order can mitigate many if not all of the oft-alleged injuries to the police and to law enforcement.'" See *MacNamara*, 249 F.R.D. at 80 (quoting *King v. Conde*, 121 F.R.D. 180, 190 (E.D.N.Y. 1988)).  Here, even if the Court finds that portions of the Books are covered by the deliberative process or law enforcement privileges, the Court should still order production of the information under the protective order in place in this action. *See* Dkt. No. 11; *MacNamara*, 249 F.R.D. at 83(ordering production of document under protective order over party's privilege objections); *see also King*, 121 F.R.D. at 198 (same).

### Conclusion

In light of the numerous concerns surrounding Defendants' privilege determinations, and Defendants' inability to articulate the grounds for those determinations, Plaintiffs respectfully request that the Court order Defendants to turn over the portions of the Books they are withholding on relevancy grounds and, pursuant to Rule 26(b)(5)(B), order Defendants to produce the Books (or any portions thereof) to the extent they are not properly withheld as privileged.  Plaintiffs also respectfully request that the Court order Defendants to promptly produce all non-privileged portions of any other documents Defendants previously withheld or redacted based on similarly improper privilege assertions.


Respectfully submitted,

*/s Elinor C. Sutton*

Elinor C. Sutton

Quinn Emanuel Urquhart & Sullivan, LLP
*Co-Lead Class Counsel for Plaintiffs*


cc:     Qiana Smith-Williams (via Email)

        The City of New York Law Department
        *Attorneys for Defendants*