**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7325**

WRITER'S INTERNET ADDRESS
**elinorsutton@quinnemanuel.com**

January 16, 2015

**Via E-File**
Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Stinson v. City of New York*, 10-cv-4228 (RWS)

Dear Judge Sweet:

      I write on behalf of Plaintiffs in the above-referenced class action in light of the failure of the Patrolmen's Benevolent Association of the City of New York (the "PBA") to comply with this Court's orders dated April 17, 2014 and September 18, 2014, requiring the PBA to produce certain documents (the "Orders," attached hereto as Exhibits A & B). This letter marks the *third time* that Plaintiffs have needed to seek judicial relief from Your Honor as a result of the PBA's refusal to produce information responsive to Plaintiffs' August 6, 2013 subpoena ("Subpoena"). With the impending close of fact discovery in less than three months, and the significant number of relevant depositions that need to be conducted before that time, Plaintiffs urgently require the documents at issue, and respectfully request that this Court require the PBA to comply with the Orders and grant the relief requested below.

**The PBA Has Failed to Conduct a Reasonable Search for Responsive Information.**

      The PBA's production raises serious concerns about how the PBA and its counsel searched for and collected responsive documents. In nearly a year-and-a-half, the PBA has produced a total of 388 pages. In the four months since the Court's September 18, 2014 Order, the PBA has produced *only 96 pages*. Of these documents, *only 66 pages* had not been previously produced[1], and another ten pages of this production were simply documents removed from the PBA's privilege log after the Court had ordered them improperly withheld.

---

[1] The 96-page production included duplicates of documents the PBA had already produced: (i) an additional copy of Arbitrator Weinstock's Opinion holding that the NYPD violated New York State Labor Law by establishing and maintaining a summons quota; and (ii) three additional copies of a document concerning the PBA's support for the "Anti-Quota Bill."

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG

One area of particular concern is the PBA's process for searching its electronic files and email systems, including whether they were searched at all. For example, the PBA only produced *14 email chains* in its recent 96-page production.[2] For some context, the PBA's website indicates that it has at least 27 employees in its organization, including 5 executives, 12 trustees, and 10 financial secretaries.[3] Indeed, the PBA's president Patrick Lynch only appears on *two email chains*— in one email chain, he forwards an email without comment, and in the second email chain, he is merely copied as a recipient. It strains credulity for the PBA to claim it conducted a reasonably comprehensive search of its email systems, only to produce such a paltry number of emails.

As Your Honor will recall, on September 18, 2014, the Court ordered that "[i]n the absence of any production" of the documents at issue, counsel for the PBA must submit a statement that it has satisfied the search requirements articulated in *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 08-CV-5023, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010). Ex. A at 4. Based on the PBA's questionable production, Plaintiffs have expressly asked counsel for the PBA to confirm that the PBA's search and production does indeed comply with the requirements of *Nycomed*. Tellingly, counsel for the PBA has not provided such confirmation, and instead only vaguely stated that they "coordinated" with their client regarding the electronic production. The PBA's response fails to comply in good faith with Your Honor's September 18 Order and suggests that the PBA has not met its search obligations.

**The PBA Has Failed to Produce Specific Categories of Documents that Your Honor Has Twice Ordered It to Produce.**

In the September 18 Order, Your Honor specifically ordered the PBA to produce (1) all filed grievances with supporting materials[4]; (2) documents relating to Senate Bill S2956A and PBA statements relating to quotas; and (3) Summons Quota Affidavits.

A. All Filed Grievances with Supporting Materials

Following the September 18 Order, the PBA has not produced *a single piece of paper* with regard to filed grievances. This includes grievance letters, grievance forms, and any supporting documents submitted to the PBA with regard to grievance files. It is not plausible

---

[2] Documents produced by the PBA are also missing attachments. *See* January 20, 2012 email from Gonzalez to Williams, attached hereto as Exhibit F; Memorandum from Patrick Lynch to PBA members, attached hereto as Exhibit G.

[3] The "Contact Us" portion of the PBA's website (https://www.nycpba.org/contact.html) lists these employees.

[4] Your Honor also ordered that all grievance forms and supporting materials submitted to counsel for officers who did not file grievances may be withheld upon the filing of an appropriate privilege log, including the identification of the officers and the recipients. Notwithstanding that it has been four months since the Court's September 18 Order, Plaintiffs have not yet received a privilege log from the PBA and therefore respectfully reserve the right to challenge the appropriateness of any such entries.

that no such documents exist, and the PBA's failure to produce such documents truly underlines the stunning inadequacy of the PBA's document search and production.[5]

For example, while the PBA has previously stated that it has already produced all relevant grievance letters, Plaintiffs know this not to be true based on a document in the City of New York's production that evidences that the PBA filed an additional relevant grievance that it has not yet produced.[6] The fact that the PBA has not produced this grievance letter puts in question the entirety of the PBA's search for relevant grievance letters, and Plaintiffs justifiably fear that there are additional grievance letters that the PBA has not produced.

Furthermore, the PBA has not produced any supporting documents submitted to the PBA with regard to grievance files. Officers have provided sworn testimony, however, that such supporting documents were submitted to the PBA. In his November 19, 2014 deposition, Sergeant Louis Nunes testified that in connection with his grievance, he gave the PBA copies of his memo books and that he printed a grievance form from the PBA website, filled it out, and provided it to a PBA delegate. *See* Nunes Depo. Tr., attached hereto as Exhibit C, at 84:13-85:3, 85:4-7, & 97:13-98:6. Similarly, on August 12, 2014, Officer Rajinder Singh testified that he believes that he provided two copies of roll calls to the PBA in connection with his grievance. *See* Singh Depo Tr., attached hereto as Exhibit D, at 187:21-188:2.[7]

### B.  Documents Relating to Senate Bill S2956A and PBA Statements Relating to Quotas

It is not credible that the PBA has made a good-faith production of documents relating to either the Anti-Quota Bill or the PBA's statements relating to quotas. For example, the PBA extensively lobbied for the Anti-Quota Bill, and has repeatedly boasted of the same. Yet, the PBA has not produced a single internal email regarding that bill.

With regard to the PBA's statements concerning quotas, the PBA produced approximately seventeen one-paragraph press statements made by Patrick Lynch regarding quotas, but did not produce any documents concerning why these press statements were made, how it was determined what the content of those statements should be, what underlying information was used in formulating the statements, or any other documents that one would expect to see in connection with press statements.

---

[5]  To the extent that the PBA is withholding any such documents on the grounds of privilege, Plaintiffs extensively briefed why these types of documents are not privileged in its September 10, 2014 letter to the Court. Indeed, the Court has already ruled that summons quota affidavits submitted in connection with grievances are not privileged.

[6]  Plaintiffs have previously requested that the PBA produce this grievance letter, which was filed on behalf of Officer Mary Cole, as well as the documents related to that grievance. To date, the PBA has not produced these documents, nor has it provided an explanation as to why it cannot do so.

[7]  During the same deposition, Plaintiffs' counsel requested production of certain performance evaluations related to his grievance, and Officer Singh's counsel answered that the PBA would be more likely to possess the evaluations. Ex. D at 279:16-280:5.

### C.  Summons Quota Affidavits

Finally, the PBA has failed to produce all Summons Quota Affidavits, including those that it referenced in its own public statement.  Specifically, in an article written by the PBA's General Counsel and published in the PBA Magazine, the PBA claimed that it had received "numerous quota affidavits [] from police officers."  *See* Spring 2005 article titled "Why Arrest Quotas are Wrong" by Michael Murray, attached hereto as Exhibit E.  The PBA, however, has not produced any of those referenced affidavits.[8]

### **The PBA Should Be Sanctioned for its Failure to Comply with Your Honor's Orders.**

The PBA's utter failure to conduct a proper and diligent search—and its counsel's refusal to confirm that their client has conducted the type of search the Court previously ordered is required— is an obvious violation of the Federal Rules, and sanctions are appropriate.  *See Nycomed*, 2010 WL 3173785, at *3 (cited by this Court in its September 18, 2014 Order) ("A party that has been served with a request for ESI is charged with find[ing] and disclos[ing] all responsive documents or properly set[ting] forth why the documents are being withheld.  This obligation to conduct a diligent search requires good faith on the part of the responding party and its attorneys, and mandates that they work together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review and produce responsive documents. When parties and/or their counsel fail in their duty to conduct proper searches of ESI, sanctions may be appropriate." (internal quotation marks and citations omitted)); *Richard Green (Fine Paintings) v. McClendon*, 262 F.R.D. 284, 290 (S.D.N.Y. 2009) (cited by this Court in its September 18, 2014 Order) ("Attorneys must take responsibility for ensuring that their clients conduct a comprehensive and appropriate document search." (internal quotation marks omitted));  *Metro. Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union*, 212 F.R.D. 178, 224 (S.D.N.Y. 2003) (finding that defendant and its counsel "employed an unconscionably careless procedure to handle discovery matters," where they made "disjointed searches, each time coming up with a few more documents, and each time representing that that was all they had," and where "[s]ometimes they did not even go to the trouble of making a disjointed search but just stated that no responsive documents exist" (internal quotation marks omitted)).

Here, the PBA's complete disregard for its discovery obligations—and in particular Your Honor's orders—have forced Plaintiffs to seek judicial relief *three times*.  Plaintiffs therefore request that, consistent with practice in the S.D.N.Y., Your Honor order the PBA to pay attorneys' fees and costs related to Plaintiffs' motions concerning the PBA's failure to produce documents in response to the Subpoena.  *See*, *e.g.*, *Sprint Nextel Corp. v. Ace Wholesale, Inc.*, 12-CV-2902, 2014 WL 4308355, at *1 (S.D.N.Y. Aug. 26, 2014) (holding nonparty in contempt and granting plaintiffs' request for reasonable attorneys' fees and costs, where nonparty failed to comply with a subpoena to produce documents and to testify at a deposition); *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 07-CV-3635, 2008 WL 3852046, at *2 (S.D.N.Y. Aug. 13, 2008) (granting

---

[8]  Because the article predates the five affidavits that the PBA removed from its privilege log, it is not possible that those five affidavits could be the "numerous" referenced affidavits in the article.

4

motion for contempt and for sanctions in the form of attorneys' fees, where nonparty failed to comply with a deposition subpoena and ignored the court's order to either comply or respond to the motion); *see also cf. PaineWebber Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) (sanctioning nonparty—including through civil contempt and a fine covering certain of movant's costs—for failing to comply with a subpoena); *Forum Ins. Co. v. Keller*, 91-CV-4528, 1992 WL 297580, at *3 (S.D.N.Y. Oct. 8, 1992) (holding nonparty in contempt and ordering it to pay the court a $1000 fine, where nonparty failed to comply with a subpoena and the court's prior order to produce documents).

Plaintiffs also request that Your Honor order the PBA to immediately produce a 30(b)(6) witness to testify on what steps the PBA and its counsel have taken to conduct a reasonable search for responsive information.  Specifically, the 30(b)(6) witness should be prepared to provide testimony on (1) "how and where [the PBA's] electronic documents, records and emails are maintained," *Nycomed*, 2010 WL 3173785, at *3; (2) how the PBA can "best [] locate, review and produce responsive documents," (*id.*); and (3) the PBA's document retention policies.  Because Your Honor's September 18 Order put the PBA on notice of its obligation to conduct a reasonable search, including by quoting extensively from *Nycomed*, the PBA should be able to quickly prepare a witness on these topics.

In addition, based on the PBA's clearly inadequate production and its counsel's refusal to state that they have complied with the requirements of *Nycomed*, Plaintiffs request that the Court order counsel for the PBA to submit an affidavit to this Court stating that both they and the PBA have complied with the requirements of *Nycomed*.  Plaintiffs also request that the Court order counsel for the PBA to provide in this affidavit detailed information regarding the steps they have taken and will take in the future to locate responsive documents, including but not limited to a list of search terms used to locate responsive documents and the names of the document custodians whose files were searched.

Finally, the PBA has marked the entirety of its production "Attorneys' Eyes Only." Much of the production consists of press statements and emails with third parties.  Plaintiffs request that the Court order the PBA to de-designate the production "Attorneys' Eyes Only" where appropriate so that Plaintiffs can utilize documents in upcoming depositions.

## Conclusion

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion and (1) order the PBA to comply with Your Honor's previous Orders; (2) order the PBA to pay Plaintiffs' attorney fees and costs related to the motions filed in connection with the Subpoena; (3) order the PBA to produce a 30(b)(6) witness for deposition as detailed above; (4) order counsel for the PBA to submit an affidavit to Your Honor stating that both they and the PBA have complied with the requirements of *Nycomed*; and (5) order the PBA to de-designate documents "Attorneys' Eyes Only" where appropriate.

Respectfully submitted,

/s/ Elinor C. Sutton

Elinor C. Sutton
Quinn Emanuel Urquhart & Sullivan, LLP
*Co-Lead Class Counsel for Plaintiffs*


cc: Edward McDonald (via E-file and Email)
Dechert LLP
*Attorneys for the PBA*

Qiana Smith-Williams (via E-file and Email)
The City of New York Law Department
*Attorneys for Defendants*