

1095 Avenue of the Americas
New York, NY  10036-6797
+1  212  698  3500  Main
+1  212  698  3599  Fax
www.dechert.com

**MICHAEL J. GILBERT**

michael.gilbert@dechert.com
+1 212 698 3886  Direct
+1 212 698 0426  Fax

January 23, 2015

**VIA E-FILE AND HAND DELIVERY**

Hon. Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:  *Stinson, et al. v. City of New York, et al.*, No. 10-cv-4228

Dear Judge Sweet:

On behalf of non-party the Patrolmen's Benevolent Association of the City of New York, Inc. (the "PBA"), we respectfully submit this letter in opposition to Plaintiffs' January 16, 2015 motion for an order requiring the PBA to comply with this Court's September 23, 2014 Order (the "September Order"), as well as sanctions and attorneys fees.

Plaintiffs filed their motion seeking this extraordinary relief against a non-party without making a good faith effort to meet and confer and without submitting the certification required by Federal Rule of Civil Procedure 37.[1]  Their motion is therefore improper and, under the Rule, they are *prohibited* from obtaining attorneys' fees from the PBA.[2]  The centerpiece of Plaintiffs' motion is the entirely baseless claim that the PBA "has not met

---

[1]  Fed. R. Civ. P. 37(a)(1) ("On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery.  *The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.*") (emphasis added).

[2]  *Id.* 37(5)(A)(i)  "[T]*he court must not order [attorneys' fees] if*: (i) *the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action*.") (emphasis added).


Hon. Robert W. Sweet
January 23, 2015
Page 2

its search obligations."[3] Because they failed to engage in the required meet and confer, however, Plaintiffs have no information whatsoever about the PBA's search process. Plaintiffs' motion, therefore, is based entirely on speculation.[4]

As described below, following this Court's September Order, the PBA and its outside counsel prepared and executed a discovery plan to search for and review both electronic and hard-copy documents. This extensive, time-consuming, and expensive effort plainly satisfies the PBA's obligations, as Plaintiffs' counsel would have learned had they chosen to comply with the Federal Rules and accepted the PBA's invitation to meet and confer. The PBA has complied with this Court's Orders. Plaintiffs' motion must be denied.

Given that Plaintiffs filed this meritless motion without the required meet and confer, without the necessary certification, that they have mischaracterized the PBA's response to the subpoena, and that the PBA is a non-party that has already been significantly and unnecessarily burdened, the PBA respectfully requests an award of attorneys' fees and sanctions.

---

[3] Pls.' Letter to Judge Sweet, at 2, Jan. 16, 2015.

[4] On January 15, 2015, the same day Plaintiffs, for the first time, provided any detailed description of their concerns regarding the PBA's production in response to the September Order (which they did only after counsel for the PBA asked them to list their specific concerns), Plaintiffs unilaterally sought to impose a noon deadline of the next day to meet and confer. Letter from Elinor Sutton to Michael Gilbert (Jan. 15, 2015), attached hereto as Exhibit A. In response, the PBA informed counsel for Plaintiffs that the PBA would promptly provide a substantive, written response to Plaintiffs' concerns, as well as the PBA's privilege log. E-mail from Michael Gilbert to Elinor Sutton (Jan. 15, 2015 21:06 EST), attached hereto as Exhibit B. The next day, counsel for the PBA requested dates and times on which Plaintiffs' counsel would be available to meet and confer. E-mail from Michael Gilbert to Elinor Sutton (Jan. 16, 2015 13:29 EST), attached hereto as Exhibit C. Plaintiffs' counsel ignored the request, and, later that same day filed a six-page, single spaced motion.



**Background**

To put this non-party subpoena and the September Order in context, as Your Honor is aware, the Amended Complaint in this action alleges that every New York City Police Department precinct had in place, during the relevant period, a "summons quota," which police officers were required to meet by making arrests and issuing summonses "regardless of probable cause, the existence of a crime, the number of summonses actually filed or the number of summonses that are successfully prosecuted." (Am. Compl. ¶¶ 36, 38.)

The class representatives in this action are African-American men and women who allege that they were issued one or more summonses without probable cause and that they were verbally and mentally abused by police officers and were not free to leave until issued a summons and released. (*See*, *e.g.*, *id.* ¶¶ 230, 232.)

The Amended Complaint, which is 66 pages and includes 435 paragraphs, *does not mention* the PBA a single time.

**The September Order**

The September Order directed the PBA to produce four categories of documents:

(1) **All filed grievances alleging quotas, with supporting materials.** September Order at 6 (noting, however, that the PBA was permitted to withhold "grievance forms and supporting materials submitted to counsel for officers who did not file grievances" and "[d]ocumentary evidence submitted in connection with the grievances" that were made subject to an appropriate privilege log).

(2) **Documents relating to Senate Bill S2956A ("SB S2956A").** *Id.* at 3-4.

(3) **PBA statements relating to quotas.** *Id.* (noting that, "[i]n the absence of any production," counsel was to submit a statement satisfying the requirements set forth in *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 08-CV-5023, 2010 WL 3173785 (E.D.N.Y. Aug. 11, 2010)).

(4) **Summons quota affidavits that were not submitted to counsel.** *Id.* at 5-6.



Hon. Robert W. Sweet
January 23, 2015
Page 4

**Plaintiffs' Unwarranted Criticism of the PBA's Document Production**

Plaintiffs express doubt that the PBA's search process was "reasonably comprehensive" merely because Plaintiffs' counsel believes that the PBA should have produced more documents.[5] The number of pages that were produced, of course, is not indicative of the reasonableness of the PBA's search for and review of potentially responsive documents. The issue is the reasonableness of the search that was conducted, not what the search produced.

In an apparent attempt to bolster its baseless allegations of the PBA's non-compliance with the September Order, Plaintiffs mischaracterize their communications with the PBA's counsel regarding the "*Nycomed*" confirmation. This Court held that "in the absence of any production" by the PBA, the PBA should submit a statement pursuant to *Nycomed*.[6] Since the PBA did make several productions following the September Order, no such statement was required. Ignoring this, Plaintiffs state: "Tellingly, counsel for the PBA has not provided such confirmation, and instead only vaguely stated that they 'coordinated' with their client regarding the electronic production."[7]

Leaving aside that the *Nycomed* statement was not required, the fact is that PBA's counsel *did* confirm to Plaintiffs' counsel that the PBA had searched for and located responsive electronic documents. The PBA counsel's actual response was as follows:

> Regarding whether we and the PBA have worked 'together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review and produc[e] responsive documents,' I note that our recent productions have included emails that are responsive to Plaintiffs' third-party subpoena. It should thus be apparent that we

---

[5]   Pls.' Letter to Judge Sweet, at 2, Jan. 16, 2015.

[6]   September Order at 4.

[7]   Pls.' Letter to Judge Sweet, at 2, Jan. 16, 2015.



have coordinated with our client to locate and produce responsive electronic documents.[8]

Plaintiffs' effort to mislead this Court by claiming that the PBA should be sanctioned for "failing" to take an action that, as Plaintiffs know, the PBA did take, even though it was not required to do so, is striking.

Plaintiffs also assert that certain "[d]ocuments produced by the PBA are . . . missing attachments." Again creating an issue where none exists, Plaintiffs cite two documents produced by the PBA that refer to attachments. *See* Pls.' Exhibit F & Exhibit G. With respect to Plaintiffs' Exhibit F, the PBA searched the emails of each of the PBA employees who were on the email chain—Maria Gonzales, John Puglissi, and Frank Tramontano—for the attachments referenced, but was unable to locate these attachments. As to Plaintiffs' Exhibit G, this document was an electronically-stored file that referenced an attached form, but the form was not, in fact, attached to the electronic file. This is precisely the type of easily explainable issue that could have been resolved during a meet and confer, without burdening the Court and a non-party with additional litigation.

As for Plaintiffs' suggestion that the PBA was required to search the files of each and every one of its employees, that supposition is absurd and unsupported by any citation to authority. Pls.' Letter to Judge Sweet, at 2, Jan. 16, 2015. As described below, the PBA, consistent with widely accepted electronic discovery procedures, identified custodians based on the reasonable likelihood that they would have responsive documents. *See 3M Innovative Properties Co. v. Tomar Electronics*, No. CIV 05-756 MJD/AJB, 2006 WL 2670038, at *6 (D. Minn. Sept. 18, 2006) (In responding to a subpoena, "[a] company need not question all employees, but must question those that would reasonably have relevant information.").

**PBA's Response Regarding Each Category of Documents**

We address below the PBA's response with regard to specific categories of documents this Court ordered produced.

---

[8] E-mail from Michael Gilbert to Elinor Sutton (Jan. 16, 2015 11:58 EST), attached hereto as Exhibit D.



Hon. Robert W. Sweet
January 23, 2015
Page 6

**Category 1: Filed Grievances Alleging Quotas with Supporting Materials**

Plaintiffs assert that the PBA has violated the Court's September Order by failing to produce "grievance letters, grievance forms, and any supporting documentation submitted to the PBA with regard to grievance files."[9] The relevant portion of the September Order states:

> All filed grievances with supporting materials will be produced *and may well have been produced*. The grievance forms and supporting materials submitted to counsel for officers who did not file grievances may be withheld upon the filing of an appropriate privilege log including the identifications of the officers and recipients. . . . Documentary evidence submitted in connection with the grievances will be produced unless made subject to an appropriate privilege log.[10]

As Plaintiffs are aware, on February 18, 2014, the PBA produced all quota-related grievances that it filed with the City of New York ("the City") from May 25, 2007 (the beginning of the class period) to the date of the subpoena.[11] On March 18, 2014, the PBA formally objected to Plaintiffs subpoena to the extent that none of its requests for documents time-limited. Your Honor has acknowledged that the PBA's production obligation extended only to documents dated 2007 or later.[12]

In order to meet its obligation with respect to grievance forms and supporting materials that were submitted to the PBA but did not result in grievances filed with the City, the PBA, at great expense and effort, has searched for and identified such documents for the

---

[9] Pls.' Letter to Judge Sweet, at 2, Jan. 16, 2015.

[10] September Order at 6 (emphasis added).

[11] *See* PBA 000001 – 000106.

[12] *See* Mem. & Op., Apr. 23, 2012, ECF No. 34 ("The applicable class period is May 25, 2007 to the present, pursuant to the three year statute of limitations governing actions brought pursuant to 42 U.S.C. § 1983."); Letter from Edward McDonald to Gerald Cohen, Mar. 18, 2014, ¶ 3, attached hereto as Exhibit E; Hr'g Tr. 10:10-11:2, Apr. 14, 2014, attached hereto as Exhibit F.



same period.  In conformance with the September Order, they have been listed on the privilege log, which has been transmitted to Plaintiffs.

In yet another attempt to create an issue where none exists, Plaintiffs create the false impression that the PBA's production is somehow deficient by stating that the PBA has failed to produce (1) a grievance letter, and supporting materials, that was filed on behalf of Officer Mary Cole; (2) copies of memo book entries and a filled-out grievance form that Sergeant Louis Nunes allegedly provided to a PBA delegate in connection with his grievance; and (3) two copies of roll calls Officer Rajinder Singh provided to the PBA in connection with his grievance.[13]

With regard to the grievance filed on behalf of Officer Mary Cole, the PBA has reviewed the grievance letter and it does allege a quota.  It is, therefore, not responsive.  In an attempt to play "gotcha," Plaintiffs refer to some unspecified document that they allege shows that the PBA has failed to produce Officer Cole's quota-related grievance.[14]  Plaintiffs have not shared this unspecified document with the PBA or the Court, so it is not possible for the PBA to respond.

Plaintiffs' references to materials that they assert Sergeant Nunes and Officer Singh testified in their depositions that they provided to the PBA are mystifying.  Plaintiffs *never* contacted PBA's counsel about these materials, even after *counsel specifically asked Plaintiffs to identify in what ways Plaintiffs believed the PBA's production to be deficient*.[15]

The PBA has produced the grievances it filed with the City on behalf of Sergeant Nunes and Officer Singh, along with all supporting materials filed with the City.[16]  In addition,

---

[13]   Pls.' Letter to Judge Sweet, at 3, Jan. 16, 2015.

[14]   *Id.*

[15]   Letter from Michael Gilbert to Elinor Sutton, Jan. 15, 2015, attached hereto as Exhibit G.

[16]   For instance, the grievance letter the PBA filed with the City on behalf Officer Singh attached an excerpt from the PBA's Collective Bargaining Agreement.  The PBA has produced the attached excerpt to Plaintiffs.  PBA 000030 – 000031.



the PBA has logged other materials provided to counsel by Sergeant Nunes and Officer Singh that were never filed with the City but were provided to PBA counsel to obtain legal advice. *See* Priv. Log No. 15, 16, 22. The materials Plaintiffs claim are "missing" from the production (copies of memo books and a grievance form allegedly submitted by Sergeant Nunes and two copies of roll calls submitted by Officer Singh) were never filed with the City by the PBA. To the extent the referenced documents are in the PBA's possession, they would have been logged on the privilege log. This is yet another issue that could have been resolved by a meet and confer.

In yet another baffling assertion, Plaintiffs state incorrectly that since the Court's September Order the PBA has not produced "a single piece of paper with regard to filed grievances." On October 27, 2014, the PBA produced all five summons quota affidavits pursuant to the Court's September Order, three of which concerned officers whose filed grievances had previously been produced to Plaintiffs. *See* PBA 000293 – 000302.

**Category 2: Documents Relating to Senate Bill S2956A**

As Plaintiffs have conceded in previous filings,[17] and as the Court's September Order recognized, on March 10, 2014, Plaintiffs narrowed[18] their request for documents concerning Senate Bill S2956A. Plaintiffs' narrowed request called for the PBA to produce:

> Documents sufficient to show the PBA's position with regard to Senate Bill S2956A, including data, information, or research considered or relied upon in forming that position, and all communications between the PBA and third parties regarding Senate Bill S2956A.[19]

---

[17] Pls.' Letter to Judge Sweet, at 3, Mar. 26, 2014, ECF No. 103.

[18] The initial subpoena *duces tecum* Plaintiffs' served on August 6, 2013 requested "[a]ll documents concerning Senate Bill S2956A." Pls.' Subpoena to Produce Documents, Information, or Objects, Schedule A, ¶ 17, attached hereto as Exhibit H.

[19] Amended Schedule A to Pls.' Subpoena to Produce Documents, Information, or Objects, ¶ 17, March 10, 2014, attached hereto as Exhibit I.



With regard to "documents sufficient to show the PBA's position," Plaintiffs acknowledge that the PBA has produced a memorandum describing the PBA's reasons for supporting the Bill. This document is sufficient to show the PBA's position and satisfies the request. *See Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. CV 12-01971-CW (KAW), 2013 WL 5442269, at *2-3 (N.D. Cal. Sept. 30, 2013) ("Digital Reg's Request for Production No. 1 only seeks 'summary documents sufficient to show' product revenue. . . . Given the limitation of Request No. 1 . . . the request did not seek all documents . . . ."); *Suture Express, Inc. v. Cardinal Health 200, LLC*, No. 14-CV-04737, 2014 WL 6478077, at *3 (N.D. Ill. Nov. 18, 2014) ("Suture Express offered to modify several requests for 'all documents' to seek only documents 'sufficient to show'. . . .").

With regard to "communications," Plaintiffs' complain that "the PBA has not produced a single internal email regarding [Senate Bill S2956A]."[20] Plaintiffs incorrectly imply that Your Honor had ordered the PBA to produce "internal emails," and the PBA has refused to comply. This is simply false. Plaintiffs' narrowed request does not request "internal emails." It asks for "all communications between the PBA and *third parties* regarding Senate Bill S2956A,"[21] which the PBA has produced. *See, e.g.*, PBA 000342 – 000343.

As to "data, information or research" the PBA relied upon in forming its position, the PBA performed searches for "quota" or "quotas" and "2956A" and "215a" in the custodians' emails, extremely broad search terms designed to identify any responsive materials. And, the production does contain material provided to legislative staff in connection with Senate Bill S2956A. *See* PBA 000303 – 000304. Moreover, the grievances themselves and supporting documents obviously constitute information the PBA would have relied on in forming its position on the Bill. These materials have all been produced, or, if privileged, logged. *See, e.g.*, PBA 000001 – 000106; Priv. Log Nos. 1-15.

**Category 3: Documents Regarding PBA Statements Relating to Quotas**

The Court's September Order stated that "PBA statements relating to quotas will be produced." September Order at 4. The PBA conducted a thorough and reasonable search

---

[20] Pls.' Letter to Judge Sweet, at 3, Jan. 16, 2015.

[21] Exhibit I ¶ 17 (emphasis added).



for documents (including an extensive electronic search, as detailed *infra* in "PBA's Process to Identify Responsive Materials") relating to the PBA's statements regarding quotas issued from May 25, 2007, the beginning of the certified class period, through August 6, 2013, the date Plaintiffs' served the subpoena.[22]  The PBA has produced all responsive, non-privileged documents identified in connection with this search.  The PBA has also produced any magazine articles relating to quotas that Plaintiffs identified in the subpoena.  Indeed, Plaintiffs concede that the PBA has produced "approximately seventeen one-paragraph press statements made by Patrick Lynch regarding quotas."[23]

Plaintiffs' sole basis for challenging the adequacy of the PBA's production of documents related to its public statements concerning quotas is Plaintiffs' subjective belief regarding the existence of "documents that one would expect to see in connection with press statements."[24]  However, a review of the press statements shows that they do not cite any data or studies, so it is not clear what additional documents one "would expect to see" in connection with these press statements.  This is yet another issue the parties could have resolved through a meet and confer.  In any event, Plaintiffs' rank speculation is clearly not a sufficient basis to conclude that there is any deficiency in the PBA's production.

**Category 4: Summons Quota Affidavits**

In arguing that Plaintiffs failed to produce all summons quota affidavits, Plaintiffs cite to a 2005 article referencing summons quota affidavits.  Pls.' Letter to Judge Sweet, at 4, Jan. 16, 2015.  The article states: "Based on numerous quota affidavits received from police officers, the PBA is currently prosecuting a group grievance on behalf of patrol officers arising out of a C.O.'s alleged maintenance of summons quotas."  Michael Murray, *Why Arrest Quotas Are Wrong*, PBA Magazine, Spring 2005.  Obviously, any summons quota affidavits referenced in this article were from 2005 or earlier.  For the reasons noted above, such materials are beyond the scope of the subpoena because they are too old.  In any event, even though outside the relevant time period, the PBA has produced the Opinion and Decision from the group grievance referenced in the article, as

---

[22]  *See supra* note 12 and accompanying text.

[23]  Pls.' Letter to Judge Sweet, at 3, Jan. 16, 2015.

[24]  *Id.*



well as the transcripts from that proceeding, and any related exhibits the PBA was able to identify.  PBA 000126 – 000279.  It is ironic that Plaintiffs accuse the PBA of being less than diligent, when the PBA has produced materials from a decade-old arbitration that the City, a party to that arbitration and the underlying litigation here, apparently did not produce.

**PBA's Process to Identify Responsive Materials**

In responding to the initial subpoena, engaging in subsequent meet and confers, responding to *three* motions to compel, producing documents, and drafting two privilege logs, the PBA's in-house counsel and its staff have devoted countless hours to responding to Plaintiffs' subpoena.  Likewise, the PBA's outside counsel has devoted in excess of 350 hours addressing these matters, at significant expense to the PBA, a not-for-profit organization.[25]

Among other things, the PBA has collected hard-copy documents from its grievance files to identify all the filed grievances and supporting materials, summons quota affidavits, grievance forms that did not result in a filed grievance for the relevant period.  The PBA also conducted an expansive search for responsive electronic documents, running extremely broad search terms in the electronic files of the eight "custodians" identified as reasonably likely to have material responsive to Plaintiffs' specific requests.  It is well settled that in responding to a subpoena, "[a] company need not question all employees, but must question those that would reasonably have relevant information."  *3M Innovative Properties Co. v. Tomar Electronics*, No. CIV 05-756 MJD/AJB, 2006 WL 2670038, at *6 (D. Minn. Sept. 18, 2006); *see also Robinson v. City of Arkansas City, Kan.*, No. 10-1431-JAR-GLR, 2012 WL 603576, at *4 (D. Kan. Feb. 24, 2012) ("To adequately respond to a request for production, the respondent must 'conduct a reasonable search for responsive documents.'  Parties, along with their employees and attorneys, have a duty to act 'competently, diligently, and ethically' with respect to discharging discovery obligations.  This requires a joint effort 'to identify all employees

---

[25]  The PBA objects to the significant expense it has incurred in responding to Plaintiffs' non-party subpoena, and reserves all rights to seek reimbursement for attorneys' fees and costs of compliance.  The PBA is still accounting for its total costs related to its extensive electronic discovery since the September Order.



likely to have been authors, recipients or custodians of documents" responsive to the requests for production.'") (footnotes omitted).

With respect to Plaintiffs' request concerning Senate Bill S2956A, the PBA searched the electronic emails and documents of its Legislative Coordinator, the individual responsible for the PBA's advocacy concerning the Bill, as well as the electronic emails and documents of its in-house attorney responsible for advising the Legislative Coordinator in that matter. With respect to Plaintiffs' requests concerning the PBA's statements about quotas, the PBA searched the electronic emails and documents of its President, Patrick Lynch, the individual quoted in many of those statements, as well as the PBA employees responsible for drafting and issuing statements, press releases, and advertisements on behalf of the PBA.[26] With regard to Plaintiffs' requests regarding the PBA articles, despite the articles being decades old, the PBA also searched the electronic emails and documents of each of the authors of the articles identified in Plaintiffs' document subpoena.[27]

The tremendous resources the PBA has devoted to respond to this subpoena has resulted in the PBA producing or placing onto a privilege log the following categories of documents:

- Filed grievances that allege quotas, including supporting documents filed with the grievance and those not filed with the grievance
- Summons quota affidavits
- Public statements regarding quotas
- Magazine articles regarding quotas
- All the available record from a 2005 quota grievance (which the City, a party to that grievance proceeding, appears not to have produced)
- Grievance forms alleging quotas that resulted in a filed grievance
- Grievance forms alleging quotas that did not result in a filed grievance

---

[26] Exhibit H, Schedule A, ¶¶ 11, 15.

[27] *Id.* ¶¶ 13 ("The Dark Side of Compstat" by Mr. Alejandro), 14 ("Why Arrest Quotas Are Wrong" by Mr. Murray), 16 ("The Trouble with Compstat" by Mr. Zink), Aug. 6, 2013.



In light of all this, Plaintiffs' assertions that the PBA, a non-party, somehow has not fulfilled its obligation and that therefore a 30(b)(6) deposition on these topics is required is simply another entirely unjustified attempt to burden a non-party.[28]

Moreover, we understand that Plaintiffs have deposed or noticed for deposition every police officer who issued a summons to a named class plaintiff, additional police officers who issued a summons at issue in this case, and approximately ten police officers on whose behalf the PBA filed a grievance. In light of what the PBA has produced, discovery Plaintiffs have already taken from the City, and depositions pending, it is not clear what additional non-cumulative evidence Plaintiffs reasonably hope to acquire.

**The Cases Plaintiffs' Cite In Support of Sanctions Are Inapposite**

As explained above, the PBA has complied with Your Honor's Orders in connection with Plaintiffs' non-party subpoena *duces tecum,* and it is *Plaintiffs* who have acted in bad faith by (1) failing to meet and confer with the PBA prior to filing its motion and (2) repeatedly mischaracterizing the PBA's production in an apparent attempt to create a record upon which to seek sanctions against the PBA. Nonetheless, Plaintiffs have requested that the Court order the PBA to pay attorneys' fees and costs related to the multiple motions Plaintiffs have filed in connection with its non-party subpoena.[29] Even a cursory reading of the cases Plaintiffs cite in support of this extraordinary request to shift costs onto a non-party reveal that they are readily distinguishable. *See Sprint Nextel Corp. v. Ace Wholesale, Inc.*, No. 1:12-CV-2902-JEC, 2014 WL 4308355, at *1 (S.D.N.Y. Aug. 26, 2014) (sanctioning a non-party that failed to appear and testify at a deposition, and to appear at the hearing on plaintiffs' motion to compel); *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, No. 07 CIV. 3635 (DC), 2008 WL 3852046, at *2 (S.D.N.Y. Aug. 13, 2008) (granting defendant's motion for contempt and sanctions in the form of attorneys' fees where the non-party had "been completely unresponsive" to defendant's deposition subpoena and the court's order to comply); *PaineWebber Inc. v. Acstar Ins. Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) ("Here, there is no doubt that [the non-parties] did not comply with the subpoenas by failing to appear for scheduled depositions and to produce documents.").

---

[28] Pls.' Letter to Judge Sweet, at 5, Jan. 16, 2015.

[29] Pls.' Letter to Judge Sweet, at 4, Jan. 16, 2015.



In this case, as set forth above, the PBA has gone beyond meeting any reasonable obligations on a non-party to respond to a subpoena. It has conducted a reasonable, diligent, and comprehensive search for responsive documents, consistent with the Court's September Order and the PBA's obligations under the Federal Rules of Civil Procedure. There is no basis whatsoever to impose sanctions on the PBA.

### **The PBA Moves for Sanctions and Attorneys' Fees in Connection with this Meritless Motion**

Plaintiffs' incessant motion practice and refusal to meet and confer—in violation of its obligations under Federal Rule 37—make clear that Plaintiffs' counsel is committed to an agenda beyond the collection of relevant discovery information. The PBA respectfully requests that the Court award the PBA costs, including attorneys' fees, incurred in connection with responding to the motion. *See In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. 09-CV-01967 CW NC, 2012 WL 4846522, at *1 (N.D. Cal. Aug. 7, 2012) (awarding sanctions in the form of attorneys' fees and costs where "plaintiffs' counsel did not take reasonable steps at compromise and ended the meet-and-confer process prematurely before filing the motions to compel.").

### **Conclusion**

Based on the foregoing, Plaintiffs' motion to compel, for sanctions and for an award of attorneys' fees against the PBA should be denied in its entirety. Plaintiffs should be ordered to pay the PBA's costs and attorneys' fees incurred in connection with responding to this improper motion, in addition to such other sanctions as the Court deems proper.

Respectfully Submitted,


/s/ Michael J. Gilbert
Michael J. Gilbert

cc:   Elinor Sutton, Esq. (counsel for Plaintiffs)


15473059