```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

SHARIF STINSON, et al.,

                Plaintiffs,                  10 Civ. 4228 (RWS)

    - against -                                    OPINION

CITY OF NEW YORK, et al.,

                Defendants.

------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/28/15

A P P E A R A N C E S:

    Attorneys for the Plaintiffs

    COHEN & FITCH LLP
    225 Broadway, Suite 2700
    New York, NY 10007
    By:  Gerald M. Cohen, Esq.
        Joshua P. Fitch, Esq.

    THE LAW OFFICES OF JON L. NORINSBERG, ESQ.
    225 Broadway, Suite 2700
    New York, NY 10007
    By:  Jon L. Norinsberg, Esq.

    QUINN EMANUEL URQUHART & SULLIVAN, LLP
    51 Madison Avenue
    New York, NY 10010
    By:  Stephen R. Neuwirth, Esq.
        Steig D. Olson, Esq.
        Elinor C. Sutton, Esq.

    Attorneys for the Defendant

    ZACHARY W. CARTER
    CORPORATION COUNSEL OF THE CITY OF NEW YORK
    100 Church Street
    New York, NY 10007
    By:  Steven M. Silverberg, Esq.
        Qiana C. Smith-Williams, Esq.

**Sweet, D.J.**

Plaintiffs Sharif Stinson, Mariam Farnum, Charlene Finley, Ryburn Walkes, Jamel Towe, Christian Dudley, Jocelyn Ferdinand, Gary Shaw, Michael Bennett, Chanel Meausa, David Thompson, Joseph Sarpong, Jeremy Thames, Sean Pettigrew, Leander Griffin, Brian Morris, Mica Ancrum, Ricardo Jones, Victor Breland, and Michael Riddick (collectively, "Plaintiffs") have requested access to inadvertently disclosed documents, namely the New York City Police Department Briefing Book for fiscal year 2013 and Topics of the City Council Book (together, the "Books"). Defendants City of New York and Raymond Kelly, the Commissioner of the New York Police Department ("NYPD," together with the City of New York, "Defendants") have asserted privilege over the Books.

Upon the conclusions set forth below, Plaintiffs' request is denied.

**Background & Prior Proceedings**

The facts and prior proceedings in this action are generally set forth in a prior decision and order of this Court dated April 23, 2012 granting Plaintiffs' motion for class

1

certification. See Stinson v. City of New York, 282 F.R.D. 360, 365 (S.D.N.Y. 2012). Prior proceedings relating to the instant assertion of privilege are set forth in a prior decision and order of this Court dated October 10, 2014 denying Plaintiffs request to retain the Books in their possession for the purposes of litigating the claim of privilege. (See Dkt. No. 173.) Familiarity with these opinions is assumed.

**Applicable Standard**

Federal Rule of Civil Procedure 26 states that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action . . . ." Fed. R. Civ. P. 26(b)(1). Rule 26 also provides that when a party withholds documents on the grounds of privilege, that party must both "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). "The burden is on the party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." von Bulow by Auersperg v. von Bulow, 811 F.2d

2

136, 144 (2d Cir. 1987) (citations omitted); see also In re The City of New York, 607 F.3d 923, 944-45 (2d Cir. 2010) ("the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the documents in question") (citations omitted).

**The Books Are Subject to Deliberative Privilege**

The deliberative process privilege is a subspecies of work-product privilege that "covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001) (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)). The deliberative process privilege extends to documents that are "(1) 'predecisional,' i.e., 'prepared in order to assist an agency decisionmaker in arriving at his decision,' and (2) 'deliberative,' i.e., 'actually . . . related to the process by which polices are formulated.'" Brennan Ctr. for Justice at NYU Sch. of Law v. U.S. Dep't of Justice, 697 F.3d 184, 194 (2d Cir. 2012) (citation omitted). The purpose of the deliberative process privilege is to "enhance 'the quality of agency decisions,' by protecting open and frank discussion among those

3

who make them within the Government." Klamath, 532 U.S. at 8-9 (internal citations omitted). The privilege is based on the "obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news . . . ." Tigue v. United States Dep't of Justice, 312 F.3d 70, 76 (2d Cir. 2002); see also Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). Courts afford "considerable deference" to the judgment of the agency, since the agency is in the best position to know how to prevent injuring the quality of agency decision-making. NAACP Legal Def. & Educ. Fund, Inc. v. United States HUD, No. 07 Civ 3378 (GEL), 2007 WL 4233008, at *10 (S.D.N.Y. Nov. 30, 2007) (citation omitted).

A document is predecisional when it is "prepared in order to assist an agency decisionmaker in arriving at his decision." Grand Cent. P'ship v. Cuomo, 166 F.3d 473, 482 (2d Cir. 1999) (internal quotation marks and citations omitted). Such documents may include: "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id.

A document is deliberative if it is:

4

> "'actually . . . related to the process by which policies are formulated.'" Factors used to determine whether a document is deliberative include "whether the document '(i) formed an essential link in a specified consultative process, (ii) reflects the personal opinions of the writer rather than the policy of the agency, and (iii) if released, would inaccurately reflect or prematurely disclose the views of the agency.'"

S.E.C. v. Collins & Aikman Corp., 256 F.R.D. 403, 416 (S.D.N.Y. 2009) (footnotes and citations omitted). However, "materials are not to be withheld on the basis of deliberative process privilege simply because the agency deems them confidential and would prefer not to disclose them." Toney-Dick v. Doar, 12 Civ. 9162(KBF), 2013 WL 5549921, at *2 (S.D.N.Y. Oct. 3, 2012) (citations omitted). The deliberative process privilege is qualified: "it does not protect factual matters, matters that are peripheral to policy formulation, or matters that are incorporated in the final decision or policy." Alleyne v. New York State Educ. Dep't, 248 F.R.D. 383, 388 (N.D.N.Y. 2008) (citation omitted).

In assessing the assertion of a qualified privilege, courts must balance the public interest in nondisclosure against the need of the particular litigant for access to the privilege information, keeping in mind that the burden of persuasion rests

5

on the party seeking to prevent disclosure. MacNamara v. City of New York, 249 F.R.D. 70, 79 (S.D.N.Y. 2008). Courts in this Circuit may consider a number of factors:

> Factors favoring disclosure include: (1) the relevance of the requested materials to the [requesting party's] case, (2) the importance of the materials to the [requesting party's] case, including availability of the information from alternative sources, (3) the strength of the [requesting party's] case . . ., and (4) the importance [of disclosure] to the public interest. Factors against disclosure include[:] (1) threats to public safety, (2) the invasion of government officials' privacy, (3) the weakening of government programs, and (4) the chilling of internal candor.

Davis v. City of New York, 08 Civ. 1034(SAS), 2011 WL 1742748, at *2-3 (S.D.N.Y. May 5, 2011) (citations omitted). "Whether the showing of relevance and need rises to the requisite level is a discretionary determination that must necessarily be made on a case-by-case basis." Kitevski v. City of New York, No. 04 Civ. 7402 (RCC)(RLE), 2006 WL 680527, at *3 (S.D.N.Y. Mar. 16, 2006).

Broadly speaking, Plaintiffs contend that the assertion of the deliberative process privilege is inappropriate in this case because (1) the privilege should not be used in civil rights cases against police departments; (2) the privilege does not apply to any backward-looking sections of the Books, of

6

which the Books, the Plaintiffs contend, contain much; (3) Defendants have not met their burden of establishing that the material relates to a specific policy decision; and (4) the Books contain a substantial amount of purely factual material, which is not covered by the privilege and must then necessarily be produced.

Courts in this Circuit have determined that deliberative process privilege is applicable in civil rights litigation involving police departments. See, e.g., Floyd v. City of New York, 08 CV 1034 (SAS)(Dkt. Nos. 229, 232) (upholding defendants' assertion of deliberative process privilege); Ingles v. City of New York, 01 CV 8279 (DC), 2004 WL 2274653 (S.D.N.Y. Oct. 7, 2004) (deliberative process privilege assertion sustained); Thompson v. Lynbrook Police Dep't, 172 F.R.D. 23 (E.D.N.Y. 1997) (upholding assertion of deliberative process privilege over intra-departmental memoranda). Nat'l Cong. for Puerto Rican Rights v. City of New York, 194 F.R.D. 88 (S.D.N.Y. 2000), cited by Plaintiffs, does not provide a bar to the privilege's application in the instant action. In Nat'l Cong. for Puerto Rican Rights, the briefing documents appeared to be "news articles, departmental records and other publications" used to prepare former Mayor Giuliani to testify before the United States Civil Rights Commission, while here,

7

the Books consist of thought processes of counsel and high ranking officials regarding topics to be discussed during oversight hearing testimony. 194 F.R.D. at 97. Nat'l Cong. for Puerto Rican Rights holds that the decision about what collection of already-created materials, such as news articles, to include in a briefing for testimony is not protected, but does not speak directly about materials which are original work, created and formulated specifically for the purposes of providing carefully vetted testimony, as is what is at issue here.[1]

---

[1] Plaintiffs challenge Defendants' assertion that "this type of briefing in advance of legislative testimony has been previously found to be protected pursuant to the deliberative process" (Oct. 8 Letter at 6) as inapposite because the decisions Defendants cite concern Freedom Of Information Act ("FOIA") requests made of federal government agencies outside of the private litigation context. While it is true that the instant litigation does not implicate FOIA Exemption 5, which was enacted by Congress "to promote the full and frank discussion of issues within and among federal agencies," Grand Cent. P'ship Inc. v. Cuomo, 166 F.3d 473, 484 (2d Cir. 19999), the purpose of the exemption was "to incorporate the government's common law privileges in the civil discovery context into FOIA." Bureau of Nat'l Affairs, Inc. v. U.S. Dep't of Justice, 742 F.2d 1484, 1496 (D.C. Cir. 1984) (citing Envtl. Prot. Agency v. Mink, 410 U.S. 73, 86 (1973)). The deliberative process privilege:

> is commonly asserted in actions where a party seeks documents from the federal government under [FOIA]. Although the privilege is codified in FOIA, see 5 U.S.C. § 552(b)(5), it is derived from, and still applied as, a common law privilege in federal court . . . . Thus, in addressing the privilege, district courts in this Circuit and elsewhere frequently rely on authority applying the privilege in both FOIA and non-FOIA actions.

MacNamara, 249 F.R.D. 70, 78 n. 6 (S.D.N.Y. 2008) (citations omitted). As such, analogy to cases involving similar circumstances and documents does not appear to be inappropriate.

8

With respect to Plaintiffs' concerns that information that is backward-looking or purely factual should be unredacted, it is one aspect of the deliberative process privilege that summary factual material used in recommendation documents can be part of the deliberative process and precluded from disclosure. MacNamara, 249 F.R.D. at 81. While the facts themselves are not generally privileged, the context in which the facts were written and the fact that they were carefully chosen, worded, and included discloses opinions and thought processes regarding the polices contemplated in the Books and which would be testified to before the City Council. As such, it is impractical for the Defendants to parse out and sever "factual" portions of the Books for production.[2]

As to Plaintiffs' assertion that the Defendants have failed to identify the policy to which the Books are concerned,

---

[2] Susan Petito, Assistant Deputy Commissioner for Legislative Affairs for the NYPD ("Petito") has noted that:

> I personally review all of the summaries prepared by OMAP staff gleaned from the responses from commands as they are included in the draft of the Briefing Book. Sometimes, I determine that additional information is needed on a particular topic, and I make sure that the additional information is obtained from the appropriate source and included in the Books. I also edit the Briefing Book as a whole. The review and editing stage is vital; it is at this point that I used my knowledge and expertise to frame the best possible responses for the Commissioner, keeping in mind what information is for public disclosure and what is not.

(Petito Decl. ¶¶ 9-10.)

9

Defendants have represented via affidavit that the Books provide information regarding expenditures and needs of the NYPD - the Books prepare the Commissioner for testimony at City Council oversight hearings regarding the preliminary budget process, at which he must testify regarding the general needs of the police force.[3] Decisions regarding the resources needed for effective policing are an adequately significant public policy deserving of the protection of the deliberative process privilege. Furthermore, other courts have recognized budgetary recommendations as protected. See generally Bureau of Nat'l Affairs, 742 F.2d 1484; see also Sec. Fin. Life Ins. Co. v. Dep't of Treasury, Civil No. 03-102 (SBC), 2005 U.S. Dist. LEXIS 6641, at *33 (D.D.C. Apr. 12, 2005); Judicial Watch, Inc. v. Consumer Fin. Prot. Bureau, 2014 U.S. Dist. LEXIS 40820, at *13-15 (D.D.C. Mar. 27, 2014).

---

[3] Specifically, Petito has stated:

> The Briefing Book and Topics Book are used to prepare the Police Commissioner for his testimony before the New York City Council each year. Each year, the City Council holds Oversight Hearings to finaliz[e] the City's Budget . . . . [T]he Books include detailed information concerning the Department's counterterrorism efforts, including information pertaining to technology and officer deployment. The Books also contain specific information about the funding/proposed funding of counterterrorism efforts. Additionally, the Books contain information pertaining to other strategic crime-fighting initiatives that reveal enforcement methods and deployment of resources.

(Petito Decl. ¶¶ 4-5, 17.)

10

Plaintiffs also specifically contend that the Books are not predecisional. Plaintiffs state that, from what they recall of the Books, much of the content included summaries of prior policies, decisions and events, rather than prospective analysis of various policy options. However, Defendants aver that the Books are predecisional because they are advisory in that their purpose is to provide the Commissioner with the information necessary to make informed choices concerning what policy positions to take before the City Council on a host of budgetary, legislative and legal positions.

Specifically, Defendants explain, with regard to process, that the creation of the Books involves a comprehensive organization of information gathering from officials within various departments of the NYPD. (Petito Decl. ¶ 8.) That information is then reviewed and edited by at least one attorney to be framed into the "best possible responses for the Commissioner, keeping in mind what information is for public disclosure and what is not." (Petito Decl. ¶ 10.) Information is routinely added to the Books and, once the Books are finalized, various members of the Commissioner's staff begin the process of preparing the Commissioner to appear as a witness at the hearing. (Petito Decl. ¶¶ 12-13.) However:

11

> The "answers" in the [B]ooks are just suggested responses to the City Council's anticipated questions. The Commissioner is free, of course, to use or not use the response, in whole or in part, or he can tailor it any way that he chooses. It is not uncommon for the Commissioner <u>not</u> to use one of the proposed "answers" contained in the Books. The Commissioner has final say over the substance of his testimony before the City Council.

(Petito Decl. ¶ 11.) The process undertaken by NYPD staff is not unlike the creation of upstream recommendations by subordinates to superiors which lay out suggestions regarding a particular course of action and which are generally covered by the deliberative process privilege. <u>MacNamara</u>, 249 F.R.D. at 81 (". . . a document may be deemed 'deliberative' not only where it explicitly weighs competing policy alternatives, but also where it contains a preliminary outline of a policy prepared by lower-ranking government officials for presentation to a superior with final policymaking authority"); <u>see also</u> Russell L. Weaver and James T.R. Jones, <u>The Deliberative Process Privilege</u>, 54 Mo. L. Rev. 279, 291-92 (1989). As such, the Books are deemed predecisional.

Additionally, based on the descriptions of the creation process and for the reasons discussed above, the Books are also deemed deliberative because they reflect collective "deliberations comprising part of a process by which

12

governmental decisions and policies are formulated," Grand Cent. P'ship, 166 F.3d at 482.

**Attorney-Client Privilege, Work Product Privilege, and Law Enforcement Privilege, and Relevancy Arguments Are Moot**

Having found that the deliberative process privilege applies to the Books, Defendants' assertions of attorney-client privilege, work-product privilege, law enforcement privilege, and relevancy, and Plaintiffs objections, are denied as moot. It is worth noting, however, that in the event that the deliberative process privilege did not apply, it is unlikely that the application of most of the other privileges, and the relevancy objections, would be appropriate, given the narrow construction of attorney-client communications, Fed. Hous. Fin. Agency v. HSBC N. Am. Holdings, Inc., No. 11 Civ. 6189(DLC), 2014 WL 1327952, at *1 (S.D.N.Y. Apr. 3, 2014) ("The mere fact that attorneys are involved in a communication does not cloak it with privilege.") and the fact that the Books cannot credibly be said to have been prepared in anticipation of litigation, Nat'l Cong. for Puerto Rican Rights, 194 F.R.D. at 109 (the work-product privilege "does not apply to [m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation").

13

## Conclusion

For the reasons set forth above, Plaintiffs' request for production of the Books is denied.

It is so ordered.

Dated: New York, New York
January 23, 2015

Robert W. Sweet
U.S.D.J.