**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7325**

WRITER'S INTERNET ADDRESS
**elinorsutton@quinnemanuel.com**

RETURN DATE REQUESTED OF MAY 27, 2015

May 14, 2015

**VIA E-FILE AND FAX**
Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Stinson v. City of New York*, 10-cv-4228 (RWS)

Dear Judge Sweet:

I write on behalf of Plaintiffs in the above-referenced action regarding the City of New York's failure to locate and produce relevant electronic documents pursuant to Federal Rules of Civil Procedure 26(b)(1) and 34(a).  The City has refused to search the emails of custodians who can be reasonably expected, and are highly likely, to have information relevant to this litigation.

The City's failure to comply with its basic electronic discovery obligations is significantly frustrating Plaintiffs' discovery efforts, including by impairing its ability to timely depose witnesses.  Accordingly, Plaintiffs respectfully request that the Court compel the City to (i) identify NYPD officers and other personnel who are reasonably likely to have information relevant to Plaintiffs' allegations, as outlined in Part III of this motion; (ii) immediately search their electronically stored information ("ESI"), including email files; and (iii) produce all non-privileged documents that are responsive to Plaintiffs' outstanding document requests by June 12, 2015—that is, the deadline for the production of all currently outstanding documents.

I.   **The City Is Required to Locate and Produce All Relevant Electronically Stored Information**

The City must search for and produce responsive ESI, including emails.  Each set of document requests that Plaintiffs served on the City incorporates Rule 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3, which expressly call for the production of "electronically stored information."  Thus, as this Court has stated, "[a] party that has been served with a request for ESI is charged with find[ing] and disclos[ing] all responsive documents

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG

or properly set[ting] forth why the documents are being withheld." *Stinson v. City of New York*, 2014 WL 4741803, at *2 (S.D.N.Y. Sept. 23, 2014) (quoting *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2010 WL 3173785, at *3 (E.D.N.Y. Aug. 11, 2010)).  This obligation includes ensuring that "all sources of potentially relevant information are identified and placed 'on hold,'" and "communicating with the 'key players' in the litigation, in order to understand how they stored information." *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004); *see also Stinson*, 2014 WL 4741803, at *2 ("This obligation to conduct a diligent search requires good faith on the part of the responding party and its attorneys, and mandates that they work together to ensure that both understand how and where electronic documents, records and emails are maintained and to determine how best to locate, review and produce responsive documents.") (quoting *Nycomed*, 2010 WL 3173785, at *3).  As discussed in more detail below, the City has not complied with its obligations.

## II.     The City Is Eschewing Its Electronic Discovery Obligations

The City refuses to comply with its electronic discovery obligations.  This issue first came to Plaintiffs' attention when they asked the City to produce an attachment to an email that Plaintiffs had obtained in hard copy from a third party.  Ex. A at 3 (1/15/15 G. Cohen email at 1:29 PM).  Plaintiffs were unable to obtain the attachment at issue from the third party, and in searching the City's production, Plaintiffs realized that the City had not produced either the email or its attachment.  The email at issue was sent by Captain Andrew Benjamin in June 2010 via his NYPD email address, and was clearly responsive to Plaintiffs' document requests.  Ex. B (6/4/10 Capt. Benjamin email).

In the email, Captain Benjamin wrote that he had utilized the COGNOS database to evaluate officers "*[b]ased on lack of activity.*"  *Id.* (emphasis added).  Instead of agreeing to produce the attachment, the City responded with a series of contradictory statements.  At first, the City stated that Captain Benjamin likely did not have the email, but that the City would confirm.  Ex. A at 2 (1/15/15 Q. Smith-Williams email at 6:22 PM).  Subsequently, the City stated that "*the NYPD email system does not retain emails over four years old, so searching for it is not an option.*"[1]  *Id.* at 1 (1/16/15 Q. Smith-Williams email at 10:39 AM) (emphasis added).

---

[1]  Plaintiffs were stunned by this statement, which appears to be a clear admission of spoliation of evidence.  Plaintiffs immediately requested clarification, and since that time, the City has provided numerous inconsistent positions with regard to its retention of documents.  In a meet and confer on January 21, the City stated that its representation that emails were not retained after four years was incorrect, but that it could not provide the amount of time that emails were actually retained in a searchable format.  Ex. C at 4 (1/21/15 E. Sutton email at 5:51 PM).  During that same call, the City also stated that it had no obligation to preserve emails that pre-dated the complaint in this matter.  *Id.*  Most recently, the City claimed that emails dated before January 2009 have been migrated to media that it cannot search.  *Id.* at 1 (2/6/15 Q. Smith-Williams email at 6:20 PM).  Plaintiffs again requested more information, but to date, the City has refused to provide sufficient information to establish that it has preserved all responsive emails for the entirety of the relevant time period.  The City has also not informed Plaintiffs whether relevant emails are being deleted due to size restrictions on email accounts.  Plaintiffs have repeatedly asked the City for clarification, *see, e.g.*, Ex. D (2/19/15 E. Sutton Ltr.), and are still attempting to determine if the matter can be resolved without the need for motion practice, although it seems unlikely based on the City's refusal to provide necessary information.

Five days later, the City announced that it had no obligation to search the email files of NYPD personnel such as Captain Benjamin. Ex. C at 4 (1/21/15 E. Sutton email at 5:51 PM).

In addition to raising grave concerns about the City's document preservation practices and potential spoliation of evidence, the City's responses revealed that it had not been diligently locating and searching the documents of NYPD custodians who likely possess relevant emails. For example, the City's failure to identify and search Captain Benjamin's emails is inexplicable when one understands his role (and that of others like him) in this litigation. Multiple officers, three of whom have been deposed in this matter, alleged through a formal grievance in December 2010 that "supervisory personnel in the Bronx Task Force periodically announced at roll call . . . that each police officer must make at least 2 arrests, and write at [sic] 20 summonses, per month," Ex. E at 6 (12/6/10 Grievance Ltr.), and that Captain Benjamin has "given police officers poor performance evaluations, among other penalties, for failing to meet illegal quotas," *id.* at 1. The fact that the City did not identify Captain Benjamin as an individual whose documents should be collected and searched demonstrates a complete failure by the City to comply with its most basic discovery obligations.

Plaintiffs' concerns escalated when, in subsequent meet and confers, the City disclosed—for the first time in multiple years of discovery—that it was only searching the email account of *one* custodian (Susan Petito) that it had identified of its own accord. Ex. C at 1 (2/6/15 Q. Smith-Williams email at 6:20 PM). Other than that one custodian, the City was only searching custodians that fell into the definition of "officials with decision-making authority" that Plaintiffs provided in an effort to clarify the documents they were seeking in response to Plaintiffs' Second Set of Document Requests Nos. 75-79 ("Nos. 75-79"). *Id.*[2] Since those discussions, Captain Benjamin is the only other custodian that the City has agreed to search.

The only defense that the City has articulated for its shocking refusal to search the email accounts of individuals that are likely to be in possession of relevant material is that Plaintiffs somehow agreed that the City could search only certain custodians for documents responsive to Nos. 75-79. This is nonsensical. The fact that Plaintiffs agreed that the City could search individuals with certain titles for the purposes of five requests has no bearing on the City's overall obligation to search for and produce relevant emails. Plaintiffs *never* agreed that by providing a definition of what was meant by "officials with decision-making authority" for the purposes of Nos. 75-79 that the City need not fulfill its obligation to identify custodians with respect to every other request in this case. Nor can the City point to a single communication evidencing any such agreement. Indeed, all written communications on this point clearly demonstrate that the agreement was limited to Nos. 75-79, *see* Ex. F (correspondence regarding Plaintiffs' Requests for Production), and that for all other purposes the City "must . . . search the files (including the electronic files) of all individuals who could reasonably be expected to possess responsive and/or relevant documents," Ex. D at 1.

---

[2] It appears that even for these custodians, the City may be only producing documents that are responsive to Nos. 75-79. If that is the case, the City must immediately produce any and all documents from these custodians that are responsive and relevant to this matter.

### III. The City Should Be Compelled to Produce the ESI of All Relevant Custodians

The City should have been working to "find[] and disclos[e]" all documents relevant to Plaintiffs' allegations from the outset of this litigation and in response to Plaintiffs' document requests, including by identifying appropriate custodians whose ESI should be searched. *Stinson*, 2014 WL 4741803, at *2; *see also Zubulake*, 229 F.R.D. at 432. Because the City has failed to comply with its outstanding discovery obligations, Plaintiffs respectfully request that the Court compel the City to search the ESI of all NYPD officers and their supervisors who are alleged to have engaged in the conduct described by Plaintiffs,[3] and of all NYPD employees who have investigated, or whose role or responsibility it is to investigate, this conduct.

Identifying these custodians should not be a difficult or burdensome task for the City. Indeed, the City has been aware for years of many individuals likely to possess information relevant to the present litigation. While the City is in the best position to identify appropriate custodians, Plaintiffs have been able to identify many obvious candidates based on information that the City itself has produced.

For instance, officers named in grievance letters are prime examples, particularly grievance letters alleging that specific officers enforced illegal summons quotas in violation of New York Labor Law § 215-a. *See, e.g.*, Ex. G at 1 (4/11/11 Grievance Ltr.) (filed on behalf of Officer Rajinder Singh in the 20th Precinct, alleging that Lieutenant Steven Chantel told Officer Singh and his partner that "per the orders of Commanding Officer, Captain Christopher McCormack, they would no longer be working as partners because they did not have a sufficient number of C-summonses and UF-250's on their December monthly activity reports"); *see also* Ex. H (compilation of similar grievance letters).

Other obvious examples are officers who can be heard enforcing illegal summons quotas on audio recordings that were played in the *Floyd v. City of New York* trial. The City produced transcriptions of these recordings on March 26, 2014. Ex. I (3/26/14 Q. Smith-Williams Ltr). Among the potential custodians contained in these transcriptions provided by the City is Lieutenant Barrett (40th Precinct) who, in a June 30, 2010 roll call, told patrol officers:

> They had no problem getting summonses probably the same thing tonight everyone was out on the street. Looking for five . . . . St. Mary's Park, go crazy in there. Go crazy in there. I don't care if everybody writes everything in there. . . . So if anybody comes across any situation where there's a lot of Cs to be handed out, raise up, come on over there and let's help each other out. The quicker we do this, I'm all for taking your meal at the end . . . as long as we get those numbers.

---

[3]  As this Court has stated: "Plaintiffs allege that the NYPD is engaged in a widespread pattern and practice of issuing summonses to individuals without probable cause and that NYPD officers are explicitly instructed to issue summonses regardless of whether any crime or violation has occurred in order to meet a minimum quota requirement set forth by the NYPD. Plaintiffs contend that the NYPD consistently punishes officers who issue fewer summonses and rewards police officers who issue more summonses, irrespective of whether probable cause existed for the summonses' issuance." *Stinson v. City of New York*, 282 F.R.D. 360, 363 (S.D.N.Y. 2012); *see also* Am. Compl. ¶¶ 1-4 (Dkt. 8).

Ex. J at 2:23-4:1 (*Floyd* Tr. Ex. PX-297).

Another potential source is the City's own initial disclosures, which identify the officers that issued summonses to Lead Class Plaintiffs. Ex. K (Defs.' 11/15/13 Initial Disclosures). Because these officers are listed on the City's own initial disclosures, it is hard to understand how the City can justify not searching the ESI of these officers and their direct supervisors.

Further, Plaintiffs have alleged that the NYPD holds regular COMPSTAT meetings where commanding and supervising officers "are relentlessly pressured to adhere to the required quota of C summonses (quality of life summonses) . . . ." Am. Compl. ¶¶ 127-33. The City is well aware, and has publicly stated, that NYPD brass such as former Chief of Detectives Phil Pulaski regularly attend these meetings.

These suggestions are by no means exhaustive, and the City is best situated to create a comprehensive list of custodians whose ESI should be searched.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court compel the City to (i) identify NYPD officers and other personnel who are reasonably likely to have information relevant to Plaintiffs' allegations, as outlined in Part III of this motion; (ii) immediately search these custodians' ESI, including email files; and (iii) produce all non-privileged documents that are responsive to Plaintiffs' outstanding document requests by June 12, 2015—that is, the deadline for the production of all currently outstanding documents in this case.

Respectfully submitted,

/s/ Elinor C. Sutton

Elinor C. Sutton
Quinn Emanuel Urquhart & Sullivan, LLP
*Co-Lead Class Counsel for Plaintiffs*

cc:   Qiana Smith-Williams (via E-File and Email)
      The City of New York Law Department
      *Attorneys for Defendants*