# COHEN & FITCH LLP

233 BROADWAY, SUITE 1800
NEW YORK, NY 10279
TEL: 212.374.9115
FAX: 212.406.2313

---

September 3, 2015

**VIA E-FILE & FAX**
Honorable Robert W. Sweet
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

> **Re:** ***Stinson v. City of New York, No. 10-cv-4228 (RWS)***

Your Honor:

Dear Judge Sweet:

I write on behalf of the Plaintiff Class ("the Class" or "Plaintiffs") in the above-referenced action to respectfully request that the Court deny Defendants' August 12, 2015 letter seeking the Court's endorsement of a proposed order for the unsealing of the "records of any criminal actions pertaining to individuals who received criminal court summonses from May 1, 2007 until the conclusion of [t]his litigation" for the express purpose of noticing the depositions of presumptive class members. (Dkts. 228 & 228-1.)

As discussed in detail below, any addressing of issues related to individual class members—including whether the City can overcome the presumption of class membership for particular class members—would not be proper until after the issues common to the class have been determined. For that reason, we do not undertake here to discuss the various procedural issues that would be implicated, including the appropriate scope of and threshold showings necessary for any discovery, if individual questions related to class members are to be addressed. Suffice it to say that any implication in the City's proposed order that the City should have free rein to pursue unbridled discovery of hundreds of thousands of individuals is wholly misplaced.

## ARGUMENT

### I. DEFENDANTS' REQUEST TO CONDUCT DISCOVERY OF THE ABSENT CLASS MEMBERS MUST BE DENIED

Defendants' stated purpose for this request—to depose or otherwise conduct discovery of absent class members—"'while not forbidden, is rarely permitted due to the facts that absent class members are not 'parties' to the action, and that to permit extensive discovery would defeat the purpose of class actions which is to prevent massive joinder of small claims.'" Holman v. Experian Info. Solutions, Inc., No. C 11-00180 CW DMR, 2012 WL 2568202, at *3 (N.D. Cal. July 2, 2012)(citation omitted); Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 810 n. 2, 105 S.Ct. 2965, 86 L.Ed.2d 628 (noting that burdens, including discovery, "are rarely imposed upon plaintiff class members"); Laborers Local 17 Health & Ben. Fund v. Morris, No. 97CIV.4550(SAS)(MHD), 1998 WL 241279, at *1 (S.D.N.Y. May 12, 1998)("Such discovery is not per se unavailable, although it is generally *disfavored*…"); Kline v. First W. Gov't, No. CIV.A. 83-1076, 1996 WL 122717, at *2 (E.D. Pa. Mar. 11, 1996)("upon survey of the cases, it is safe to state that discovery of absent class members is disfavored."); Adkins v. Mid–America Growers, Inc., 141 F.R.D. 466, 468 (N.D.Ill.1992)("[i]f joinder of all parties is impracticable, propounding discovery like interrogatories, depositions, and requests to produce on an individual basis is even more impracticable."). Notwithstanding this general prohibition, courts will allow such discovery of absent class members, where it is necessary and helpful to the 'correct adjudication of the principal suit,'" however, the party seeking this discovery carries a substantial burden. See e.g., In re Currency Conversion Fee Antitrust Litig., No. M 21-95, 2004 WL 2453927, at *2 (S.D.N.Y. Nov. 3, 2004); Dubin v. E.F. Hutton Grp., Inc., No. 88 CIV. 0876 (PKL), 1992 WL 6164, at *3 (S.D.N.Y. Jan. 8, 1992)("a 'strong showing' must be made before discovery from absent class members will be permitted.") (citing Enterprise Wall Paper Mfg. Co. v. Bodman, 85 F.R.D. 325, 327-28 (S.D.N.Y. 1980); Doe v. Arizona Hosp. & Healthcare Ass'n, No. CV07-1292-PHX-SRB, 2009 WL 1423378, at *14 (D. Ariz. Mar. 19, 2009)("the burden to obtain discovery of any kind from absent class members is very high.").

Moreover, the burden to establish the need for *deposing* absent class members—Defendants' stated purpose for its request herein—is even higher, "because depositions require the absent class members 'to appear for questioning' and submit to 'often stiff interrogation by opposing counsel.'" Johnson v. Ford Motor Co., No. 3:13-CV-06529, 2015 WL 3540802, at *1 (S.D.W. Va. June 4, 2015); Clark v. Universal Builders, Inc., 501 F.2d 324, 341 (7th Cir. 1974) ("not unlike the use of interrogatories, the party seeking the depositions has the burden of showing necessity"); Baldwin & Flynn v. Nat'l Safety Associates, 149 F.R.D. 598, 600 (N.D. Cal. 1993) ("The burden is heavy to justify asking questions by interrogatories, even heavier to justify depositions."). Accordingly, several important concepts can undoubtedly be extrapolated from the aforementioned cases, the most important being that discovery of absent class members to resolve individual class membership issues is improper; and, that the party seeking any such discovery bears a substantial burden to establish its necessity for any other purpose.

For the reasons discussed herein, Defendants have failed to establish the propriety or necessity of such a request.

### A.    Any Discovery Is Improper and Premature Until Common Class Issues are Fully Determined in this Case

i.    QUESTIONS REGARDING INDIVIDUAL CLASS MEMBERS' ENTITLEMENT TO RELIEF SHOULD NOT BE ADDRESSED UNTIL AFTER A JUDGMENT OF LIABILITY

Defendants seek an order unsealing the criminal records of every single presumed class member—which concern more than 850,000 summonses—in order "to identify those persons who are presumptive class members and to begin noticing their depositions." (Def. August 12, 2015 Letter ("Def. Ltr.")).  However, as numerous courts have recognized, such a request is wholly improper at this stage of the litigation because "this type of discovery, which relates to individual issues, should ordinarily be *postponed* until *after* the common questions have been determined." Enterprise, 85 F.R.D. at 327-28 (emphasis added) (citing Robertson v. Nat'l Basketball Ass'n, 67 F.R.D. 691, 700 (S.D.N.Y. 1975)); Dubin, 1992 WL 6164 at *5 ("Defendants will have a full opportunity to conduct discovery on and to litigate the individual questions in this case *after* Dubin's representative claim is adjudicated")(emphasis added); McPhail v. First Command Fin. Planning, Inc., 251 F.R.D. 514, 520 (S.D. Cal. 2008) (Recognizing that it is proper to "*defer*[] the consideration of individualized issues until after class-wide issues have been resolved.") (emphasis added).

The rationale for delaying such individual inquiries is uniquely related to the purpose of class action litigation because normally "an absent class-action plaintiff is not required to do anything" prior to the point that his substantive rights become affected by the progress of the litigation. Phillips, 472 U.S. at 810; Garden City Employees' Ret. Sys. v. Psychiatric Solutions, Inc., No. 3:09-00882, 2012 WL 4829802, at *2 (M.D. Tenn. Oct. 10, 2012)("Unlike a defendant in a normal civil suit, an absent class action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course, content in knowing that there are safeguards provided for his protection.").  Thus, "the most *appropriate* time to gather any necessary information from individual class members is generally *after* a determination of liability and before payment of individual claims." On the House Syndication, Inc. v. Fed. Exp. Corp., 203 F.R.D. 452, 458 (S.D. Cal. 2001) (emphasis added) (citing Federal Judicial Center, *Manual for Complex Litigation* Sec. 30.232 (3d ed.1995).

Here, the Court's Certification Order clearly defined the "common questions" for the class, which have yet to be determined: "[1] whether Defendants engaged in a pattern and practice of issuing summonses in the absence of probable cause, [2] whether that practice has been motivated by a quota, [3] whether that practice has been perpetuated by inadequate training and [4] whether potential plaintiffs' constitutional rights have been infringed upon as a result of the NYPD's alleged summonsing practices." Stinson v. City of New York, 282 F.R.D. 360, 382 (S.D.N.Y. 2012).  Further, implicit in the order of certification was a determination that those questions *could and should* be answered on a

*classwide* basis without the need of individualized inquiry of absent class members. Thus, because "the common questions have been aptly defined" by Your Honor in this case, "there should be no need at an earlier stage to have all of the individual class members before the court for discovery or any other purposes." Dubin, 1992 WL 6164 at *4.

Defendants' intention to depose absent class members in this case is particularly inappropriate because Defendants' "proposed [depositions] [are] aimed at individual questions, which are 'more properly adjudicated after the common questions have been determined." Holman, 2012 WL 2568202 at *4.  Consequently, Defendants' purported "need" for the unsealing of these records is solely related to individualized issues pertaining to the class members' entitlement to relief; and, they have not indicated any relevance that this information might have on the resolution of questions common to the class nor have they even put forth any rationale indicating the necessity of this information for a trial on class liability.   While Defendants' request relies upon the portion of the Court's certification order that allowed Defendants the ability to "challenge any presumptive class member on grounds that the summons at issue was dismissed for reasons other than a lack of probable cause" (Stinson, 282 F.R.D. at 363-64), these individual challenges should not be made until the common questions of liability are determined in this case.  Thus, since Defendants' request is only relevant to their desire to address individualized issues of class membership and it is well settled that "'discovery of absent class members regarding *individual* issues, as opposed to common questions, is inappropriate," their request to unseal these records in order to depose absent class members must be denied.  In re Currency, 2004 WL 2453927, at *2 (citations omitted). As such, this Court should deny Defendants' attempt to prolong discovery indefinitely in order for them to conduct discovery on individualized issues that will not become relevant or ripe until a determination of liability is made in this case.

    ii.  DEFERRING SUCH DISCOVERY UNTIL A DETERMINATION ON LIABILITY IS ROUTINE PRACTICE IN ANALOGOUS CASES AND APPROPRIATE IN ORDER TO AVOID NEEDLESSLY BURDENSOME DISCOVERY OF INDIVIDUAL ISSUES

The rationale for deferring such challenges to class membership until the determination of classwide liability has been widely accepted in class actions where analogous issues have arisen regarding the right to relief of individual class members. For example, in the context of discrimination class actions under Title VII, "[t]he determination of the entitlement of particular class members to back pay is a matter more properly resolved *after* a determination of liability has been made." Briggs v. Brown & Williamson Tobacco Corp., 414 F. Supp. 371, 378 (E.D. Va. 1976) (emphasis added) (citing United States v. United States Steel Corp., 520 F.2d 1043, 1051 (5th Cir. 1975). Similarly, "courts in securities fraud actions have *consistently* recognized that issues of individual reliance *can and should* be addressed *after* a class-wide trial, through separate jury trials if necessary." In re Vivendi Universal, S.A. Sec. Litig., 765 F. Supp. 2d 512, 584-85 (S.D.N.Y. 2011) (emphasis added); Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc., No. 02 C 5893, 2005 WL 3801463, at *4 (N.D. Ill. Apr. 18, 2005)("discovery

of information for purposes of rebutting the fraud on the market theory as to individual class members "'need not occur until after liability is established.'").

Moreover, delaying the resolution of these individual issues would not prejudice Defendants in the least and would still allow Defendants the ability to challenge any particular presumptive class members assertion of rights under the judgment. See e.g., Johnson v. Gen. Mills, Inc., 276 F.R.D. 519, 524 (C.D. Cal. 2011) ("The fact that liability under the CLRA may be established classwide by an inference of reliance *does not deprive Defendants' of their opportunity to challenge each members' claim*. If Mr. Johnson establishes liability for the class, Defendants may challenge reliance and causation individually during a determination of damages, *after* the issues that are common have been litigated and resolved.") (emphasis added.). Accordingly, discovery from the absentee class members at this stage is wholly premature and improper because only after classwide issues of liability are determined—"then [and] only then—[will it] become necessary to try or settle or otherwise dispose of individual questions…" Dubin, 1992 WL 6164 at *4. As such, denying Defendants' application is not only appropriate under the law, but it will "spare [this Court] discovery and trial of individual liability issues until after there has been discovery, trial, and findings as to class liability." E.E.O.C. v. McCormick & Schmick's Seafood Restaurants, Inc., No. CIV.A. WMN-08-984, 2008 WL 10697581, at *2 (D. Md. Nov. 4, 2008).

**B.     Allowing Discovery of Absentee Class Members Would Create a *De Facto* "Opt In" Requirement, Which is Impermissible as a Matter of Law**

While Defendants' rationale for seeking discovery from absent class members—namely, "in order to challenge class membership"—is expressly prohibited as a matter of law (see section C infra), it is also otherwise improper because it would create a *de facto* "opt in" requirement for the class members in this case. Indeed, as the Second Circuit has acknowledged courts have routinely held that requiring absent class members to submit to similar discovery requirements prior to a determination of the common class issues is "impermissible—*precisely* because they may constitute a *de facto* 'opt in' provision." Kern v. Siemens Corp., 393 F.3d 120, 124-26 (2d Cir. 2004) (emphasis added) (citing Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1557 (11th Cir.1986). Moreover, this caution has been echoed by countless District and Circuit courts simply because "propound[ing] discovery upon absent class members requires those members to take some affirmative action to remain in the class, 'effectively creating an 'opt in' requirement which is inconsistent with the 'opt out' provisions of Rule 23.'" McPhail, 251 F.R.D. at 517; cf. McCarthy v. Paine Webber Grp., Inc., 164 F.R.D. 309, 313 (D. Conn. 1995) ("To require class members to complete and return the questionnaire on the condition that failure to do so would result in the member's dismissal from the Class has the effect of requiring the class member to opt into the Class.") (citing Enterprise, 85 F.R.D. at 327–28); Kline, 1996 WL 122717 at *2 ("This strategy is essentially a "back door" way to create an "opt in" scheme… This is inconsistent with the "opt out" provision of Rule 23."); Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION Sec. 30.232 (3d ed.1995) ("Class members *should not*, however, be required to submit proofs

of claim as a condition of membership in the class, which would be equivalent to establishing an opt-in procedure.") (emphasis added).

This rationale has been frequently applied to the mere requirement that absent class members complete questionnaires—a far less intrusive and demanding procedure than a deposition—and therefore should apply with greater force to Defendants' stated intention of sending notices of depositions in this case.   A deposition of an absent class member creates an implicit requirement that absent class members submit to depositions or forego their right to remain in the class.  Consequently, courts have *refused* to permit these types of discovery tactics as it "may have the unwelcome effect of confusing recipients into believing that they must answer the questions to remain in the lawsuit," which would unfairly and improperly "deter claimants with small damages from participating in the suit."   Cooper v. Pac. Life Ins. Co., No. CV203-131, 2005 WL 1866166, at *2 (S.D. Ga. Aug. 5, 2005).

**C.     Defendants Have Not Made the "Strong Showing" Necessary to Establish the Need to Conduct Discovery from Absent Class Members at this Time.**

In the infrequent instances where courts have permitted discovery of absent class members, the defendants are required, among other things, to make "a strong showing" that "(1) the discovery is not designed to take undue advantage of class members or to reduce the size of the class, (2) the discovery is necessary, (3) responding to the discovery requests would not require the assistance of counsel, and (4) the discovery seeks information that is not already known by the proponent." Clark, 501 F.2d at 340–42; see also McCarthy, 164 F.R.D. at 313  (same); Dubin, 1992 WL 6164 at *3 (same); Enterprise, 85 F.R.D. at 327-28 (same).[1]   In the present case, Defendants have utterly failed to establish any of the aforementioned criteria—let alone meet their burden of doing so.

      i.   THE EXPLICIT REASON FOR DEFENDANTS' REQUEST—"CHALLENGING CLASS MEMBERSHIP"— IS EXPRESSLY PROHIBITED AS A MATTER OF LAW

Defendants' application runs afoul of the very first enumerated factor—specifically,  Defendants *must* establish that discovery from absentee class members "is *not* sought with the purpose or effect of harassment or *altering membership of the class*." McCarthy, 164 F.R.D. at 313 (citation omitted)(emphasis added).  Indeed, this is one of the principal "dangers" that courts must protect against when determining whether or not to grant class member discovery.  See Robertson, 67 F.R.D. at 700 ("The court must also seek to protect the class from undue harassment and excessive taxing of their resources, and from the danger of the use of full-blown discovery as a means of reducing class

---

[1]  In almost every case where a court has permitted this type of discovery to occur, the requests have been narrow in both scope and the number of absent class members from whom discovery has been sought has been carefully scrutinized by the court. See e.g., Town of New Castle v. Yonkers Contracting Co., No. 88 CIV. 2952 (CES), 1991 WL 159848, at *2 (S.D.N.Y. Aug. 13, 1991).

size."); <u>Dubin</u>, 1992 WL 6164 at *3-4 (same); <u>Kline</u>, 1996 WL 122717 at *2 ("Another reason for *denying* discovery of absent class members is that class action defendants could use burdensome discovery requests as a method of unfairly reducing the number of class members.").

Notwithstanding the express prohibitions of conducting class member discovery for the purpose of diminishing the class, Defendants have explicitly indicated that their need for the criminal court records of absentee class members is for the exact purpose of "challenging class membership." (Def. Ltr.).  As such, denial of Defendants' request at this time is virtually academic since the very reason for which they seek this information is *precisely* that which the rules of class member discovery expressly *prohibit* – namely, attempt to conduct discovery for the purpose of reducing the class size.  Therefore, because "defendants' own words reveal[ed] that the instant discovery is intended to determine whether individual class members are properly included within the class," their request to unseal these records for purposes of conducting depositions of absent class members at this time is improper as a matter of law and must be denied.  <u>See</u> <u>e.g.</u>, <u>Dubin</u>, 1992 WL 6164 at *4.

    ii.  T<small>HE</small> S<small>TATED</small> P<small>URPOSE OF</small> D<small>EFENDANTS</small>' R<small>EQUEST WILL</small> R<small>EQUIRE THE</small>
        A<small>SSISTANCE OF</small> C<small>OUNSEL</small>

Defendants' application also fails because the stated purpose for the request—depositions of absentee class members—because comes "with the concomitant need for counsel of their own," which is once again directly at odds with the factors needed to establish the propriety of this discovery.  <u>Johnson</u>, 2015 WL 3540802 at *1 (citing <u>Clark</u>, 501 F.2d at 341; <u>Columbus Drywall & Insulation, Inc. v. Masco Corp.</u>, No. CIV.A.1:04CV3066JEC, 2009 WL 3378517, at *4 (N.D. Ga. Oct. 19, 2009) ("responding to defendant's proposed document requests, and *certainly* appearing for deposition, would require the assistance of counsel for a substantial number, if not all, of the 377 class members.") (emphasis added; <u>McPhail</u>, 251 F.R.D. at 517  (holding that a court should not approve absent class member discovery where "responding to the discovery requests would [] require the assistance of counsel"); <u>Collins v. Int'l Dairy Queen</u>, 190 F.R.D. 629, 632 (M.D. Ga. 1999) ("The very nature and complexity of this case suggests that if discovery were allowed the questions posed to the class members would be complicated enough to require the assistance of an accountant or an attorney. Having to obtain professional assistance would be unduly burdensome to the absent class members. This factor also mitigates against allowing discovery.")  Thus, Defendants' request must be denied on this basis as well.

    iii.  D<small>EFENDANTS</small> H<small>AVE</small> A<small>CCESS TO</small> F<small>ULL</small> D<small>ISCOVERY</small> C<small>ONCERNING THE</small>
         C<small>LASS</small> R<small>EPRESENTATIVES</small>.

Defendants' application is also devoid of any reason why the discovery from the named representative plaintiffs was insufficient in this case, which is yet another prerequisite to sustaining their burden of establishing their need for this discovery in the first instance. <u>See</u> <u>e.g.</u>, <u>Doe v. Meachum</u>, 126 F.R.D. 444, 448–49 n. 5 (D.Conn.1989) (finding establishing the need for absent class member discovery requires a showing that

"the information is not available from the representative parties."); <u>Town of New Castle v. Yonkers Contracting Co.</u>, No. 88 CIV. 2952 (CES), 1991 WL 159848, at *1 (S.D.N.Y. 1991) (same); <u>Dellums v. Powell</u>, 566 F.2d 167, 187 (D.C.Cir.1977) *cert. denied,*438 U.S. 916 (1978) (same).

Here, defendants have already been provided with the records of each named class representative, and have taken the deposition of each of those representatives.  In every instance, the testimony of the named class representatives demonstrates that they were issued a criminal court summons without probable cause.  <u>See Appendix A.</u>  As such, Defendants have—and have had—every ability to mount these challenges through the depositions of the class representatives and the officers who issued the class summonses, and thus the necessity of dragging absent class members—who have not even received notice of this litigation yet—in for depositions is unnecessary and inappropriate.

**D.    Defendants' Request, Less Than a Month Prior to the Close of Discovery, Is Made with an Improper Motive**

Finally, Defendants have offered no plausible justification – nor could they – as to why they chose to wait until the eve of the discovery deadline to make this request for such an immense undertaking of unsealing more than 850,000 criminal records.  Discovery has been ongoing for nearly five years in this matter, and more importantly, Your Honor's decision on certification, which Defendants purport gives them the right to such discovery, was issued over three years ago.  Despite this enormous amount of time in which to seek any such discovery – albeit improper – Defendants chose to wait until discovery was all but complete to propound this request.  Such behavior cannot and should not be countenanced by this Court and therefore, this motion must be denied.  <u>See e.g.</u>, <u>Campbell v. Pricewaterhouse Coopers, LLP</u>, No. CIV S06-2376 LKK/GGH, 2009 WL 530308, at *1-2 (E.D. Cal. Mar. 3, 2009) (holding that "[i]n light of the foreseeability of both the reasons for deposing these absent class members and the likely challenge to the appropriateness of such depositions, [the defendant] should have noticed these depositions at a time that would allow this question to be resolved prior to the scheduled close of discovery" and did not show "that its failure to do so was consistent with the exercise of diligent efforts to comply with the scheduling order.")

In addition, Defendants' request represents an attempt to delay discovery *ad infinitum* in order to conduct an inquiry that should not be properly made until after a judgement on liability. <u>See e.g.</u>, <u>Johnson</u>, 2015 WL 3540802 at *1 ("The suspicion that discovery is being done for an improper motive grows exponentially as the sampling of absent class members selected for discovery increases in number."); <u>Holman</u>, 2012 WL 2568202 at *3 ("Experian's request is *unprecedented*. Experian seeks leave to propound discovery on approximately 38,000 absent class members. It does not cite a single comparable case in support of such a massive undertaking. Moreover, Experian's undifferentiated request is aimed at *all* class members…Thus, Experian's request *immediately* raises the question of whether it is unduly burdensome*, as well as* whether it is designed to whittle down the size of the class.)(emphasis added).

Accordingly, Defendants' request has been driven by an improper motive and should be denied.

## II.     DEFENDANTS' REQUEST TO UNSEAL HUNDREDS OF THOUSANDS OF RECORDS UNDER §§ 160.50 AND 160.55 SHOULD BE DENIED

### A.     Defendants' Request for a Blanket Unsealing Order for the Records of Hundreds of Thousands of Absentee Class Members is Unprecedented.

Defendants' request that the Court unseal the full criminal records of hundreds of thousands of absentee class members so that Defendants can begin noticing the class members' depositions is unprecedented and should be denied.  Indeed, Defendants cite no authority, and Plaintiffs have identified no authority, for this unprecedented request.  Of the four cases Defendants cite in their August 21, 2015 letter, none mentions *absent class members*, much less whether such individuals' sealed records should be released for discovery purposes.  Rather, Defendants' cited cases reflect the unremarkable position that a plaintiff *who brought suit* waives statutory protections under CPL § 160.50 for at-issue arrests by "*affirmatively* plac[ing] the underlying conduct at issue."  Green v. Montgomery, 95 N.Y.2d 693, 701 (N.Y. 2001).  See Kapiti v. Kelly, 2008 WL 3874310, at *7 (S.D.N.Y. Aug. 18, 2008) (denying reconsideration of order requiring named plaintiff to release sealed records);[2] Hardee v. City of New York, 2014 WL 4058065, at *1 (S.D.N.Y. Aug. 14, 2014) (ordering *pro se* plaintiff to provide unsealing release); Rivera v. City of New York, 2010 WL 1253983, at *1 (S.D.N.Y. Mar. 17, 2010) (named plaintiffs required to provide unsealing authorization for "underlying criminal actions"); see also Green v. Montgomery, 219 F.3d 52 (2d Cir. 2000).[3]  Here, absent class members have taken *no steps* to place their conduct at issue; they have not even received notice that litigation has commenced.[4]

Furthermore, although extensive jurisprudence has been dedicated to addressing the propriety of requests to unseal records under §§ 160.50 and 160.55, Plaintiffs are not aware of any case granting a defendant's request for the records of absent class members for the purpose of contacting those individuals.  Generally, these types of cases concern a *single plaintiff* seeking access to sealed records of defendants or third parties for the purpose of gathering evidence relevant to the events underlying the action.  See, e.g., Schomburg v. New York City Police Dep't, 298 F.R.D. 138, 141 (S.D.N.Y. 2014); Lyles

---

[2]   Of Defendants' cited cases, only Kapiti relates to a class action in that the court denied plaintiff's motion for class certification.  The defendants there did not request, and the court did not address, whether release of such records by putative class members would be appropriate.

[3]   Green does not even determine whether adjudication records should be unsealed under CPL § 160.50, but considers the unrelated question of whether a juvenile waives statutory protections under New York Family Law Act §§ 380.1 and 381.2 by filing a § 1983 action related to the underlying adjudication.

[4]   This is consistent with the policy set forth in the S.D.N.Y.'s § 1983 Case Management Plan—a Plan the City assisted in developing—which limits the City to obtaining a release of records under § 160.50 from "*named putative class representatives*," prior to answering a complaint.  Local Civ. R. 83.10 ¶ 1(a) (Sept. 23, 2014).

v. City of New York, 2009 WL 4276969, at *1 (S.D.N.Y. Nov. 30, 2009); Spiegler v. City of New York, 2005 WL 2676671, at *1 (S.D.N.Y. Oct. 20, 2005); Woodard v. City of New York, 99 CV 1123, 2000 WL 516890, at *3 (E.D.N.Y. Mar. 10, 2000). Even in the few cases Plaintiffs have seen in the class action context, defendants have never been permitted access to sealed records for the purpose of contacting absent class members. See, e.g., Floyd v. City of New York, 08 Civ. 1034, Order at 1-3 (Dkt. 230); Daniels v. City of New York, 2001 WL 228091 (S.D.N.Y. Mar. 8, 2001); Haus v. City of New York, 2006 WL 1148680, at *1 (S.D.N.Y. Apr. 24, 2006). None of these cases provided for the sweeping release of hundreds of thousands of sealed records that Defendants seek here, or granted *any* release of sealed records for the purpose of noticing the depositions of absent class members who had given no indication of their consent to being involved in the litigation.

### B.    The Scope of Defendants' Request is Grossly Inappropriate.

Defendants seek the *"records of any criminal actions pertaining to individuals who received criminal court summonses from May 1, 2007 until the conclusion of [t]his litigation."* Defendants' Proposed Unsealing Order (Dkt. 228-1 at 2). The scope of this request is inconceivable, and would in essence require the Court to unseal the full criminal records of potentially millions of individuals as well as hold that a legislative statute should not apply to Defendants, nor the NYPD, for an unspecified period of time. Because Defendants have not properly limited their request, it must be denied. See, e.g., Schomburg, 298 F.R.D. at 142; Lyles, 2009 WL 4276969, at *1 (holding that an unsealing request should be properly limited by date and scope).

*First,* Defendants failed to limit their proposed order by the outcome of the summons, such that it would unseal the records of all individuals who *received* a criminal court summons. There is no plausible reason that Defendants require the complete criminal records of every single individual that received a criminal court summons for at least an eight-year period, including summonses that were dismissed for reasons other than legal insufficiency. To the extent Defendants are now attempting to limit the original request—stating in their August 21, 2015 letter that Defendants seek records relating only to "those summonses dismissed as facially insufficient"—Defendants have not submitted a revised proposed order, such that Plaintiffs are left to oppose the plain language of the proposed order. Yet, even under this revised request, Defendants are still seeking the complete criminal records of every single individual that received one of the more than 850,000 criminal court summonses that were dismissed as facially insufficient in this case to date.

*Second*, the proposed sealing order—which requests records from May 1, 2007 *until the conclusion of [t]his litigation*—styles the order to apply *ad infinitum.* In effect, Defendants' order would unseal records related to alleged wrongdoing that has not yet occurred. As previously mentioned, Defendants are essentially requesting that the Court order that Defendants and the NYPD be exempt from the requirements of §§ 160.50 and 160.55 for an unspecified period of time. Unsurprisingly, Defendants cite no precedent for this extraordinary request.

*Third*, the proposed order requests that the Court release "records of any criminal actions pertaining to" individuals that were issued criminal court summonses. (Dkt. 228-1 at 2.)  This not only includes criminal court summonses issued for at least an eight-year period, but would encompass records of unrelated arrests, criminal complaints and supporting depositions, district attorney investigative files, and juvenile adjudications, among other things.  See, e.g., Haus, 2006 WL 1148680, at *1 (listing documents sealed under § 160.50); Schomburg, 298 F.R.D. at 142 (listing contents of district attorney investigative files sealed under § 160.50); In re Akieba Mc., 72 A.D.3d 689, 690 (N.Y. App. Div. 2010) ("In this juvenile delinquency proceeding, the appellant was granted an adjournment in contemplation of dismissal, the proceeding was dismissed, and the record of the proceeding was sealed pursuant to CPL 160.50.").[5]  Defendants provide no explanation for the need for such an invasive order.

*Fourth*, the proposed sealing order is not appropriately limited in terms of the scope of information that Defendants seek from the criminal records.  Defendants have not provided any legitimate reason that they need access to the arrestees' identifying information.  See supra at Section II (explaining that Defendants have not met any of the requirements necessary for seeking discovery from absentee class members).  Courts regularly require that such information be redacted from unsealed criminal records absent a showing that such information is necessary to effect the approved purpose of unsealing the records.  See Haus, 2006 WL 1148680, at *4-5 (redacting arrestees' identifying information from records sealed under § 160.50 prior to production) (collecting cases); see also Crosby v. City of New York, 269 F.R.D. 267, 275 & n.32 (S.D.N.Y. 2010) (ordering redaction of identifying information and recognizing that "[t]he worthy goals of Sections 160.50 and 160.55 as well as a litigant's need for pertinent discovery can usually be honored simultaneously by redaction of information that identifies, directly or indirectly, persons entitled to protection under these statutes") (collecting cases).  Indeed, when a party intends to use individuals' sealed information for the purpose of contacting them to participate in the lawsuit, courts have adopted the added precaution of requiring a magistrate to first communicate with those individuals to determine their willingness to waive statutory protections and to communicate with counsel.  See, e.g., Floyd, 08 Civ. 1034, Order at 1-3 (Dkt. 230); Fountain v. City of New York, 2004 WL 1474695, at *2-3 (S.D.N.Y. June 30, 2004); Daniels v. City of New York, 2001 WL 228091, at *1-2 (S.D.N.Y. Mar. 8, 2001); Bryant v. City of New York, 2000 WL 1877082, at *2-3 (S.D.N.Y. Dec. 27, 2000).  Therefore, even if Defendants could articulate a reason for needing access to the summonses for purposes of determining whether or not there was probable cause to issue them, they have not provided any legitimate basis for needing access to the arrestees' identifying information.

*Finally*, Defendants have not articulated any reason that the City of New York or the NYPD needs access to these records.  Therefore, notwithstanding the foregoing, were the Court to find it appropriate to unseal any records for any purpose, those records should receive a designation of attorneys'-eyes-only to sufficiently protect the legitimate

---

[5]  As discussed in Green v. Montgomery, 219 F.3d 52, 56 (2d Cir. 2000), a case upon which Defendants rely, state law affords juvenile adjudications the added protection of being barred from use "in any other court."  *See* N.Y. Family Court Act § 381.2.

privacy interests of absent class members. See <u>MacNamara</u>, 2006 WL 3298911, at *4 (legitimate privacy interests "can be minimized by an 'attorneys'-eyes-only' designation"); <u>Howard v. City of New York</u>, 2013 WL 174210, at *3 (S.D.N.Y. Jan. 16, 2013) (ordering records released under § 160.50 designated attorneys'-eyes-only due to "legitimate privacy interests").

    **C.**    **Should the Court Unseal Any Criminal Records, Plaintiffs' Counsel Must Also Be Granted Access to the Information**

Defendants' proposed order provides for "the City of New York, including the Office of Corporation Counsel and the New York City Police Department" to be provided access to the records at issue, but does not provide for Plaintiffs, or Plaintiffs' counsel, to have access to the same. (Dkt. 228-1 at 2.) This would severely prejudice Plaintiffs, who are entitled to all such records to challenge any potential defenses raised by Defendants to class membership, and to form objections to discovery requests based on any such records. Consequently, any unsealing of the criminal records at issue must be made symmetrically between the parties and/or their counsel.

## <u>CONCLUSION</u>

For the foregoing reasons, the Class respectfully requests that the Court deny Defendants' August 12, 2015 request that the Court endorse Defendants' proposed order for the unsealing of records.

Respectfully submitted,

/s/ Joshua P. Fitch

Joshua P. Fitch
Cohen & Fitch LLP
233 Broadway, Suite 1800
New York, NY  10279
(212) 374-9115
212) 406-2313 (fax)
*Co-Lead Class Counsel*

Jon L. Norinsberg, Esq.
225 Broadway, Suite 2700
New York, NY  10007
(212) 791-5396
*Co-Lead Class Counsel*

Quinn Emanuel Urquhart &
Sullivan, LLP
51 Madison Ave., 22nd Fl
New York, NY  10010
212-849-7000

212-849-7100 (fax)
*Co-Lead Class Counsel*

cc: Qiana Smith-Williams (via E-File and Email)
The City Of New York Law Department
*Attorneys for Defendants*